**No. _____**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

In re: JASON D. WOODBURY, Carson City District Attorney; STEPHEN B. RYE, Lyon County District. Attorney,

*Petitioners*

v.

UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF NEVADA

*Respondent,*

and

PLANNED PARENTHOOD MAR MONTE, INC.,

Real Parties in Interest.

_____

On Petition for a Writ of Mandamus In
Case No. 3:85-cv-331-ART-CSD

_____

**PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA TO VACATE ORDER AND INJUNCTION**

James Bopp, Jr.
Joseph D. Maughon
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434

*Counsel for Petitioners*

**Table of Contents**

Introduction and Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of the Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reasons for Granting the Writ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Mandamus Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Mandamus Factors Considered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.    The district court made a clear error of law. . . . . . . . . . . . . . . 14

            1.    District Attorneys sought to lift the injunction under the "Inequity Prong" of Rule 60(b)(5). . . . . . . . . . . . . . . . . 15

            2.    The district court's refusal to lift the injunction and its order for supplemental briefing exceeds its authority under the law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    Other *Bauman* Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.    Petitioners have no other adequate means for relief and will be damaged or prejudiced in ways not correctable on appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2

C.   An order which continues a legally baseless injunction while ordering briefing on other potential legal claims not previously adjudicated, or even asserted, is an issue of first impression. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Table of Authorities

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Aguilar v. Felton*, 473 U.S. 402 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*All. for the Wild Rockies v. Petrick*, 68 F.4th 475 (9th Cir. 2023). . . . . . . . . . . . 22

*Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977). . . . . . 6, 13, 14

*Bell v. Wolfish*, 441 U.S. 520 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bellotti v. Baird*, 443 U.S. 622 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*California v. United States EPA*, 978 F.3d 708 (9th Cir. 2020) . . . . . . . . . . 16, 17

*Cardona v. United States Dist. Court (In re United States Dep't of Educ.)*, 25 F.4th 692 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Dobbs v. Jackson Women's Health Org.*, 597 US 215 (2022) . . . . . . . . . . . 8, 16-18

*Glick v. McKay*, 616 F. Supp. 322 (D. Nev. 1985) . . . . . . . . . . . . . . . . . . 9, 10, 17

*Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Marroquin v. City of Los Angeles*, 112 F.4th 1204 (9th Cir. 2024) . . . . . . . . . . 11

*Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 15 L. Ed. 435 (1855) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Roe v. Wade*, 410 U.S. 113 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992) . . . . . . . . . . . . . . . 17-19

*Sys. Fed'n No. 91, Ry. Emps.' Dep't, v. Wright*, 364 U.S. 642, 81 S. Ct. 368, 5 L. Ed. 2d 349 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Constitutions, Statutes, and Regulations**

Fed. R. Civ. P. 60(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed, R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NRS § 442.255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NRS § 442.2555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NRS § 442.257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 60(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed, R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NRS § 442.255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NRS § 442.2555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authorities**

Senate Bill 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Introduction and Relief Sought

This petition for a writ of mandamus concerns a permanent injunction issued against several Nevada statutes involving parental notification before an abortion is performed on certain minors and providing for a judicial bypass procedure and penalties. This case is nearly forty years old, and in that time, the underlying law supporting the injunction has been overruled. The District Attorneys[1] filed for a relief from the district court's judgment pursuant to Federal Rule of Civil Procedure 60(b)(5).

The factors this circuit considers for writs of mandamus are satisfied here. *Bauman v. United States Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). The district court has committed a clear error of law by refusing to lift the injunction and by continuing to enforce the injunction to allow other claims to be litigated while a legally baseless injunction remains in place. Despite the evaporation of the legal foundation for the injunction, the district court has not ordered the injunction to be lifted. Instead, the court ordered the parties to brief whether the injunction could be upheld by other legal theories, some of which were never alleged in the

---

[1] Defendants in the district court were various Nevada officials, including the Nevada Attorney General and various Nevada District Attorneys. The Petitioners, District Attorneys Jason D. Woodbury and Stephen B. Rye, will be referred to herein as "**District Attorneys**."

35-year old complaint, and none of which formed the legal basis for the injunction issued in 1991. Without immediate review, the District Attorneys have no adequate relief, as the district court's order for additional briefing is not directly appealable.

The harm to the parties caused by the injunction is ongoing and irreparable. Every day this injunction remains in place, the State of Nevada is infringing upon parental rights to guide the upbringing of their child regarding a life-altering decision. Furthermore, their children will be irreparably harmed by the lack of their parent's involvement and guidance. Minor children, who are too immature to make their own decisions and who would benefit from their parent's involvement and guidance, will have abortions that they would not have had if the injunction was lifted.

Immediate review is needed to prevent the district court from jerry-rigging the federal rules and circuit law to unlawfully keep a legally baseless injunction in place. The injunction's original legal justification has evaporated. The district court's order seeks to keep the unlawful injunction in place while other potential legal claims that have been pled but not adjudicated, or not even alleged, and which ultimately may not have merit, are litigated in the lower court—all without the required findings by the court under the Rules and circuit precedent that would

support a temporary restraining order or preliminary injunction.

District Attorneys respectfully request this Court to issue the writ, directing the court to: (1) lift the permanent injunction, and (2) vacate its order for supplemental briefing.

## Statement of Jurisdiction

This Court has the authority to issue a writ of mandamus pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure.

## Statement of the Issue

Whether the district court committed clear legal error, and exceeded its judicial authority, by refusing to lift the injunction, and by ordering further briefing on possible legal claims that might be brought against the statute, after the injunction's legal basis has evaporated when the Supreme Court of the United States overruled *Roe v. Wade*, 410 U.S. 113 (1973). *Dobbs v. Jackson Women's Health Org.*, 597 US 215, 292 (2022).

## Statement of the Relevant Facts

The district court declared unconstitutional and permanently enjoined the enforcement of three provisions of Nevada law: NRS §§ 442.255 ("**Notice Requirement**" with "**Judicial-Bypass Procedure**"), 442.2555 ("**Appeal Procedure**"), and 442.257 ("**Penalty Provision**") (collectively, "**Minor Abortion**

8

**Provisions**"). Because these Minor Abortion Provisions never went into effect,[2] the facts of this case are largely comprised of its procedural history.

On June 28, 1985, Dr. Eugene Glick and Planned Parenthood of Washoe County ("**PPWC**") challenged the Minor Abortion Provisions "pursuant to the United States Constitution and 42 U.S.C. § 1983," *Glick v. McKay*, 616 F. Supp. 322, 323 (D. Nev. 1985) ("***Glick I***"). *See also* Dkt. No. 1 at 2[3] (Attach. 2). PPWC moved for a preliminary injunction, Dkt. No. 2 (Attach. 3), and a temporary restraining order, Dkt. No. 5 (Attach. 4). On the same date, the district court issued a temporary restraining order against enforcement of the challenged provisions. Dkt. No. 6 (Attach. 5). On July 17, 1985, the district court entered an order granting the preliminary injunction, Dkt. No. 23 (Attach. 6), and issued a corresponding opinion. *See Glick* I, 616 F Supp at 328.

The district court rooted its injunction in "[t]he [federal] constitutional guarantee of personal liberty [that] protects a woman's right to terminate her pregnancy." *Id.* at 324 (citing *Roe*, 410 U.S. 113). The district court preliminarily enjoined the Minor Abortion Provisions, finding them unconstitutional. *Glick I* at

---

[2]These Nevada statutes were part of Senate Bill 510. Dkt. No. 126 at 1 (Attach. 1).

[3]All page numbers cited herein refer to the pagination in the original filing.

9

325–28.

District Attorneys appealed that order. *Glick v. McKay*, 937 F.2d 434, 436 (9th Cir. 1991) ("***Glick* Appeal**"). This Court, noting the "important constitutional issues . . . at stake," conducted plenary review of the challenged laws. *Id.* (citation omitted). Applying the analytical criteria established in *Bellotti v. Baird*, 443 U.S. 622, 643–44 (1979) (plurality opinion), the panel affirmed the preliminary injunction, finding that Nevada's judicial "bypass procedure . . . does not meet the expediency requirement for a notice statute bypass[.]"

On October 10, 1991, the district court entered Judgment for declaratory and permanent injunctive relief without further analysis Dkt. No. 74, 75 (Attach. 7) ("**Judgment**"), thus basing its Judgment on its earlier preliminary-injunction analysis and the Ninth Circuit's opinion.

Following the Judgment, the district court case remained closed for 32 years. On December 1, 2023, District Attorneys filed a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b)(5). Dkt. No. 83 (Attach. 8) ("**Relief Motion**").[4] PPMM filed its response in opposition to the

---

[4]District Attorneys noted that Planned Parenthood Mar Monte, Inc. ("**PPMM**"), as successor in interest to PPWC, could properly move to be substituted for PPWC, *id.* at 3–4. District Attorneys also filed a Suggestion of Death, explaining that in light of the death of Dr. Glick, "a motion to substitute for Dr. Glick," though permitted, was "not required." Dkt. No. 84 at 3 (Attach. 9).

Motion on June 14, 2024. Dkt. No. 115 (Attach. 12) ("**PPMM Opp'n**"). District

Attorneys filed their Reply on June 21, 2024. Dkt. No. 116 (Attach. 13) ("**Reply**").

Pursuant to the district court's order, Dkt. No. 122 (Attach. 14), the parties

submitted supplemental briefing concerning the effect of *Marroquin v. City of Los*

*Angeles*, 112 F.4th 1204 (9th Cir. 2024) on the case. Dkt. No. 123, 124 (Attach.

15, 16).

     Oral argument on the Relief Motion was held on October 29, 2024. Dkt. No.

128 (Attach. 17). The following day, the district court refused to lift the injunction

but instead ordered further briefing from PPMM and District Attorneys because

"there are constitutional grounds independent of the Court's 1991 judgment, some

of which were raised in the original 1985 complaint, which might justify a

continued injunction against the statutory provisions at issue." Dkt. No. 126 at 2

(Attach. 1). The district court ordered this supplemental briefing to address the

following:

> [A]lternative constitutional grounds for maintaining the injunction, such
> as: equal protection based on marital status, procedural due process
> regarding vagueness as to both providers and patients, procedural due
> process based on state law rights, and the changed circumstances,
> including changes in Nevada law that may impact these arguments.
> Parties should specify which arguments are based on claims alleged in

---

PPMM did file a motion to substitute, Dkt. No. 103 (Attach. 10), which was
granted. Dkt. No. 105 (Attach. 11).

the complaint, and which, if any, may require an amended complaint. The parties are free to raise other issues not discussed here.

*Id.* at 2–3.

District Attorneys now file this petition seeking a writ of mandamus and an order for the district court to: (1) lift the injunction, and (2) vacate its order for supplemental briefing.

## Reasons for Granting the Writ

The remedy of mandamus is strong medicine. But the ailment here calls for this cure. The district court has made a clear error of law by jerry-rigging the 60(b)(5) process to justify keeping an injunction, whose legal basis has evaporated, in place while inviting the Plaintiff to assert other possible legal claims. Some of these claims were not even alleged in the original complaint, but none had ever been argued as a basis for the injunction. The result of the district court's order is that the continuation of the injunction would be based on other potential legal claims without the findings required by the court to issue a TRO or preliminary injunction.

In the meantime, both parents and children are irreparably harmed by the unlawful injunction. Parents will be harmed by the infringement of their rights to guide their child on a life-altering decision, and their children will be harmed by

12

the lack of parental involvement and guidance. Minor children, who are too immature to make their own decisions and would benefit by parental involvement, will have abortions that they would not have had if the Minor Abortion Provisions were not enjoined. The District Attorneys have no other adequate remedy here—the district court's interlocutory order, retaining the injunction for further briefing on other, unasserted legal claims, is not directly appealable.

The district court made a clear error of law by: (1) refusing to lift the injunction when the legal basis for the injunction had evaporated, and (2) ordering further briefing on other possible legal claims against the statutes. The District Attorneys, but most importantly, the parents and minor children impacted by the continued injunction, will suffer irreparable harm that is not correctable on appeal. Finally, this Court should not allow the district court to abuse its discretion by using District Attorneys' 60(b)(5) motion as an end-run around the federal rules and circuit precedent permitting federal courts to enjoin state law.

A writ of mandamus is justified.

**Mandamus Generally**

"The remedy of mandamus is a drastic one, to be involved only in extraordinary situations." *Bauman*, 557 F.2d at 654. A writ has been most often used to confine an inferior court to its prescribed jurisdiction. *Id.* The Ninth

13

Circuit found that a principled use of writs protects the courts from a subversion of the policies underlying the finality rule or the statutory scheme governing interlocutory appeals. *Id.* at 653.

**Mandamus Factors Considered**

The Ninth Circuit considers five factors when evaluating a writ of mandamus:

1. The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires;

2. The petitioner will be damaged or prejudiced in a way not correctable on appeal;

3. The district court's order is clearly erroneous as a matter of law;

4. The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and

5. The district court's order raises new and important problems, or issues of law of first impression.

*Id.* at 654-55. Of these factors, a clear error of law "is almost always a necessary predicate for the granting of the writ." *Cardona v. United States Dist. Court (In re United States Dep't of Educ.)*, 25 F.4th 692, 698 (9th Cir. 2022). Therefore, this analysis starts with analysis of the clear error factor.

**A.     The district court made a clear error of law.**

"Clear error is a deferential standard, and we find clear error only when we have a 'firm conviction' that the district court has made a mistake in interpreting

the law, or there has been a 'clear abuse of discretion.'" *Id.* (citing *In re Walsh*, 15 F.4th 1005, 1008 (9th Cir. 2021)). The district court made a clear error by: (1) refusing to lift the injunction when the legal basis for the injunction had evaporated, and (2) ordering further briefing on other possible legal claims against the statutes.

### 1. District Attorneys sought to lift the injunction under the "Inequity Prong" of Rule 60(b)(5).

The federal rules allow a court to relieve a party from a judgment when "applying [that judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). ("**Inequity Prong**"). The permanent injunction in place here has prospective effect, as it has enjoined the Minor Abortion Provisions from ever taking effect, remains in place today, and will remain in place in the future unless lifted. *See* Order, Dkt. No. 126 at 1 (Attach. 1).

A motion for relief based on the Inequity Prong of Rule 60(b)(5) may be based upon the overruling of the underlying precedent supporting the original injunction. When that precedent is overruled, the legal basis for the injunction has evaporated, and no other equitable consideration is to be considered. Because the entire legal foundation for the injunction here has been explicitly overruled by *Dobbs*, the court has no discretion in this case—it must lift the injunction.

15

A long line of cases has held that a court abuses its discretion "by refusing to modify an injunction even after its legal basis has evaporated and new law permits what was previously enjoined." *California v. United States EPA*, 978 F.3d 708, 711 (9th Cir. 2020) ("*EPA*"). This is true whether the change in law is the result of subsequent legislative action or by a significant shift in the applicable jurisprudence. *See, e.g., Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 15 L. Ed. 435 (1855) (modifying decree based on Congressional change to applicable law); *Sys. Fed'n No. 91, Ry. Emps.' Dep't, v. Wright*, 364 U.S. 642, 648, 81 S. Ct. 368, 5 L. Ed. 2d 349 (1961) (modifying decree after change in law regarding unions); *Agostini v. Felton*, 521 U.S. 203 (1997) (holding city entitled to relief from prospective injunction after substantial change to Establishment Clause jurisprudence).

Exactly the type of legal sea change envisioned by *Agostini* happened when *Dobbs* overruled *Roe*. *Dobbs*, 597 U.S. at 292 (overruling *Roe*, 410 U.S. 113). The overruling of *Roe* by *Dobbs* is even stronger than the "change in law" justifying the injunction modification in *Agostini*. There, the underlying case, *Aguilar v. Felton*, 473 U.S. 402 (1985), had not been overruled prior to the city's modification request under Rule 60(b)(5), but the injunction was "not consistent" with the Court's subsequent Establishment Clause decisions. *Agostini*, 521 U.S. at

208.

Here, *Roe* was explicitly overruled. The Court held that the "Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision." *Dobbs,* 597 U.S. at 231. The injunction at issue here was ordered on the basis of "[t]he [federal] constitutional guarantee of personal liberty [that] protects a woman's right to terminate her pregnancy." *Glick I*, 616 F. Supp. at 324 (citing *Roe*, 410 U.S. 113). The overturning of *Roe* caused the legal basis for the injunction of the Minor Abortion Provisions to evaporate. *See EPA*, 978 F.3d at 711.

**2.    The district court's refusal to lift the injunction and its order for supplemental briefing exceeds its authority under the law.**

The district court noted that "a modification under Rule 60(b)(5) 'must not create or perpetuate a constitutional violation.'" Order, Dkt. No. 126 at 2 (Attach. 1) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992)). While this *Rufo* quote is accurate, it disregards the procedural posture of *Rufo*, the two-step approach for Rule 60(b) *modification* set forth by the Court, and the Court's admonitions about how an injunction may be "tailored" to conform with changes in fact or law. *Id.* at 391-92.

*Rufo* involved a modification of a consent decree entered into to correct

unconstitutional conditions at a county jail. *Id.* at 371. The requested modification was based on substantial factual changes, as well as some legal changes since the inception of the consent decree. While the petitioner moving for modification argued a change in law required the modification, the Court disagreed. *Id.* at 388 (finding that *Bell v. Wolfish*, 441 U.S. 520 (1979) merely held "double celling" inmates was not unconstitutional in all cases, but it didn't cast doubt on the legality of "single celling"). Here, *Dobbs* explicitly overruled *Roe* in its entirety, 97 U.S. at 292, thereby evaporating the legal justification for the injunction. District Attorneys do not seek a mere "modification" of the injunction—they seek a complete lifting of the injunction because of the change in law.

*Rufo* required a two-step approach to a *modification* under Rule 60(b). First, the parties seeking modification must establish that "a significant change in circumstances warrants revision of the decree," *Rufo*, 502 U.S. at 383. Second, they must show that the "proposed modification is suitably tailored to the changed circumstance." *Id.* at 391. Again, even if viewed under the lens of "modification," the "significant" change here is the overruling of the law supporting the injunction. *See supra*.

The second *Rufo* step notes that a modification is not suitably tailored if it: (1) creates or perpetuates a constitutional violation; (2) rewrites a consent decree

18

so that it conforms to the constitutional floor; or (3) considers provisions of the consent decree outside of those actually challenged by the moving party. *Id.* at 391-92. In other words, the court should only focus on what is *tailored* to resolve the problem created by the change in circumstances—"A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires." *Id.* at 391.

Here, "tailoring" the injunction via some sort of modification is not an option. The injunction was based upon legal reasoning rooted in constitutional law that has been completely overruled. The only remedy under the law is lifting the injunction. Yet, the district court has not lifted the injunction whose legal basis has evaporated, as it is required to do under the law. Instead, the court seeks to reopen and re-litigate a case that has been closed for nearly 35 years in order to rewrite the injunction, to conform with some theoretical legal arguments or claims that have not been previously considered, adjudicated, or in some cases, even alleged. The court's order far surpasses the district court's discretion under the law. The legal justification for the injunction that is still in place no longer exists—so the injunction must be lifted.

This *Bauman* factor strongly favors the requested writ of mandamus.

**Other _Bauman_ Factors**

**B.  Petitioners have no other adequate means for relief and will be damaged or prejudiced in ways not correctable on appeal.**

District Attorneys cannot appeal the district court's order for supplemental briefing, so they have no other means for relief. Likewise, this order, which far surpasses the district court's authority under the law, is not correctable on appeal.

These _Bauman_ factors weigh in favor of the writ. Essentially, if the scope of the briefing the district court has ordered is permitted and the injunction remains in place until all the (potential) legal claims (not previously considered or adjudicated and not currently asserted) are litigated, the damage to the District Attorneys will have already occurred. The District Attorneys will be forced to expend time and resources in briefing issues not raised or considered in the litigation over the course of the last 32 years. This forced continuation of the litigation even after the legal basis for the injunction has evaporated works against the fundamental principle of finality in our justice system.

The harm to the parties caused by the injunction is ongoing and irreparable. Every day this legally baseless injunction remains in place, the State of Nevada is infringing upon parental rights to guide their child regarding a life-altering decision. Their children will be harmed by the lack of parental involvement and

guidance. Minor children, who are too immature to make their own decisions and would benefit by parental involvement, will have abortions that they would not have had if the Minor Abortion Provisions were not enjoined.

Therefore, this *Bauman* factor weighs in favor of the requested writ of mandamus.

**C.    An order which continues a legally baseless injunction while ordering briefing on other potential legal claims not previously adjudicated, or even asserted, is an issue of first impression.**[5]

The district court is using District Attorneys' 60(b)(5) motion as an end-run around the federal rules and circuit precedent which provide the exclusive authority for federal courts to enjoin state law. The district court is continuing to enforce a now unlawful injunction, which must be vacated under Rule 60(b)(5), on the basis that there might be other potential, but unasserted and unadjudicated, legal claims that could provide a basis to enjoin the state law.

This violates Federal Rule of Civil Procedure 65 which provides the exclusive basis for a federal court to enjoin a state law by either a TRO or a preliminary injunction. Under circuit precedent, "to obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent

---

[5]The *Bauman* factor of an oft-repeated error is not at issue here.

an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023). In this case, no party has ever filed for a TRO or a preliminary injunction based upon any other legal theory than *Roe*, which the current injunction is based on. Dkt. No. 126 at 2-3 (Attach. 1). And of course, because no party has filed such a motion, the lower court did not base its injunction here on any other legal theories

And no court has ever based an injunction on the prospect that there are other legal theories that might justify the injunction, without the findings required by Rule 65. This end-run appears to be one of first impression in the Ninth Circuit. If this injunction was properly lifted under Rule 60(b)(5), the plaintiffs could file a separate case based upon alternative legal theories and claims. The district court wants to ignore that procedural hurdle—instead skipping ahead to considering injunctive relief in a long-closed case based upon no motion, while considering unadjudicated and even unasserted legal theories, without the findings required under Rule 65. This Court should not allow the district court to abuse its discretion in this way.

The *Bauman* factors weigh heavily in favor of the writ of mandamus. The district court made a clear error by: (1) refusing to lift the injunction when the

legal basis for the injunction had evaporated, and (2) ordering further briefing on other possible legal claims against the statutes. The District Attorneys, but most importantly, the parents and minor children impacted by the continued injunction, will suffer irreparable harm that is not correctable on appeal. Finally, this Court should not allow the district court to abuse its discretion by using District Attorneys' 60(b)(5) motion as an end-run around the federal rules and circuit precedent which establish the only circumstances permitting federal courts to enjoin state law.

## Conclusion

For all the foregoing reasons, this Court should issue a writ of mandamus to the United States District Court for the District of Nevada, ordering that court to: (1) lift the permanent injunction, and (2) vacate its order for supplemental briefing.

November 21, 2024                    Respectfully submitted,

                                        /s/ James Bopp, Jr.
                                          James Bopp, Jr., Ind. Bar No. 2838-84
                                          Joseph D. Maughon Va. Bar No. 87799
                                          THE BOPP LAW FIRM, PC
                                          The National Building
                                          1 South 6th Street
                                          Terre Haute, Indiana 47807
                                          Telephone: (812) 232-2434
                                          Facsimile: (812) 235-3685
                                          jboppjr@aol.com
                                          jmaughon@bopplaw.com
                                          *Attorneys for Petitioners*

## Statement of Related Cases

Petitioners are not aware of any related cases.

/s/ James Bopp, Jr.
James Bopp, Jr.

**Certificate Regarding Compliance with Circuit Rule 21-2(c)**

I hereby certify that this petition does not exceed 30 pages, excluding the documents listed at FRAP 21(a)(2)(C) and 32(f).

/s/ James Bopp, Jr.
James Bopp, Jr.

## Certificate of Service

I hereby certify that on November 21, 2024, I electronically filed the foregoing petition and all attachments thereto with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. On this date, a notice of filing of this petition, including the petition itself, will be lodged in the district court in the underlying matter, and service in compliance with Federal Rule of Appellate Procedure 21(a)(1) will be accomplished through the district court's CM/ECF system. All counsel in this case are participants in the district court's CM/ECF system. In addition, a courtesy copy of the foregoing petition has been provided via e-mail to the following counsel and to the district court judge:

Daniel Bravo
Bravo Schrager, LLP
6675 South Tenaya Way, Ste. 200
Las Vegas, NV 89113
Email: daniel@bravoschrager.com

Hannah Swanson
Planned Parenthood Federation of America
1110 Vermont Ave NW
Suite 300
Washington, DC 20005
202-803-4030
Email: hannah.swanson@ppfa.org

Valentina De Fex
Planned Parenthood Federation of America
123 William St
Ste Floor 11
New York, NY 10038-3847
469-337-3722
Email: valentina.defex@ppfa.org

Bradley Scott Schrager
Bravo Schrager, LLP
6675 South Tenaya Way
Suite 200
Las Vegas, NV 89113
702-996-1724
Email: bradley@bravoschrager.com

The Honorable Anne R. Traum,
District Court Judge for the
United States District Court for the
District of Nevada,
katie_sutherland@nvd.uscourts.gov
(Courtroom Administrator)

/s/ James Bopp, Jr.
James Bopp, Jr

**Attachment 1**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Order, Dkt. No. 126**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| Planned Parenthood Monte Mar, | Case No 3:85-cv-331-ART-CSD |
| Plaintiff, | **ORDER ON SUPPLEMENTAL BRIEFING** |
| v. | |
| Aaron Ford, in his capacity as Attorney General, *et. al.*, | |
| Defendants. | |

In 1985, Plaintiffs (then Eugene Glick, M.D. and Planned Parenthood of Washoe County) filed a complaint (ECF No. 1) and motion for a preliminary injunction (ECF No. 2), seeking to enjoin sections of Senate Bill 510, codified in NRS Chapter 442, from being enforced. Plaintiffs argued that these provisions, which require parental notification before an abortion is performed on certain minors, were unconstitutional. The complaint alleged that the challenged provisions violate the Fourteenth Amendment Due Process and Equal Clauses, as well as the First Amendment.

On July 17, 1985, Judge Edward C. Reed granted Plaintiffs' motion for preliminary injunction and issued an injunction prohibiting the enforcement of NRS 442.255(1)-(4), NRS 442.257, and Section 2 of Senate Bill 510. (ECF Nos. 22-23); *Glick v. McKay*, 616 F.Supp. 322 (D. Nev. 1985). Defendants appealed this order, and the Ninth Circuit affirmed. *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991). Shortly thereafter, Plaintiffs filed a motion for summary judgment in the District Court on the basis of the Ninth Circuit's decision (ECF No. 68). The Court granted this motion and entered judgment, declaring NRS 442.255 and 442.2555 unconstitutional and permanently enjoining NRS 442.255, 442.2555, and 442.257.  (ECF No. 74.)

On December 1, 2023, Defendants[1] filed a motion for relief from the Court's judgment under Fed. R. Civ. P. 60(b)(5), arguing relief from the judgment was no longer equitable because (1) *Lambert v. Wicklund*, 520 U.S. 292 (1997) had abrogated *Glick* in 1997, and (2) *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) had eliminated the basis for the injunction in 2022. (ECF No. 83.) The Court granted Plaintiff Planned Parenthood of Mar Monte's motion to substitute and be designated as successor Plaintiff. (ECF Nos. 103, 105.)

In their opposition to Defendants' motion for relief, Plaintiff argued that there are constitutional grounds independent of the Court's 1991 judgment, some of which were raised in the original 1985 complaint, which might justify a continued injunction against the statutory provisions at issue. (ECF No. 115 at 20.) Plaintiff requested the opportunity for supplemental briefing to address such arguments. (*Id.*) In their reply brief, Defendants disagreed with the need to address these challenges but stated that the Court could order further briefing to address any questions it may have regarding implementation. (ECF No. 116 at 20.)

The parties dispute whether the Court must consider other equitable factors in deciding this motion for relief under 60(b)(5). (ECF No. 115 at 16-20; ECF No. 116 at 9-12.); *see Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021); *California by and through Becerra v. EPA*, 978 F.3d 708 (9th Cir. 2020). However, it is clear that a modification under Rule 60(b)(5) "must not create or perpetuate a constitutional violation." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). Thus, Court must consider Plaintiff's arguments regarding alternative constitutional grounds for maintaining the injunction.

Accordingly, the Court will permit the parties to supplement their briefing to address alternative constitutional grounds for maintaining the injunction,

---

[1] Current officer-holder Defendants were automatically substituted for original Defendants, pursuant to Fed. R. Civ. P. 25(d).

such as: equal protection based on marital status, procedural due process regarding vagueness as to both providers and patients, procedural due process based on state law rights, and the changed circumstances, including changes in Nevada law that may impact these arguments. Parties should specify which arguments are based on claims alleged in the complaint, and which, if any, may require an amended complaint. The parties are free to raise other issues not discussed here.

**Supplemental briefing is ordered as follows:**

Plaintiff shall have 30 days from the date of this order to file supplemental briefing on the issues described herein, not to exceed 30 pages.

Defendants shall have 21 days from the date of Plaintiff's supplemental briefing to file responsive briefing, not to exceed 30 pages.

Dated this 30th day of October, 2024.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

**Attachment 2**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Complaint, Dkt. No. 1**

1  STANLEY H. BROWN, Chartered
   STANLEY H. BROWN, SR.
2  STANLEY H. BROWN, JR.
   147 East Liberty Street
3  Reno, Nevada  89501
   (702) 322-0606
4
   AMERICAN CIVIL LIBERTIES UNION
5  FOUNDATION OF NEVADA
6  Attorneys for Plaintiffs
7
8
9                UNITED STATES DISTRICT COURT
10                    DISTRICT OF NEVADA
11                      *   *   *   *
12  EUGENE GLICK, M.D., and          ) CV-R-85-
    PLANNED PARENTHOOD OF WASHOE     )
13  COUNTY, a non-profit Nevada      )
    corporation,                     )
14                                   )
              Plaintiffs,            )
15                                   )
                                     )
16            vs.                    )     C O M P L A I N T
                                     )
17  BRIAN McKAY, Attorney General of )
    the State of Nevada;  MILLS LANE,)
18  District Attorney of the County  )
    of Washoe, State of Nevada;  NOEL)
19  WATERS, District Attorney for    )
    Carson City, State of Nevada;    )
20  MICHAEL E.  DINNING, District    )
    Attorney for the County of       )
21  Churchill, State of Nevada;      )
    ROBERT J.  MILLER, District      )
22  Attorney for the County of Clark,)
    State of Nevada;  BRENT T.       )
23  KOLVET, District Attorney for the)
    County of Douglas, State of      )
24  Nevada;  JAMES E.  WILSON,       )
    District Attorney for the County )
25  of Elko, State of Nevada; JERROLD)
    COURTNEY, District Attorney for  )
26  the County of Esmeralda, State of)
    Nevada;  JOHNSON W.  LLOYD, Dis- )
27  trict Attorney for the County of )
    Eureka, State of Nevada;  VIR-   )
28  GINIA SHANE, District Attorney   )
    for the County of Humboldt, State)

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-1-

1  of Nevada;   HY FORGERON, District  )
   Attorney for the County of Lander,)
2  State of Nevada;   EILEEN BARNETT, )
   District Attorney of the County of)
3  Lincoln, State of Nevada;   WILLIAM)
   G.   ROGERS, District Attorney of  )
4  the County of Lyon, State of       )
   Nevada;   LARRY G.   BETTIS,       )
5  District Attorney of the County of)
   Mineral, State of Nevada;   ANDY   )
6  DEMETRAS, District Attorney of the)
   County of Nye, State of Nevada;    )
7  RICHARD WAGNER, District Attorney  )
   of the County of Pershing, State   )
8  of Nevada;   TOM WRIGHT, District   )
   Attorney of the County of Storey,  )
9  State of Nevada;   STEVEN G.        )
   McGUIRE, District Attorney of the  )
10 County of White Pine, State of     )
   Nevada,                            )
11                                    )
                                      )
12 _____Defendants.___)

13           COMES NOW, Plaintiffs and allege:

14                 PRELIMINARY STATEMENT

15        1.   This is a civil rights action brought under 42

16  U.S.C. §1983 and the United States Constitution by a physician

17  practicing medicine in the State of Nevada, asserting his rights

18  and the rights of his patients, and a non-profit Nevada cor-

19  poration which offers family planning and related gynecological

20  services to the general public, against certain officials of the

21  State of Nevada responsible for the enforcement and administra-

22  tion of Chapter 442 of the Nevada Revised Statutes as amended by

23  Senate Bill 510 and enacted by the 1985 Nevada Legislature.

24        2.   NRS.   Chapter 442 was amended in May, 1985, by:

25  adding Section 2.  and Section 3.;  amending Section 4.  (NRS.

26  442.  240);  amending Section 5.  (NRS.  442.250);  amending

27  Section 6.  (NRS.  442.252);  amending Section 7.  (NRS.

28  442.253);  amending Section 8.  (NRS.  442.255);  amending

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

Section 9.   (NRS.   442.256);   amending Section 10.   (NRS.
442.260);   amending Section 11.   (NRS.   442.270);   and, repealing
Section 12.   (NRS.   442.254);   that said amendments, additions
and deletions become effective at 12:01 a.m.   July 1, 1985.   NRS.
§442.257 was enacted in 1981 and remains unchanged.   On their
face, and as applied to the Plaintiffs and their patients, the
challenged Sections, which are Section 2, Chapter 442, NRS.   442.
253(e), NRS.   442.255(2)(2c)(4), as enacted by the 1985 Nevada
Legislature, restrict the performance of abortion, are unclear,
and subject physicians who perform abortions and facilities which
refer for abortions, to uncertain regulations and criminal
prosecution should they fail to comply with any of the challenged
Sections in violation of their rights as secured by the First,
Fourth, Fifth, Ninth and Fourteenth Amendments to the United
States Constitution.

   3.   Plaintiffs seek declaratory and injunctive relief
upon the ground the challenged Sections violate rights guaranteed
by the Amendments to the United States Constitution enumerated in
the paragraph next above.

JURISIDICTION

   4.   This Court has jurisdiction of this action by vir-
tue of 28 U.S.C. §1343(3) and §1343(4), authorizing jurisdiction
of claims brought under 42 U.S.C. §1983 to enforce rights guaran-
teed by the United States Constitution.   This Court also has jur-
isdiction of this action pursuant to 28 U.S.C. §1331 as the
claims arise under the United States Constitution.   Plaintiffs
also seek declaratory relief pursuant to 28 U.S.C. §2201 and
§2202.

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-3-

PARTIES

5.   Plaintiff EUGENE GLICK, M.D., is a citizen of the United States and resides in Nevada.  He is a physician licensed to practice medicine in the State of Nevada and is actively engaged in the practice of obstetrics and gynecology in Reno.  Dr. GLICK brings this action on his own behalf and on behalf of his pregnant women patients, among whom are married women, mature minors, emancipated minors, minors for whom it would not be in their best interests to have their parents told of their abortions, and minors with emergency health care needs.

6.   Plaintiff PLANNED PARENTHOOD OF WASHOE COUNTY, a non-profit Nevada corporation, operates a family planning clinic which provides birth control and related medical services to its patients, including pregnancy tests and pregnancy counseling.

7.   Defendant BRIAN McKAY is the Nevada State Attorney General.  As such, he is responsible for the enforcement of the challenged sections.  Unless restrained by Order of this Court, Defendant McKAY will perform his duties to ensure that the challenged Sections are enforced.

8.   Defendant MILLS LANE is the District Attorney for Washoe County, Nevada.  As such, he is responsible for the enforcement of the challenged Sections throughout Washoe County. That unless restrained by Order of this Court, Defendant LANE will perform his duties to ensure that the challenged Sections are enforced; that the same is true of each and every District Attorney for each of the remaining sixteen (16) counties of Nevada named as Defendants hereinabove.

///

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-4-

FACTUAL ALLEGATIONS

9. That prior to 1984, the Nevada "Abortion Act", Chapter 442 of the NRS., read as set forth in Exhibit "A", attached hereto; that in May of 1984 Judgment was entered in this Court in the matter styled EUGENE GLICK, M.D., ET AL, Plaintiffs, vs. RICHARD H. BRYAN, ET AL., Defendants, CV-R-81-150 (BRT), enjoining and restraining state officials from enforcing or implementing NRS. §§442.250(2), 442.250(3), 442.252, 442.253, 442.254, 442.255, 442.256(2), 442.256(3), 442.257 and 442.270(1). Said statutory provisions were held to violate the Constitution of the United States.

10. In May of 1985, the Nevada legislature, by Senate Bill 510, amended NRS. Chapter 442 in the particulars mentioned in paragraph 2., above. The challenged Sections are Section 2., Chapter 442; NRS. 442.253(e); NRS. 442.255(2)(2c)(4). NRS. 442. 257, which is the criminal penalty enacted in 1981, remains unchanged. The amendments, additions and deletions become effective at 12:01 a.m., July 1, 1985, and the text, Senate Bill 510, is attached hereto as Exhibit "B".

11. The Nevada Legislature has enacted laws regulating the provision of abortion services while at no time have laws been enacted which similarly regulate any other medical procedure.

12. The challenged Sections restrict and deny access to abortion in the following ways: (a) Section 2., Chapter 442, unconstitutionally fails to provide for specific rules assuring confidentiality and expedited appellate review process; (b) NRS. 442.253(e) is unconstitutionally vague in that it fails to spe-

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-5-

cify with particularity some body of objective infomation a physician must rely on in explaining the "physical and emotional implications" of an abortion; (c) NRS. 442.255(2) unconstitutionally fails to provide a specific procedure whereby an unemancipated unmarried minor woman may gain access to the Courts for obtaining an Order authorizing an abortion, and further, it fails to guarantee legal counsel during the initial proceedings thereunder; (d) NRS. 442.2(c) unconstitutionally fails to apply the correct standards the Court should apply in determining whether an abortion is in the minor's best interest; (e) NRS. 442.255(4) unconstitutionally fails to make provision for the promulgation of specific rules assuring confidentiality of the proceedings taken thereunder and it further fails to provide for specific rules for the initiation and conduct of the proceedings thereunder; (f) that the Nevada Courts have taken no steps to implement the 1985 amendments.

13. Persons who violate any provision of NRS. 442.252 to 442.256 are guilty of a misdemeanor.

14. Upon information and belief, Defendants will seek Plaintiffs' compliance with the provisions of the challenged Sections and will cause criminal prosecutions to be instituted against Plaintiffs for their failure to comply.

15. Compliance with the challenged Sections will cause irreparable injury, for which no plain, speedy or adequate remedy at law exists, to Plaintiffs and their patients, by depriving them of rights guaranteed under the United States Constitution and by precluding access to elective and medically necessary pregnancy termination procedures in Nevada, which will increase

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-6-

the physical and emotional risks attendant to the making and effectuation of the choice whether or not to carry a pregnancy to term or to have an abortion.

16. In the course of his ordinary and usual medical practice, Plaintiff doctor receives requests from pregnant patients, desiring pregnancy terminations to be performed by qualified physicians under proper medical conditions. The Plaintiff physician has among his patient populations all or some of the following: married women who do not wish to have their husbands told of their abortions, emancipated minors, mature minors, minors for whom notification of their parents would not be in their best interests and minors with emergency health care needs.

17. Plaintiff Doctor desires to give complete, safe and proper advice and treatment to his patients regarding the abortion decision. He is prevented from doing so, and restricted in his right to practice medicine consistent with his best independent medical judgment, by the challenged Sections. As a result, Plaintiff Doctor, and the patients who he seeks to represent, are suffering and will continue to suffer irreparable injury for which they have no plain, speedy or adequate remedy at law.

18. Plaintiff PLANNED PARENTHOOD OF WASHOE COUNTY desires to give complete, safe and proper advice and treatment to its patients regarding the abortion decision, to refer those patients desiring abortions to doctors providing such services, and the availability of these services. It is prevented from doing so by the challenged Sections. As a result, Plaintiff PLANNED PARENTHOOD OF WASHOE COUNTY is suffering and will con-

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A Professional Corporation
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-7-

1  tinue to suffer irreparable injury for which it has no plain,

2  speedy or adequate remedy at law.

3  <u>FIRST CLAIM FOR RELIEF</u>
   (DUE PROCESS)

4

5      19.  Plaintiffs incorporate herein by reference as

6  though set forth in full the allegations of paragraph 1 through

7  18, above.

8      20.  The challenged Sections deprive Plaintiffs and

9  their patients of the following liberties without due process of

10  law in violation of the Fourteenth Amendment to the United States

11  Constitution:

12      (a)  The right of a minor unemancipated
    and unmarried woman to freely gain access

13  to pregnancy termination, a fundamental
    right of privacy protected by the First,

14  Fifth, Ninth, and Fourteenth Amendments
    of the United States Constitution;

15

16      (b)  The right of physicians to give, and
    of women to receive, medical treatment

17  and advice in accordance with accepted
    medical standards, with regard to the deci-

18  sion whether to terminate a pregnancy,
    rights guaranteed by the First, Fifth,

19  Ninth, and Fourteenth Amendments to the
    United States Constitution;

20      (c)  The right of PLANNED PARENTHOOD,
    Plaintiff, as a family planning clinic,

21  because of the lack of guidelines, to refer
    patients to doctors and facilities provid-

22  ing abortion services, a right guaranteed
    by the First, Fifth, Ninth and Fourteenth

23  Amendments to the United States Constitu-
    tion; and

24

25      (d)  The challenged Sections are so vague
    and overbroad that they fail to give rea-

26  sonable notice to physicians of the infor-
    mation which they must disseminate to their

27  minor women patients prior to performing
    an abortion which must be obtained and fur-

28  ther fail to give reasonable notice to the
    Plaintiffs of what conduct is proscribed

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-8-

1     by said Sections.

2                    SECOND CLAIM FOR RELIEF
3                     (EQUAL PROTECTION)

4         21.  Plaintiffs incorporate herein by reference as

5  though set forth in full the allegations of paragraphs 1 through

6  18, above.

7          22.  The challenged Sections deprive Plaintiffs and

8  their patients of equal protection of the laws in violation of

9  the Fourteenth Amendment to the United States Constitution, in

10  that they unreasonably single out for regulation the abortion

11  procedure without a compelling state interest, and without

12  regulating other, comparable meidcal procedures.

13        23.  The challenged Sections deprive Plaintiffs'

14  patients of equal protection of the laws in violation of the

15  Fourteenth Amendment to the United States Constitution in that

16  they unreasonably, and without a compelling state interest, dis-

17  criminate between those pregnant married or emancipated minor

18  women who choose to terminate their pregnancies and pregnant, un-

19  emancipated or unmarried minor women who choose to terminate

20  their pregnancies.

21                  THIRD CLAIM FOR RELIEF
22                     (FREE SPEECH)

23        24.  Plaintiffs incorporate herein by reference as

24  though set forth in full the allegations of paragraph 1 through

25  18, above.

26        25.  The challenged Sections deprive Plaintiffs of

27  their right to freely give information to women patients desiring

28  abortions in violation of the First Amendment to the United

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

1  States Constitution.

2  <u>IRREPARABLE INJURY</u>

3  26.  As a result of the challenged Sections, Plain-

4  tiffs and the patients whom they seek to represent, will be sub-

5  jected to immediate and irreparable harm, namely:

6      (a)  Plaintiff physician will face criminal
    prosecution if he does not comply with the
7      Sections challenged herein;

8      (b)  Patients whose interests the Plaintiff
    doctor represents will be discouraged, impeded
9      and/or prevented from obtaining abortions they
    desire and thus suffer physical and emotional
10      harm;

11      (c)  If the Plaintiff physician does comply
    with the statute, his practice of medicine
12      in accordance with his best medical judg-
    ment, and the right of his women patients
13      to receive complete information, will be
    infringed upon; and,

14
    (d)  Plaintiff PLANNED PARENTHOOD OF WASHOE
15      COUNTY will continue to be deterred from
    freely dispensing information regarding
16      abortion services, in violation of its
    free speech rights under the First Amendment.

17

18  WHEREFORE, Plaintiffs pray this Court:

19  A.  Assume jurisdiction of this action;

20  B.  Issue a temporary restraining Order, Preliminary

21  Injunction and a permanent Injunction restraining Defendants,

22  their employees, agents and servants from enforcing the chal-

23  lenged Sections of the Nevada Revised Statutes;

24  C.  Declare the challenged Sections violative of the

25  United States Constitution, and therefore, void and of no effect;

26  D.  Award Plaintiffs their costs and attorneys' fees

27  pursuant to 42 U.S.C. §1988; and

28  E.  Enter such other and further relief as the Court

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-10-

1  shall find just and proper.

2                           STANLEY H. BROWN, Chartered
                            STANLEY H. BROWN, SR.
3                           STANLEY H. BROWN, JR.

4                           AMERICAN CIVIL LIBERTIES UNION
                            FOUNDATION OF NEVADA
5

6
                            BY: _____
7                              Stanley H. Brown, Sr.

8

9                           BY: _____
                               Stanley H. Brown, Jr.
10

11                          Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-11-

Exhibit A

## ABORTION

**442.240   "Abortion" defined.**  As used in NRS 442.250 to 442.257, inclusive, unless the context requires otherwise, "abortion" means the termination of a human pregnancy with an intention other than to produce a live birth or to remove a dead fetus.

(Added to NRS by 1973, 1637; A 1981, 1163)

**442.250   Conditions under which abortion permitted.**

1.   No abortion may be performed in this state unless the abortion is performed:

(a) By a physician licensed to practice in this state or by a physician in the employ of the government of the United States who:

(1) Exercises his best clinical judgment in the light of all attendant circumstances including the accepted professional standards of medical practice in determining whether to perform an abortion, and

(2) Performs the abortion in a manner consistent with accepted medical practices and procedures in the community.

(b) Within 24 weeks after the commencement of the pregnancy.

(c) After the 24th week of pregnancy only if the physician has reasonable cause to believe that an abortion currently is necessary to preserve the life or health of the pregnant woman.

2.   All abortions must be performed in a hospital or other health and care facility licensed under chapter 449 of NRS.

3.   Before performing an abortion, the physician shall enter in the permanent records of the patient the facts on which he based his best clinical judgment that there is a substantial risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair the physical or mental health of the mother.

(Added to NRS by 1973, 1637; A 1975, 367, 1977, 961; 1981, 1164)

**442.252   Physician to certify informed consent, marital status, age of woman before performing abortion.**  No physician may perform an abortion in this state unless, before he performs it, he certifies in writing that the woman gave her informed written consent, freely and without coercion, after the attending physician informed her of the matters required by NRS 442.253 not more than 30 days and not less than 24 hours before her consent to the abortion, unless in the judgment of the physician the abortion is necessary to avert an imminent peril to the life of the woman. The physician shall further certify in writing the pregnant woman's marital status and age based upon proof of age offered by her. The fact that the woman was informed within the time required by this section is not prima facie evidence of informed consent.

(Added to NRS by 1981, 1162)

**442.253   Requirements for informed consent.**

1.   The attending physician shall accurately and in a manner which is reasonably likely to be understood by the pregnant woman:

(a) Explain that, in his professional judgment, she is pregnant and a copy of her pregnancy test is available to her.

(b) Inform her of the number of weeks which have elapsed from the probable time of conception.

(c) Explain any known immediate and long-term physical or psychological dangers resulting from abortion including an increase in the incidence of premature births, tubal pregnancies and stillbirths.

(d) Explain the general nature and the extent of the particular risks associated with her pregnancy.

(e) Describe the medical procedure to be used.

(f) Present any alternatives to abortion including a list of public and private agencies that provide pregnant women with economic and other assistance and the services provided by each agency.

(g) Explain that if the child aborted is alive, the physician has a legal obligation to take all reasonable steps to preserve the life and health of the child.

(h) Present any other material facts which, in his professional judgment, are necessary to allow the woman to give her informed consent.

2.   If the woman does not understand English, the form indicating consent must be written in a language understood by her, or the attending physician shall certify on the form that the information required to be given has been presented in such a manner as to be understandable by her. If an interpreter is used, the interpreter must be named and reference to this use must be made on the form for consent.

(Added to NRS by 1981, 1162)

**442.254  Notice to husband.**
1.  If the pregnant woman is married, the physician may not perform or induce an abortion unless he gives notice to her husband of his intention to do so at least 24 hours before the abortion if it is possible to do so.
2.  No notice need be given to the husband if the woman seeking the abortion is legally separated from her husband or has secured a judicial declaration of paternity stating that a man other than her husband is the father of the unborn child.
(Added to NRS by 1981, 1163)

**442.255  Notice to parent or guardian.**  A person shall not knowingly perform an abortion upon an unmarried and unemancipated woman who is under the age of 18 years unless he notifies a parent or guardian of the woman at least 24 hours before the abortion, if it is possible to notify the parent or guardian.
(Added to NRS by 1981, 1163)

**442.256  Records,**  A physician who performs an abortion shall maintain a record of it for at least 5 years after it is performed. The record must contain:
1.  The written consent of the woman;
2.  A statement of the information which was provided to the woman pursuant to NRS 442.253; and
3.  A description of efforts to give any notice required by NRS 442.254 or 442.255.
(Added to NRS by 1981, 1163)

**442.257  Criminal penalty.**  Any person who violates any provision of NRS 442.252 to 442.256, inclusive, is guilty of a misdemeanor.
(Added to NRS by 1981, 1163)

**442.260  Health division to adopt rules governing performance and reporting of abortions.**
1.  The health division of the state department of human resources shall adopt and enforce rules and regulations governing the conditions under and the methods by which abortions may be performed, as well as all other aspects pertaining to the performance of abortions pursuant to NRS 442.250.
2.  The health division shall adopt and enforce rules and regulations for an abortion reporting system. Such system shall be designed to preserve confidentiality of information on the identity of individual women upon whom abortions are performed. The abortion reporting system may require that the following items be reported for each abortion:
(a) Date of abortion;
(b) Place of abortion (city, county, and state);
(c) Type of facility;
(d) Place of usual residence of woman (city, county, and state);
(e) Age of woman;
(f) Ethnic group or race;
(g) Marital status;
(h) Number of previous live births;
(i) Number of previous induced abortions;
(j) Duration of pregnancy (as measured from first day of last normal menses to date of abortion, and as estimated by uterine size prior to performance of the abortion);
(k) Type of abortion procedure; and
(l) In the event a woman has had a previously induced abortion or abortions, the information in paragraphs (a) to (k), inclusive, or as much thereof as can be reasonably obtained, for each such previous abortion.
3.  The health division may provide rules and regulations to permit studies of individual abortion cases, but such studies shall not be permitted unless:
(a) Absolute assurance is provided that confidentiality of information on individuals will be preserved;
(b) Informed consent of each individual involved in the study is obtained in writing;
(c) The study is conducted according to established standards and ethics; and
(d) The study is related to health problems and has scientific merit with regard to both design and the importance of the problems to be solved.
(Added to NRS by 1973, 1638; A 1973, 1406)

**442.265  Hospitals to submit reports to state registrar of vital statistics.**  Each hospital shall submit a monthly report to the state registrar of vital statistics which contains the following information:
1.  The number of patients admitted for hospital care for a complication which resulted from an abortion;
2.  The nature of the complication by its diagnostic name; and
3.  The type of abortion.
(Added to NRS by 1981, 1941)

**442.270  Unlawful advertising; criminal, civil liability of persons performing abortion.**
1.  It is unlawful for any person, firm, partnership, association or corporation, including a hospital or other health and care facility to advertise in any manner, directly or indirectly, the availability of abortions or the cost thereof or the conditions under which abortions will be performed.
2.  Whenever an abortion procedure results in a live birth, failure to take all reasonable steps, in keeping with good medical practice, to preserve the life and health of the live born person shall subject the person performing the abortion to Nevada laws governing criminal liability and civil liability for wrongful death and medical malpractice.
(Added to NRS by 1973, 1639; A 1975, 368)

The next page is 17041

Exhibit B

(REPRINTED WITH ADOPTED AMENDMENTS)

FIRST REPRINT

# S. B. 510

SENATE BILL No. 510—SENATOR RAWSON

MAY 27, 1985

———◇———

Referred to Committee on Finance

SUMMARY—Makes various changes in provisions regulating abortion. (BDR 40-824)

FISCAL NOTE:  Effect on Local Government:  No.
Effect on the State or on Industrial Insurance: Contains Appropriation.



EXPLANATION—Matter in *italics* is new; matter in brackets [ ] is material to be omitted.

AN ACT relating to abortions; making various changes in the provisions regulating abortions; making an appropriation to the attorney general for litigation; and providing other matters properly relating thereto.

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

1　　**Section 1.**　Chapter 442 of NRS is hereby amended by adding
2　thereto the provisions set forth as sections 2 and 3 of this act.
3　　**Sec. 2.**　*1.  If the order is denied pursuant to NRS 442.255, the*
4　*court shall, upon request by the minor if it appears that she is unable to*
5　*employ counsel  appoint an attorney to represent her in the preparation*
6　*of a petition, a hearing on the merits of the petition, and on an appeal,*
7　*if necessary.  The compensation and expenses of the attorney are a*
8　*charge against the county as provided in the following schedule:*
9　　*(a) For consultation, research and other time reasonably spent on the*
10　*matter, except court appearances, $20 per hour.*
11　　*(b) For court appearances, $30 per hour.*
12　　*2.  The petition must set forth the initials of the minor, the age of the*
13　*minor, the estimated number of weeks elapsed from the probable time of*
14　*conception,　　and　　whether　　maturity,　　emancipation,　　notification*
15　*detrimental to the minor's best interests or a combination thereof are*
16　*relied upon in avoidance of the notification required by NRS 442.255.*
17　*The petition must be initialed by the minor.*
18　　*3.  A hearing on the merits of the petition, on the record, must be*

SB-510

5-27-85

— 2 —

1 held as soon as possible and within 5 judicial days after the filing of the
2 petition. At the hearing the court shall hear evidence relating to:
3    (a) The minor's emotional development, maturity, intellect and
4 understanding;
5    (b) The minor's degree of financial independence and degree of
6 emancipation from parental authority;
7    (c) The minor's best interests relative to parental involvement in the
8 decision whether to undergo an abortion; and
9    (d) Any other evidence that the court may find useful in determining
10 whether the minor is entitled to avoid parental notification.
11    4. In the decree, the court shall, for good cause:
12    (a) Grant the petition, and give judicial authorization to permit a
13 physician to perform an abortion without the notification required in
14 NRS 442.255; or
15    (b) Deny the petition, setting forth the grounds on which the petition
16 is denied.
17    5. An appeal from an order issued under subsection 4 may be taken
18 to the supreme court, which shall suspend the Nevada Rules of
19 Appellate Procedure pursuant to N.R.A.P. 2 to provide for an expedited
20 appeal. The notice of intent to appeal must be given within 1 judicial
21 day after the issuance of the order. The record on appeal must be
22 perfected within 5 judicial days after the filing of the notice of appeal
23 and transmitted to the supreme court. The court, shall, by court order
24 or rule, provide for a confidential and expedited appellate review of
25 cases appealed under this section.
26    Sec. 3. If an abortion is judicially authorized and the provisions of
27 NRS 442.240 to 442.270, inclusive, and sections 2 and 3 of this act are
28 complied with, an action by the parents or guardian of the minor
29 against persons performing the abortion is barred. This civil immunity
30 extends to the performance of the abortion and any necessary
31 accompanying services which are performed in a competent manner.
32 The costs of the action, if brought, must be borne by the parties
33 respectively.
34    Sec. 4. NRS 442.240 is hereby amended to read as follows:
35    442.240 As used in NRS 442.250 to [442.257,] 442.270, inclusive,
36 and sections 2 and 3 of this act, unless the context requires otherwise.
37 "abortion" means the termination of a human pregnancy with an
38 intention other than to produce [a live birth] the birth of an infant
39 capable of sustained survival by natural or artificial supportive systems
40 or to remove a dead fetus.
41    Sec. 5. NRS 442.250 is hereby amended to read as follows:
42    442.250 1. No abortion may be performed in this state unless the
43 abortion is performed:
44    (a) By a physician licensed to practice in this state or by a physician
45 in the employ of the government of the United States who:
46      (1) Exercises his best clinical judgment in the light of all attendant

— 3 —

SB 510
5-27-65

1   circumstances including the accepted professional standards of medical
2   practice in determining whether to perform an abortion; and
3       (2) Performs the abortion in a manner consistent with accepted
4   medical practices and procedures in the community.
5       (b) Within 24 weeks after the commencement of the pregnancy.
6       (c) After the 24th week of pregnancy only if the physician has
7   reasonable cause to believe that an abortion currently is necessary to
8   preserve the life or health of the pregnant woman.
9       2. *All abortions* performed after the 24th week of pregnancy or
10  performed when, in the judgment of the attending physician, there is a
11  reasonable likelihood of the sustained survival of the fetus outside of the
12  womb by natural or artificial supportive systems must be performed in a
13  hospital [or other health and care facility] licensed under chapter 449
14  of NRS.
15      3. Before performing an abortion [, the] *pursuant to subsection 2,*
16  *the attending* physician shall enter in the permanent records of the
17  patient the facts on which he based his best clinical judgment that there
18  is a substantial risk that continuance of the pregnancy would endanger
19  the life of the [mother] *patient* or would gravely impair the physical or
20  mental health of the [mother ] *patient.*
21      Sec. 6.  NRS 442.252 is hereby amended to read as follows:
22      442.252  No physician may perform an abortion in this state unless,
23  before he performs it, he certifies in writing that the woman gave her
24  informed written consent, freely and without coercion . [, after the
25  attending physician informed her of the matters required by NRS
26  442.253 not more than 30 days and not less than 24 hours before her
27  consent to the abortion, unless in the judgment of the physician the
28  abortion is necessary to avert an imminent peril to the life of the
29  woman.] The physician shall further certify in writing the pregnant
30  woman's marital status and age based upon proof of age offered by
31  her. [The fact that the woman was informed within the time required by
32  this section is not prima facie evidence of informed consent.]
33      Sec. 7.  NRS 442.253 is hereby amended to read as follows:
34      442.253   1.  The attending physician *or a person meeting the*
35  *qualifications established by regulations adopted by the health division*
36  shall accurately and in a manner which is reasonably likely to be
37  understood by the pregnant woman:
38      (a) Explain that, in his professional judgment, she is pregnant and a
39  copy of her pregnancy test is available to her.
40      (b) Inform her of the number of weeks which have elapsed from the
41  probable time of conception.
42      (c) [Explain any known immediate and long-term physical or
43  psychological dangers resulting from abortion including an increase in
44  the incidence of premature births, tubal pregnancies and stillbirths.
45      (d) Explain the general nature and the extent of the particular risks
46  associated with her pregnancy.

SBS10
5·27·85

— 4 —

1    (e)] *Explain the physical and emotional implications of having the*
2    *abortion.*
3        (d) Describe the medical procedure to be used [.
4        (f) Present any alternatives to abortion including a list of public and
5    private agencies that provide pregnant women with economic and other
6    assistance and the services provided by each agency.
7        (g) Explain that if the child aborted is alive, the physician has a legal
8    obligation to take all reasonable steps to preserve the life and health of
9    the child.
10       (h) Present any other material facts] , *its consequences and the*
11   *proper procedures for her care after the abortion.*
12   *2.  The attending physician shall verify that all material facts and*
13   *information* which, in his professional judgment, are necessary to allow
14   the woman to give her informed consent [.
15   *2.] have been provided to her and that her consent is informed.*
16   *3.  If the woman does not understand English, the form indicating*
17   consent must be written in a language understood by her, or the
18   attending physician shall certify on the form that the information
19   required to be given has been presented in such a manner as to be
20   understandable by her. If an interpreter is used, the interpreter must be
21   named and reference to this use must be made on the form for consent.
22       Sec. 8.   NRS 442.255 is hereby amended to read as follows:
23   442.255 [A person] *1.  Unless in the judgment of the attending*
24   *physician an abortion is immediately necessary to preserve the patient's*
25   *life or health or an abortion is authorized pursuant to subsection 2, or*
26   *section 1 of this act, a physician* shall not knowingly perform *or induce*
27   an abortion upon an unmarried and unemancipated woman who is
28   under the age of 18 years unless [he notifies] a *custodial* parent or
29   guardian of the woman [at least 24 hours] *is personally notified* before
30   the abortion . [. if it is possible to notify the parent or guardian.] *If*
31   *the custodial parent or guardian cannot be so notified after a*
32   *reasonable effort, the physician shall delay performing the abortion*
33   *until he has notified the parent or guardian by certified mail at his last*
34   *known address.*
35   *2.  An unmarried or unemancipated woman who is under the age of*
36   *18 years may request a district court to issue an order authorizing an*
37   *abortion. If so requested, the court shall interview the woman at the*
38   *earliest practicable time, which must be not more than 2 judicial days*
39   *after the request is made. If the court determines, from any information*
40   *provided by the woman and any other evidence that the court may*
41   *require, that:*
42   *(a) She is mature enough to make an intelligent and informed*
43   *decision concerning the abortion;*
44   *(b) She is financially independent or is emancipated; or*

SB 510

— 5 —

5-27-85

1     *(c) The notice required by subsection 1 would be detrimental to her*
2 *best interests.*
3     *the court shall issue an order within 1 judicial day after the interview*
4 *authorizing a physician to perform the abortion in accordance with the*
5 *provisions of NRS 442.240 to 442.270, inclusive, and sections 2 and 3*
6 *of this act.*
7     *3. If the court does not find sufficient grounds to authorize a physician*
8 *to perform the abortion, it shall enter an order to that effect within 1*
9 *judicial day after the interview. If the court does not enter an order*
10 *either authorizing or denying the performance of the abortion within 1*
11 *judicial day after the interview, authorization shall be deemed to have*
12 *been granted.*
13     *4. The court shall take the necessary steps to ensure that the*
14 *interview and any other proceedings held pursuant to this subsection or*
15 *section 1 of this act are confidential. The rules of civil procedure do not*
16 *apply to any action taken pursuant to this subsection.*
17     **Sec. 9.** NRS 442.256 is hereby amended to read as follows:
18     442.256 A physician who performs an abortion shall maintain a
19 record of it for at least 5 years after it is performed. The record must
20 contain:
21     1. The written consent of the woman;
22     2. A statement of the information which was provided to the woman
23 pursuant to NRS 442.253; and
24     3. A description of efforts to give any notice required by NRS
25 【442.254 or】 442.255.
26     **Sec. 10.** NRS 442.260 is hereby amended to read as follows:
27     442.260 1. The health division 【of the state department of human
28 resources】 shall adopt and enforce 【rules and】 regulations governing
29 the conditions under and the methods by which abortions may be
30 performed, *the reasonable minimum qualifications of a person*
31 *authorized to provide the information required in NRS 442.253,* as well
32 as all other aspects pertaining to the performance of abortions pursuant
33 to NRS 442.250.
34     2. The health division shall adopt and enforce 【rules and】
35 regulations for 【an abortion reporting system. Such system shall】 *a*
36 *system for reporting abortions. This system must* be designed to
37 preserve confidentiality of information on the identity of 【individual】
38 women upon whom abortions are performed. The 【abortion reporting
39 system】 *health division* may require that the following items be reported
40 for each abortion:
41     (a) 【Date of】 *The date of the* abortion;
42     (b) 【Place of abortion 【】 *The place of the abortion including the* city,
43 county 【,】 and state 【】;
44     (c) Type】 *;*
45     *(c) The type of facility;*

SR 510
5-27-85

— 6 —

1  (d) [Place of] *The* usual residence of [woman (] *the woman,*
2 *including the* city, county [,] and state [);
3  (e) Age of woman;
4  (f) Ethnic] ;
5  *(e) Her age;*
6  *(f) Her ethnic* group or race;
7  (g) [Marital] *Her marital* status;
8  (h) [Number] *The number* of previous live births;
9  (i) [Number] *The number* of previous induced abortions;
10  (j) [Duration of pregnancy (] *The duration of her pregnancy,* as
11 measured from first day of last normal menses to date of abortion, and
12 as estimated by uterine size prior to performance of the abortion [);
13  (k) Type] ;
14  *(k) The type* of abortion procedure; and
15  (l) [In the event] *If* a woman has had a previously induced abortion ,
16 [or abortions,] the information in paragraphs (a) to (k), inclusive, or
17 as much thereof as can be reasonably obtained, for each [such]
18 previous abortion.
19  3. The health division may [provide rules and] *adopt* regulations to
20 permit studies of individual [abortion cases, but such studies shall]
21 *cases of abortion, but these studies must* not be permitted unless:
22  (a) Absolute assurance is provided that confidentiality of information
23 on [individuals] *the persons involved* will be preserved;
24  (b) Informed consent of each [individual] *person* involved in the
25 study is obtained in writing;
26  (c) The study is conducted according to established standards and
27 ethics; and
28  (d) The study is related to [health] problems *of health* and has
29 scientific merit with regard to both design and the importance of the
30 problems to be solved.
31  **Sec. 11.** NRS 442.270 is hereby amended to read as follows:
32  442.270 [1. It is unlawful for any person, firm, partnership,
33 association or corporation, including a hospital or other health and
34 care facility to advertise in any manner, directly or indirectly, the
35 availability of abortions or the cost thereof or the conditions under
36 which abortions will be performed.
37  2.] Whenever an abortion [procedure] results in [a live birth,] *the*
38 *birth of an infant capable of sustained survival by natural or artifical*
39 *supportive systems, the* failure to take all reasonable steps, in keeping
40 with good medical practice, to preserve the life and health of the [live
41 born person shall subject] *infant subjects* the person performing the
42 abortion to [Nevada laws] *the laws of this state* governing criminal
43 liability and civil liability for wrongful death and medical malpractice.
44  **Sec. 12.** NRS 442.254 is hereby repealed.

**Attachment 3**

**In re: Woodbury, et al. v.  United States District
Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-
cv-331-ART-CSD**

**Motion for Preliminary Injunction, Dkt. No. 2**

1  STANLEY H. BROWN, CHARTERED
   STANLEY H. BROWN, SR.
2  STANLEY H. BROWN, JR.
   147 East Liberty Street
3  Reno, Nevada 89501
   (702) 322-0606
4
   AMERICAN CIVIL LIBERTIES UNION
5  FOUNDATION OF NEVADA
6  Attorneys for Plaintiffs
7
8
                  UNITED STATES DISTRICT COURT
9
                      DISTRICT OF NEVADA
10
                        *  *  *  *  *
11
   EUGENE GLICK, M.D., et al.,    )    CIV-R-85-331-ECR
12                                )
                   Plaintiffs,    )
13                                )
              vs.                 )    MOTION FOR PRELIMINARY
14                                )         INJUNCTION
   BRIAN MCKAY, et al.,           )
15                                )
                   Defendants.    )
16 _____)

17         COMES NOW, plaintiffs above-named, by and through their

18 undersigned attorneys and move  this Court for a  Preliminary In-

19 junction enjoining defendants, their agents, employees, and  suc-

20 cessors in  office from  enforcing or  executing the restrictions

21 contained  in  Section 2,  Chapter 442;  NRS  442.253  (e);  NRS

22 442.255 (2), (2c),(4), as enacted by the 1985 Nevada legislature.

23         RESPECTFULLY SUBMITTED this 28TH day of June, 1985,

24                              STANLEY H. BROWN, CHARTERED
                                STANLEY H. BROWN, SR.
25                              STANLEY H. BROWN, JR.

26
                                By:_____
27                                 Stanley H. Brown, Jr.
28

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-1-

1

2

<u>POINTS AND AUTHORITIES IN SUPPORT OF</u>
<u>MOTION FOR PRELIMINARY INJUNCTION</u>

3          Plaintiffs seek a temporary restraining order enjoining

4   defendants from enforcing NRS Chapter 442, Nevada's "Abortion

5   Act" which, as is presently drafted, regulates and restrict abor-

6   tion services in violation of rights secured by the First,

7   Fourth, Fifth, Ninth and Fourteenth Amendments to the United

8   States Constitution. Specifically, plaintiffs challenge Section

9   2, Chapter 442, NRS 442.253 (e); NRS 442.255 (2), (2c), (4), as

10  enacted by the 1985 Nevada legislature.

11          Plaintiffs include a physician who is licensed to prac-

12  tice medicine in Nevada, and who in the regular course of his

13  practice, provides or performs abortions for his pregnant women

14  patients who desire them, or refer their pregnant women patients

15  to other physicians who perform abortions. Plaintiff physician

16  also seeks to represent the interest of his pregnant women pa-

17  tients who desire pregnancy termination services. Plaintiff

18  Planned Parenthood Clinic is a family planning clinic which pro-

19  vide all types of birth control, and related medical services,

20  including pregnancy testing and counselling, to its patients.

21          Plaintiff physician and family planning clinic may be

22  subject to criminal penalties for violation of certain provisions

23  of the challenged statute. Thus, enforcement of the sections

24  challenged herein would cause plaintiffs irreparable injury by

25  virtue of deprivation of fundamental constitutional rights, ex-

26  posure to criminal liability and infliction of physical and emo-

27  tional harm.

28  ///

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-2-

I. <u>Standards For Preliminary Injunctive Relief.</u>

Plaintiffs are entitled to a temporary restraining order because they meet the prerequisites for an issuance of preliminary injunctive relief. It has been stated that the Ninth Circuit has alternative tests by which to determine whether preliminary relief should be guaranteed. The first, and more traditional, is that movants must show three things: (1) that there is a strong likelihood of success on the merits; (2) that the balance of irreparable harm favors the movants; and (3) that the public interest favors granting the injunction. <u>Sierra Club v. Hathaway,</u> 579 F.2d 1162 (9th Cir. 1978), citing <u>Warm springs Dam Task Force v. Gribble,</u> 565 F.2d 549 (9th Cir. 1977).

The view that there are alternative tests, either of which movant must satisfy, was articulated in <u>Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,</u> 526 F.2d 86 (9th Cir. 1976):

> "One moving for a preliminary injunction assumes the burden of demonstrating <u>either</u> a combination of probable success and the possibility of irreparable injury <u>or</u> that serious questions are raised and the balance of hardships tips sharply in his favor" (emphasis added). Id. at 88, citing <u>Charlie's Girls, Inc. v. Revlon, Inc.,</u> 483 F.2d 953, 954 (2d Cir. 1973).

It is not altogether clear whether these various criteria are truly alternative, or "merely extremes of a single continuum". <u>Benda v. Grand Lodge of the International Association of Machinists & Aerospace Workers,</u> 584 F.2d 308, 315 (9th Cir. 1978. See also, <u>Stearns v. Estes,</u> 504 F. Supp. 998, 1001 (C.D.Cal. 1980). However, as the 9th Circuit pointed out in <u>Benda,</u> supra, at 315:

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A Professional Corporation
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-3-

1
2
3
4

> The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when this balance tips less decidedly. (citation omitted)

5   Indeed, the extent to which the test may differ is of

6   minimal importance in the instant case, since plaintiffs clearly

7   satisfy any and all of the criteria set forth for granting pre-

8   liminary relief. The fact that plaintiffs allege violations of

9   fundamental constitutional rights argues even more decidedly in

10  favor of granting plaintiffs' requested preliminary relief.

11  Stearns v. Estes, supra, at 1002 (alleged infringement of right

12  to marry); International Society for Krishna Consciousness of

13  Berkely, Inc. v. Kearnes, 454 F. Supp. 116 (E.D.Cal. 1978), (al-

14  leged infringement of free speech rights). After having found

15  that plaintiffs enjoyed a likelihood of success of the merits,

16  the district court in Krishna stated:

17
18
19
20
21
22

> ...Since it is most likely the case that plaintiffs are being deprived of their constitutional rights and the state cannot permissibly further its interest by means of those ordinances, we find that defendants will be harmed less than plaintiffs are benefited by an injunction. We also find that an injunction would be in the best interest of the public, for the protection of constitutional rights is always in the public interest. Id. at 124, 125.

23  Plaintiffs are clearly entitled to a temporary re-

24  straining order and a preliminary injuction against enforcement

25  of the challenged sections of the Nevada Revised Statute, under

26  either of the tests articulated above.

27  ///

28  ///

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-4-

II.  <u>Likelihood of Sucess on the Merits.</u>

A. <u>The implementation and enforcement of Section 2 of Chapter 442</u>
<u>of NRS should be enjoined until the Supreme Court of the State</u>
<u>of Nevada promulgates rules or orders assuring a  confidential</u>
<u>and expedited appellate review of cases appealed thereunder.</u>

Section II of Chapter 442 of NRS provides that a  minor

woman may, within the time frames provided therein, appeal from a

district court order  denying her an  abortion.  It further  pro-

vides that the Supreme  Court shall "suspend the Nevada Rules  of

Appellate procedure".  In lieu thereof, the statute directs that:

> "The court shall, by court order or rule, provide
> for a confidential and expedited appellate review
> of cases appealed under this section".

The constitutionality  of similar  provisions contained

in the Illinois and Pennsylvania abortion acts were challenged in

the respective  cases of  <u>Zbaraz v.  Hartigan,</u> Nos. 84-1958  and

84-1959 (7th Cir.,  May 1985) and  <u>American College of  Obstetri-</u>

<u>cians v.  Thornburgh,</u>  737 F.2d 283  (3rd Cir.  1983).  Each of

the courts did not invalidate provisions similar to Nevada's only

because of their willingness to allow the Supreme Court to  enact

constitutional  rules  governing  appeals  before it  would strike

down the statute for failing to provide a judicial alternative to

parental  notification.  In  each  case,  however,  the  Courts

enjoined enforcement  of the  statute pending  enactment of  such

rules by the Supreme Court of each state.

The <u>Zbaraz</u> and <u>Thornburgh</u> decisions  compel  a  similar

ruling in  this case.  Clearly, plaintiffs  are entitled  to an

Order enjoing enforcement of the abortion act until such time  as

the Supreme Court of the State of Nevada promulgates rules govern-

ing confidentiality and an expedited appellant process.

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

B. <u>NRS 442.253 (1) (c) is unconstitutionally vague in that it
requires an attending physician or a person meeting the quali-
fications adopted by the health division to explain to a woman
seeking an abortion undefined "physical and emotional impli-
cations" of having such an abortion.</u>

NRS 442.253 (1) (3) provides in relevant part:

"The attending physician or a person meeting the
qualifications established by regulations adopted
by the health division shall accurately and in a
manner which is reasonably likely to be under-
stood by the pregnant woman:

a) *
b) *
c) explain the physical and emotional implica-
tions of having an abortion."

This statute on its face seems to require the doctor to
rely on some body of objective information regarding the
"physical and emotional implications" of having an abortion and
impart specific, although undefined information to each patient.
This requirement impermissibly restricts the doctor's ability to
exercise his best medical judgment and tailor the information to
the particular needs and circumstance of the individual patient.
In <u>City of Akron v. Akron Center for Reproductive Health,</u> ____,
U.S.____, 103 S.Ct. 2481 (1983) the United States Supreme Court
required only that the physician <u>"make certian that</u> his patient
<u>understands</u> the physical and emotional implications of having an
abortion", Id. at 2501. Nevada's statute unconstitutionally
restricts the doctor's ability to tailor the information to each
patient as the circumstances dictate.

C. <u>NRS 422.255(2) through (4) do not contain specific provisions
for implementing court rules or regulations by which to guide
an unmarried, unemancipated minor woman through the court
proceedings necessary to obtain an order authorizing an
abortion. Said statutes further fail to assure that the
interview and all other proceedings thereunder will be com-</u>

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-6-

1 pleted with anonymity. Finally, said statutes unconstitution-
2 ally fail to provide an unmarried or unemancipated minor with
counsel during the "interview" stage of the proceedings.
3 Accordingly, enforcement of Chapter 442 should be enjoined.

4 NRS 442.255 (2) through (4) were added to NRS Chapter

5 442 by Senate Bill 510, on or about May 27, 1985. These statutes

6 authorize an unmarried or unemancipated minor woman to apply to a

7 district court for an order authorizing an abortion. These sec-

8 tions are commonly referred to as the "judicial bypass" alterna-

9 tive to parental notification and were enacted in an effort by

10 the Nevada legislature to comport with the United States Supreme

11 Court opinion of City of Akron v. Akron Center for Reproductive

12 Health, ____, U.S._____, 103 S.Ct. 2481 (1983) wherein the Court

13 held that "the State must provide an alternative procedure [to

14 parental notification] whereby a pregnant minor may demonstrate

15 that she is sufficiently mature to make the abortion decision

16 herself or that, despite her immaturity, an abortion would be in

17 her best interest. Akron, 103 S.CT. at 2497-98. See, Planned

18 Parenthood of Kanas City, Mo., Inc. v. Ashcroft, 462, U.S.

19 476, 103 S.Ct. 2517, 2525, 76 L. Ed.2d 773 (1983); Bellotti

20 v. Baird, 443 U.S. 622, 643-44 (1979) (Bellotti II).

21 In Bellotti II, the Supreme Court held that the judi-

22 cial alternative to parental notification "must assure that a

23 resolution of the issue, and any appeals that may follow, will be

24 completed with anonymity and sufficient expedition to provide an

25 effective opportunity for an abortion to be performed". 443 U.S.

26 at 644. See, Ashcroft, 103 S.Ct. at 2525 n.16. It is respect-

27 fully submitted that Nevada's statutes do not conform to this

28 test. NRS 442.255 (2) provides that "an unmarried or unemanci-

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A Professional Corporation
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-7-

pated woman who is under the age of 18 years <u>may request a district court to issue an order authorizing</u> an abortion. If so requested, <u>the Court shall interview the woman at the earliest practicable time,</u> which must be not more than two (2) judicial days after the request is made." (emphasis supplied). NRS 442.255 (4) provides that "The Court <u>shall take the necessary steps</u> to ensure that the interview and any other proceeding held pursuant to this subsection or section 1 of this act are confidential. The rules of civil procedure do not apply to any action taken pursuant to this subsection."

This statute unconstitutionally burden a minor woman's right to seek an abortion in the following respects:

  1) by failing to provide any procedures for gaining access to the Court process, nor does it direct Court personnel to assist those minors petitioning for waiver of parental notification;

  2) by failing to assure that a resolution of the issue will be completed with anonymity; and

  3) by failing to provice for the appointment of counsel to assist those minors during the initial "interview" stage of the judicial process.

NRS 442.255 fails to provide any procedures whereby a minor may gain access to the Court process, nor does it direct court personnel to assist those minors in seeking access to the Court process. It merely provides in general terms that a minor may "request a district court to issue an order" authorizing an abortion. The obvious lack of an established avenue by which

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-8-

1  such a request can be made unconstitutionally burdens a minor's

2  right to choose an abortion. In American College of Obstetri-

3  cians v. Thornburgh, 737 F.2d 283 (3rd Cir. 1983) the court held:

4  "To pass constitutional muster, the alternative
   judicial procedure must be an established and

5  practical avenue and may not rely solely on
   genearlly stated principals of availabilty, con-

6  fidentiality, and form." Id. at 297.

7  In Thornburgh the Pennsylvania Abortion Act, provided

8  no specific rules or regulations governing access to the judicial

9  procedure, but merely directed the Supreme Court of Pennsylvania

10 to "promptly issue such rules as may be necessary to. . .ensure

11 confidentiality and sufficient promptness of disposition".

12 Although the Court did not hold this statute facially

13 unconstitutional because the Act provided that such regulations

14 be promulgated, it nevertheless enjoined its operation pending

15 the state's promulgation of such regulations.

16 Unlike the Pennsylvania statute, NRS 442.255 makes

17 absolutely no mention whatsoever of the promulgation of regu-

18 lations governing either the interview stage or the hearing on

19 the merits of a petition conducted at the trial court level. The

20 Third Circuit in American College of Obstetricians noted the

21 critical difference between the Pennsylvania Act and the Missouri

22 statute upheld as being constitional by the Supreme Court in

23 Planned Parenthood of Kansas City, Missouri, Inc., et al., vs.

24

25

26  1/Although Section 2(5) provides that the Nevada Supreme Court
    shall ". . .by Court order or rule, provide for [an] expedited

27  appellate review", no such language appears in NRS 442.255
    governing the review at the district court level. This section

28  has been addressed above.

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

Ashcroft, 462, U.S. 467, 103 S.Ct. 2517, 2525, 76 L. Ed.2d 773 (1983) As the Court noted:

> "The Missouri statute upheld in Ashcroft establishing alternative court proceedings for minor consent contained detailed provision assuring confidentiality and dispatch, establishing a clear and simple procedure for the minor to follow in setting forth her petition, and directing court personnel to assist the minor in preparing the petition. Ashcroft, 103 S.Ct. at 2519-20 n. 4, 2525-26. Comparable provisions are absent in the Pennsylvania statute. This difference is critical". Id. at 297.

Nevada's statute does not establish a "clear and simple procedure" for the minor to follow. In fact, it provides for no procedure at all. It merely makes reference to a woman's right to "request" a district Court to issue an order authorizing an abortion. How is such a request made? To whom is it made? Can it be oral or need it be in writing? Does it need to be made only on "judicial days" or must a judge be available twenty four (24) hours a day, seven (7) day a week to entertain such requests? These questions, and others, illuminate the extremely cumbersome nature of the judicial alternative mechanism (a constitutional defect in and of itself. See Danforth and Bellotti II, supra), and its violation of minor women's right to privacy and procedural due process by establishing a standardless court "interview" as a precondition to any kind of meaningful judicial review. Accordingly, success is imminent on this point and a Temporary Restaining Order should issue forthwith.

NRS 442.255 (4) fails to assure the confidentiality of the proceedings taken thereunder. Instead, it merely directs the Courts to "take the necessary steps" to assure confidentiality, without requiring either the district Courts or the Nevada

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A Professional Corporation.
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-10-

Supreme Court to promulgate rules assuring confidentiality. As such, it fails to "Assure that a resolution of the issue . . . will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be performed," as mandated by Bellotti II, 442 US at 644.

In Zbaraz vs. Hartigan, Nos. 84-1958 and 84-1959 (7th Cir., May 1985), the Seventh Circuit scrutinized the language of Section 5(c) of Illinois' Abortion statute which provided that the waiver of parental notification procedures "Shall be confidential and shall ensure the anonymity of the minor or incompetent". 5 (f) provided that "an expedited confidential appeal shall be available, as the Supreme Court provides by rule. . .". Finally, Section 5 (g) requested the Illinois Supreme Court to promulgate any rules necessary to ensure that proceedings under the Act are confidental.

The Court noted that the Illinois statute, unlike the one upheld by the Supremem Court in Ashcroft, supra, did not make any provisions to assure the minor's anonymity at the waiver hearing. The Court also noted that:

> "The statute does not address particular problems concerning anonymity which exist not only during the course of the proceedings, but afterwards (sic) because of the availability of court documents and files, which are generally available to the public. See, e.g. Roe v. Whalen, 429 US. at 599-600. Thus the Illinois statute appears to fall short of the standard set forth in Ashcroft and Bellotti II, which requires the statute to assure confidentiality". Id. at 19.

The Court then enjoined enforcement of the statute until the Illinois Supreme Court promulgated rules assuring confidentiality. As in Zbaraz and Thornburgh, enforcement of Chapter

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-11-

442 should be enjoined until the district Court promulgates specific rules assuring anonymity of the proceedings taken thereunder.

Finally, NRS 442.255 (2) unconstitutionally fails to provide for the appointment of counsel during the initial stages of the "judical bypass" proceedings. In <u>Indiana Planned Parenthood Affiliates v. Pearson,</u> 716 F.2d 1127, 1137-38 (7th Cir. 1983) the court held that the Indiana parental notification law impermissibly failed to provide for the appointment of counsel to minors seeking judicial by-pass of the parental notification requirement. In <u>Orr v. Knowles,</u> Nos. CV81-0-31, CV 81-L-167 (D.Neb, 1983) the Court held that the failure of the Nebraska parental notification statute to quarantee free legal counsel to minors seeking waiver of parental notification was "a genuine obstruction to the exercise of the right to choose of pregnant minors".

D. <u>NRS 442.255 (2) (c) sets forth an unconstitutional standard which a court must apply before issuing an order authorizing a physician to perform an abortion.</u>

NRS 442.255 (2) provides in relevant part:

"An unmarried or unemancipated woman who is under the age of 18 years may request a district court to issue an order authorizing an abortion. If so requested, the court shall interview the woman at the earliest practicable time, which must be not more than 2 judicial days after the request is made. If the court determines, from any information provided by the woman and any other evidence that the court may require, that:

a) *
b) *
c) The notice required by subsection 1 would be detrimental to her best interest,

the court shall issue an order within 1 judical day after the interview authorizing a physician

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-12-

1  to perform the abortion in accordance with the
2  provisions of NRS 442.240 to 442.270, inclusive,
   and sections 2 and 3 of this act."

3       The "notice" referred to in subsection (c), of course,

4  is the requirement for parental notification. Thus, the statute

5  requires that the Court use, as one of it's criteria for deter-

6  mining whether to issue an order authorizing an abortion, whether

7  parental notification "would be detrimental" to the minor's best

8  interest. This requirement clearly conflicts with the United

9  States Supreme Court decision of <u>Bellotti v. Baird,</u> 443 U.S. 622,

10 1979). In that case, the Court made clear that minors must have

11 the opportunity, through an alternative judicial or administra-

12 tive procedure, to obtain an abortion without parental consent

13 and, with respect to immature minors, the standard to be used is

14 whether an abortion would be in the minor's best interest." Id.

15 at 647.

16 III.  <u>Irreparable Harm to Plaintiffs.</u>

17      The discussion of each challenged subsection of the

18 above act clearly demonstrates the harm that will accrue to

19 plaintiffs from their enforcement. Each section has the effect

20 of burdening a minor woman's right to obtain an abortion; some

21 provisions may render it impossible to exercise this right.

22      The plaintiff doctor faces potential criminal penalties

23 for acting in what he believes to be the best interest of his

24 patient.

25      Plaintiffs will introduce more direct evidence of the

26 harm suffered by plaintiffs. However, it is important to note

27 that the Supreme Court has found that the interference with a

28 woman's right to consult with her physician and to choose to ob-

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-13-

1  tain an abortion constitute irreparable harm.  Planned Parenthood

2  v. Danforth, 428, U.S. 52  (1976), Bellotti v. Baird, supra,  Roe

3  v. Wade, 410 U.S. 412 (1973).

4        Finally,  preliminary  relief  is  of  utmost importance

5  here because of the short term nature of pregnancy. Once a  woman

6  passes the time in her pregnancy when an abortion would be  safe,

7  she can no longer be aided by an injunction. Preliminary  relief

8  is necessary to protect those minor women patients who are  preg-

9  nant now and desire abortions.

10 IV. Defendants will suffer no harm if the injunction is granted.

11       Defendants,  as  individual will  no  way be  harmed by

12 their  inability  to enforce  this statute.   The only  harm that

13 could result to them is  in their capacity as representatives  of

14 the state.   The interest of the  state cannot  be served by the

15 enforcement of an unconstitutional  law.  The public can  have no

16 valid interest in an  intrusion into the physician-patient  rela-

17 tionship.

18       Defendants may argue that they have an interest in pro-

19 tecting maternal health.  Plaintiffs will show at trial that  the

20 challenged statutes are not reasonably related to that goal or to

21 any other permissible state goal.

22       Even if defendants did have an interest in the enforce-

23 ment of the law, any burden  that would fall on them as  a result

24 of the  injunction of  this enforcement  would be  less than  the

25 burden enforcement puts  on the plaintiffs.

26 V.  Conclusion.

27       A temporary restraining  order and preliminary  injunc-

28 tive relief is  particularly appropriate in  this case.  The  pa-

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-14-

tients whom the plaintiff physician seek to represent are, by definition changing; the time in which a woman can obtain an abortion is limited. Plaintiffs have shown that they have a substantial likelihood of prevailing on the merits, and that they will suffer irreparable injury if a preliminary injunction is not issued. Harm caused to defendants by the issuance of such relief is insignificant by comparison. The public has a substantial interest in the provision of safe, adequate medical care to plaintiffs and no valid interest in the infringement of their constitutional rights. A preliminary injunction should, therefore, be issued.

RESPECTFULLY SUBMITTED this 28TH day of June, 1985.

STANLEY H. BROWN, CHARTERED
STANLEY H. BROWN, SR.
STANLEY H. BROWN, JR.

By: _____
Stanley H. Brown, Jr.

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

JS 44C
(Rev. 11/82)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (For more detailed instructions, see separate instruction sheet.)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| EUGENE GLICKM M.D., and PLANNED PARENTHOOD OF WASHOE COUNTY, a non-profit Nevada corporation | BRIAN McKAY, et al. |

JUN 28 1985
CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY........................ DEPUTY

COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Washoe__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT....... Carson Cit
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| STANLEY H. BROWN, Chartered STANLEY H. BROWN, SR. STANLEY H. BROWN, JR. 147 East Liberty Street Reno, Nevada 89501 (702) 322-0606 | CV-R - 85 - 331 - ECR |

**(PLACE AN ☒ IN ONE BOX ONLY)**

**BASIS OF JURISDICTION**

☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)  ☐ 4 DIVERSITY

IF DIVERSITY, INDICATE CITIZENSHIP ON REVERSE. (28 USC 1332, 1441)

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
Violation of civil rights under 42 U.S.C. §1983. Plaintiff seek to have certain sections of the Nevada Abortion Law declared unconstitutional.

**(PLACE AN ☒ IN ONE BOX ONLY)**

### NATURE OF SUIT

#### ACTIONS UNDER STATUTES

| CONTRACT | TORTS | CIVIL RIGHTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES Cont. |
|---|---|---|---|---|---|
| ☐ 110 INSURANCE | **PERSONAL INJURY** | ☐ 441 VOTING | ☐ 610 AGRICULTURE | ☐ 420 TRUSTEE | ☐ 450 COMMERCE ICC RATES, ETC. |
| ☐ 120 MARINE | ☐ 310 AIRPLANE | ☐ 442 JOBS | ☐ 620 FOOD & DRUG | ☐ 421 TRANSFER (915b) | ☐ 460 DEPORTATION |
| ☐ 130 MILLER ACT | ☐ 315 AIRPLANE PRODUCT LIABILITY | ☐ 443 ACCOMMODA-TIONS | ☐ 630 LIQUOR LAWS | ☐ 422 APPEAL (801) | ☐ 810 SELECTIVE SERVICE |
| ☐ 140 NEGOTIABLE INSTRUMENT | ☐ 320 ASSAULT, LIBEL & SLANDER | ☐ 444 WELFARE | ☐ 640 R.R. & TRUCK | **PROPERTY RIGHTS** | ☐ 850 SECURITIES COMMODITIES EXCHANGE |
| ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | ☐ 330 FEDERAL EMPLOYERS' LIABILITY | ☒☒ 440 OTHER CIVIL RIGHTS | ☐ 650 AIRLINE REGS. | ☐ 820 COPYRIGHT | |
| ☐ 151 MEDICARE ACT | ☐ 340 MARINE | | ☐ 660 OCCUPATIONAL SAFETY/HEALTH | ☐ 830 PATENT | ☐ 891 AGRICULTURAL ACTS |
| ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS | ☐ 345 MARINE PRODUCT LIABILITY | | ☐ 690 OTHER | ☐ 840 TRADEMARK | ☐ 892 ECONOMIC STABILIZATION ACT |
| ☐ 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS | ☐ 350 MOTOR VEHICLE ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY | | | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 893 ENVIRON-MENTAL MATTERS |
| ☐ 160 STOCKHOLDERS SUITS | ☐ 360 OTHER PERSONAL INJURY | **PRISONER PETITIONS** | **LABOR** | ☐ 862 BLACK LUNG (923) ☐ 863 DIWC (405 (g)) | ☐ 894 ENERGY ALLOCATION ACT |
| ☐ 190 OTHER CONTRACT | ☐ 362 PERSONAL INJURY-MED. MALPRACTICE | ☐ 510 VACATE SENTENCE (2255) | ☐ 710 FAIR LABOR STANDARDS | ☐ 863 DIWW (405 (g)) ☐ 864 SSID Title XVI | ☐ 895 FREEDOM OF INFORMATION ACT |
| ☐ 195 CONTRACT PRODUCT LIABILITY | ☐ 365 PERSONAL INJURY PRODUCT LIABILITY | ☐ 530 HABEAS CORPUS | ☐ 720 LABOR/MGMT. RELATIONS | ☐ 865 RSI (405 (g)) **TAX SUITS** | ☐ 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| **REAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 540 MANDAMUS & OTHER | ☐ 730 LABOR/MGMT. REPORTING & DISCLOSURE ACT | ☐ 870 TAXES ☐ 871 IRS-THIRD PARTY 26 USC 7609 | |
| ☐ 210 CONDEMNATION | ☐ 370 OTHER FRAUD | ☐ 550 CIVIL RIGHTS | ☐ 740 RAILWAY LABOR ACT | ☐ 875 CUSTOMER CHALLENGE 12 USC 3410 | ☐ 950 CONSTI-TUTIONALITY OF STATE STATUES |
| ☐ 220 FORECLOSURE | ☐ 371 TRUTH IN LENDING | | ☐ 790 OTHER LABOR LITIGATION | **OTHER STATUTES** | |
| ☐ 230 RENT LEASE & EJECTMENT | ☐ 380 OTHER PERSONAL PROPERTY DAMAGE | | ☐ 791 EMPL. RET. INC. SECURITY ACT | ☐ 400 STATE REAPPORTION-MENT | ☐ 890 OTHER STATUTORY ACTIONS |
| ☐ 240 TORTS TO LAND ☐ 245 TORT PRODUCT LIABILITY | ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY | | | ☐ 410 ANTI-TRUST ☐ 430 BANKS AND BANKING | |
| ☐ 290 ALL OTHER REAL PROPERTY | | | | | |

**(PLACE AN ☒ IN ONE BOX ONLY)**

### ORIGIN

☐ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**UNITED STATES DISTRICT COURT**     **(Continued on Reverse Side)**

JS 44C
(Rev. 11/82)

## CIVIL COVER SHEET (Reverse Side)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

INSTRUCTIONS: After completing the front side of form JS 44C, complete the information requested below.

| CITIZENSHIP OF PRINCIPAL PARTIES (IF DIVERSITY) | PTF | DEF | Check/Fill in if demanded in complaint: | | |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | ☒1 | ☒1 | ☐ CHECK IF THIS IS A UNDER F.R.C.P. 23  **CLASS ACTION** | DEMAND $ | OTHER |
| INCORPORATED THIS STATE | ☐2 | ☐2 | | | |
| FOREIGN CORPORATION-PRINCIPAL | ☐3 | ☐3 | ## RELATED CASE(S) IF ANY | | |
| PLACE OF BUSINESS IN _____ (STATE) | | | JUDGE _Thompson_____  DOCKET NUMBER CV-R-81-150 (BRT) | | |
| | | | *CIVIL CASES ARE DEEMED RELATED IF PENDING CASE INVOLVES:* | | |
| OTHER NON-CITIZEN OF THIS STATE | ☐4 | ☐4 | ☐ 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT | | |
| *Check YES only if demanded in complaint:* | | | ☒ 2. SAME ISSUE OF FACT OR GROWS OUT OF THE SAME TRANSACTION | | |
| **JURY DEMAND:** ☐ YES ☒ NO | | | ☐ 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT COPYRIGHT OR TRADEMARK | | |

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 6/28/85 | *Stanley E. C. Brown, Jr.* |

COMMENTS (Use if additional space is required):

1

2

3

4

5

6  UNITED STATES DISTRICT COURT

7  DISTRICT OF NEVADA

8  * * * *

9  EUGENE GLICK, M.D., and          )  CV-R-85-
   PLANNED PARENTHOOD OF WASHOE     )
10 COUNTY, a non-profit Nevada      )
   corporation,                     )
11                                  )  CV-R - 85 - 331 - ECR
                Plaintiffs,         )
12                                  )
                                    )
13              vs.                 )  S U M M O N S
                                    )
14 BRIAN McKAY, Attorney General of )
   the State of Nevada;  MILLS LANE,)
15 District Attorney of the County  )
   of Washoe, State of Nevada;  NOEL)
   WATERS, District Attorney for    )
16 Carson City, State of Nevada;    )
   MICHAEL E.  DINNING, District    )
17 Attorney for the County of       )
   Churchill, State of Nevada;      )
18 ROBERT J.  MILLER, District      )
   Attorney for the County of Clark,)
19 State of Nevada;  BRENT T.       )
   KOLVET, District Attorney for the)
20 County of Douglas, State of      )
   Nevada;  JAMES E.  WILSON,       )
21 District Attorney for the County  )
   of Elko, State of Nevada; JERROLD)
22 COURTNEY, District Attorney for  )
   the County of Esmeralda, State of)
23 Nevada;  JOHNSON W.  LLOYD, Dis-  )
   trict Attorney for the County of )
24 Eureka, State of Nevada;  VIR-   )
   GINIA SHANE, District Attorney   )
25 for the County of Humboldt, State )
   of Nevada;  HY FORGERON, District)
26 Attorney for the County of Lander,)
   State of Nevada;  EILEEN BARNETT,)
27 District Attorney of the County of)
   Lincoln, State of Nevada;  WILLIAM)
28 G.  ROGERS, District Attorney of   )

-1-

```
 1 the County of Lyon, State of      )
   Nevada;  LARRY G.  BETTIS,        )
 2 District Attorney of the County of)
   Mineral, State of Nevada;  ANDY   )
 3 DEMETRAS, District Attorney of the)
   County of Nye, State of Nevada;   )
 4 RICHARD WAGNER, District Attorney  )
   of the County of Pershing, State  )
 5 of Nevada;  TOM WRIGHT, District   )
   Attorney of the County of Storey, )
 6 State of Nevada;  STEVEN G.        )
   McGUIRE, District Attorney of the )
 7 County of White Pine, State of     )
   Nevada,                           )
 8                                    )
                   Defendants.        )
 9 _____   )
```

10  TO:        BRIAN McKAY, Attorney General of the State of Nevada,
11             Heroes Memorial Building, Carson City, Nevada, 89710;
             and to each of the Defendants above-named at their
12             respective official county offices.

13             YOU ARE HEREBY SUMMONED and required to serve upon

14  STANLEY H. BROWN, Chartered, STANLEY H. BROWN, SR., STANLEY H.

15  BROWN, JR., 147 East Liberty Street, Reno, Nevada, 89501, an

16  answer to the comlaint which is herewith served upon you within

17  twenty (20) days after service of this summons upon you, exclu-

18  sive of the day of service.  If you fail to do so, judgment by

19  default will be taken against you for the relief demanded in the

20  complaint.

21             DATED this 28 day of _____June_____, 1985.

22

23                             CLERK CAROL C. FITZGERALD

24

25

26             BY: _____
                    DEPUTY CLERK
27

28

                              -2-

1

## RETURN OF SERVICE

2     Service of the Summons and Complaint was made by _____

3 _____, on the \_\_\_ day of _____,

4 1985, in the following manner:

5     \_\_\_ Served personally upon Defendant. Place where

6 served:_____.

7     \_\_\_ Left copies thereof at the Defendant's dwelling

8 house or usual place of abode with a person of suitable age and

9 discretion then residing therein. Name of person with whom

10 summons and complaint left:_____.

11     \_\_\_ Other (Specify)_____

12 _____

13 _____.

14

15

## STATEMENT OF SERVICE FEES

16 Travel:_____     Services:_____     Total:_____

17

18

## DECLARATION OF SERVER

19     I declare under penalty of perjury under the laws of

20 the United States of America that the foregoing information con-

21 tained in the Return of Service and Statement of Service Fees is

22 true and correct.

23 Executed on _____    _____

24            (date)             (signature of server)

25          _____

26

27          _____
            (address of server)

28

LAW OFFICES
ANLEY H. BROWN
CHARTERED
PROFESSIONAL CORPORATION
EAST LIBERTY STREET
NO, NEVADA 89501

-3-

**Attachment 4**

**In re: Woodbury, et al. v.  United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Motion for TRO, Dkt. No. 5**

1  STANLEY H. BROWN, CHARTERED
   STANLEY H. BROWN, SR.
2  STANLEY H. BROWN, JR.
   147 East Liberty Street
3  Reno, Nevada 89501
   (702) 322-0606
4
   AMERICAN CIVIL LIBERTIES UNION
5  FOUNDATION OF NEVADA

6  Attorneys for Plaintiffs

7

8
                    UNITED STATES DISTRICT COURT
9
                       DISTRICT OF NEVADA
10
                        *  *  *  *  *
11
   EUGENE GLICK, M.D., et al.,     )     CIV-R-85-331-ECR
12                                  )
                      Plaintiffs,  )
13                                  )
              vs.                   )     MOTION FOR TEMPORARY
14                                  )     RESTRAINING ORDER
   BRIAN MCKAY, et al.,             )
15                                  )
                     Defendants.    )
16  _____)

17         Pursuant to Rule 65, Federal Rules of Civil Procedure,

18  plaintiffs respectfully move this Court for its Order, as

19  follows:

20         Restraining and temporarily enjoining defendants, and

21  all person in concert with them, from in any way implementing or

22  enforcing Section 2, Chapter 442; NRS 442.253 (e); NRS 442.255

23  (2) (2c) (4), scheduled to take effect on July 1, 1985, pending a

24  hearing and disposition of plaintiffs' Motion for Preliminary

25  Injunction filed herein on July 28, 1985, on the ground that

26  immediate and irreparable injury will result to plaintiffs the

27  minor women whose interest are represented by plaintiffs, unless

28  such temporary restraining order is issued.

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A Professional Corporation
147 EAST LIBERTY STREET
RENO, NEVADA 89501

-1-

fidavit of STANLEY H. BROWN, JR., and the memorandum of points and authorities attached to the Motion for Preliminary Injuction and by this reference incorporated herein.

The Certificate of Compliance filed herewith STANLEY H. BROWN, SR. certifies that the defendants were given notice of this motion on July 28, 1985.

DATED this 28 day of June, 1985.

STANLEY H. BROWN, CHARTERED
STANLEY H. BROWN, SR.
STANLEY H. BROWN, JR.

By: _____
Stanley H. Brown, Jr.

LAW OFFICES
STANLEY H. BROWN
CHARTERED
A PROFESSIONAL CORPORATION
147 EAST LIBERTY STREET
RENO, NEVADA 89501

**Attachment 5**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Order for TRO, Dkt. No. 6**

JUN 2 6 1985

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY_____DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

EUGENE GLICK, M.D., et al., )      CIV-R-85-331-ECR
                           )
              Plaintiffs,  )
                           )
     vs.                   )          TEMPORARY
                           )      RESTRAINING ORDER
BRIAN MCKAY, et al.,       )
                           )
              Defendants.  )
_____)

Plaintiffs having moved this Court for a temporary restraining order, supported by an affidavit, a memorandum of law and the Complaint filed herein, against the defendants seeking to enjoin the enforcement by defendants of Nevada Legislation regulating abortions on the ground that plaintiffs would suffer irreparable harm should the law be enforced.

Upon considering the motion and its supporting documents this Court finds pursuant to Rule 65 of the Federal Rules of Civil Procedure that the plaintiffs have demonstrated that there are sufficiently serious questions as to the merits of this case to make them fair grounds for litigation and that the balance of hardships to either side from the granting or denial of this restraining order tilts in their favor in that plaintiffs would face criminal prosecution and the women patients whose

-1-

interest they represent would be impeded or prevented from obtaining abortions if the law were enforced, thus violating their constitutional rights.

IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' motion for a temporary restraining order is hereby granted.

2. Pending a hearing on the preliminary injunction, the defendants, their employees, agents and successors are enjoined from implementing or enforcing Nevada Revised Statutes Chapter 442 Section 2, NRS 442.253 (e); NRS 442.255 (2) (2c), (4), as enacted by the 1985 Nevada legislature.

3. This temporary restraining order shall expire at ____ o'clock ___.m., on _____, 1985, unless it is further extended by order of this Court.

4. The defendants are hereby directed to show cause before this Court at ____ o'clock ___.m., on _____, 1985, why the plaintiffs' motion for preliminary injunction should not be granted.

5. Plaintiffs shall not be requried to post security to obtain this order.

DATED and ISSUED this ____ day of _____, 1985.

_____
U.S. DISTRICT COURT JUDGE

-2-

**Attachment 6**

**In re: Woodbury, et al. v.  United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Order Granting PI, Dkt. No. 23**

AO 72
(Rev.8/82)

ENTERED
JUL 17 1985

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EUGENE GLICK, M.D., and PLANNED
PARENTHOOD OF WASHOE COUNTY, a
non-profit Nevada corporation,

Plaintiffs,

v.

BRIAN McKAY, Attorney General of the State of
Nevada; MILLS LANE, District Attorney of the
County of Washoe, State of Nevada; NOEL WATERS,
District Attorney for Carson City, State of
Nevada; MICHAEL E. DINNING, District Attorney for
the County of Churchill, State of Nevada; ROBERT
J. MILLER, District Attorney for the County of
Clark, State of Nevada; BRENT T. KOLVET, District
Attorney for the County of Douglas, State of
Nevada; JAMES E. WILSON, District Attorney for
the County of Elko, State of Nevada; JERROLD
COURTNEY, District Attorney for the County of
Esmeralda, State of Nevada; JOHNSON W. LLOYD,
District Attorney for the County of Eureka, State
of Nevada; VIRGINIA SHANE, District Attorney for
the County of Humboldt, State of Nevada; HY
FORGERON, District Attorney for the County of
Lander, State of Nevada; EILEEN BARNETT, District
Attorney of the County of Lincoln, State of
Nevada; WILLIAM G. ROGERS, District Attorney for
the County of Lyon, State of Nevada; LARRY G.
BETTIS, District Attorney of the County of
Mineral, State of Nevada; ANDY DEMETRAS, District
Attorney of the County of Nye, State of Nevada;
RICHARD WAGNER, District Attorney of the County
of Pershing, State of Nevada; TOM WRIGHT,
District Attorney of the County of Storey, State
of Nevada; STEVEN G. McGUIRE, District Attorney
of the County of White Pine, State of Nevada,

Defendants.

_____/

CV-R-85-331-ECR

PRELIMINARY INJUNCTION

- 1 -

AO 72
(Rev.8/82)

Pursuant to order of this Court granting in part plaintiffs' motion for a preliminary injunction and for the reasons set forth therein,

IT IS ORDERED that the defendants, their agents, employees, appointees and successors are enjoined and restrained from applying, implementing, relying upon or enforcing or threatening to apply, to implement, to rely upon or to enforce NRS § 442.255(1), (2), (3), (4) (as amended and added by Section 8 of Senate Bill 510); NRS § 442.257; and Section 2 of Senate Bill 510. This order shall remain in full force and effect until further order of this Court. No bond shall be required of plaintiffs.

DATED: July 17, 1985.

_____
UNITED STATES DISTRICT JUDGE

- 2 -

**Attachment 7**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Judgment Dkt. Nos. 74, 75**

ENTERED

OCT 10 1991

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

* * * *

EUGENE GLICK, M.D., and
PLANNED PARENTHOOD OF WASHOE
COUNTY, a non-profit Nevada
corporation,

        Plaintiffs,

        v.

BRIAN McKAY, ATTORNEY GENERAL
OF THE STATE OF NEVADA, et al.,

        Defendants.

Case No. C-R-85-331-ECR

**J U D G M E N T**

THIS MATTER comes before the Court upon the Motion filed by Plaintiffs herein for the Entry of Summary Judgment. The Court, finding good cause therefor in that there is no question of material fact and Plaintiffs are entitled to Judgment as a matter of law, does hereby enter Judgment in favor of Plaintiffs and against Defendants, and each of them, jointly and severally, as follows:

    1.    Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and,
    2.    Permanently enjoining enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257.

THE CLERK SHALL ENTER JUDGMENT ACCORDINGLY.

DATED this ___9th___ day of ___October___, 1991.

        Edward C. Reed.
        U.S. DISTRICT JUDGE

74

AO 450 (Rev. 5/85)  Judgment in a Civil Case  ⊕

# United States District Court

DISTRICT OF _____ **NEVADA**

EUGENE GLICK, M.D.,et al.,

        Plaintiffs,

V.

BRIAN McKAY, Attorney General
of the State of Nevada, et
al.,

        Defendants.

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER: CV-N-85-331-ECR

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED  that **JUDGMENT** is entered in favor of Plaintiffs and against Defendants, and each of them, jointly and severally, as follows:

    1.    Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and,

    2.    Permanently enjoining enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257.

**ENTERED**

OCT 10 1991

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY _____ DEPUTY

| | |
|---|---|
| OCTOBER 10, 1991 | CAROL C. FITZGERALD |
| *Date* | *Clerk* |
| | *Margaret Johnston* |
| | MARGARET JOHNSTON |
| | *(By) Deputy Clerk* |

75

**Attachment 8**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Relief Motion, Dkt. No. 83**

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org
*Designated Resident Nevada Counsel for Moving Defendants*
James Bopp, Jr. (IN Bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
    rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar #87799)*
    jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Pro hac vice counsel will comply with LR IA 11-2 within 14 days.*
*Counsel for Moving Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Eugene Glick, M.D., and Planned Parenthood of Washoe County, a non-profit Nevada Corporation,<br><br>                                                  Plaintiffs,<br><br>    v.<br><br>Aaron D. Ford, Nevada Attorney Gen.; Christopher J. Hicks, Washoe County Dist. Attorney; Jason D. Woodbury, Carson City Dist. Attorney; Arthur E. Mallory, Churchill County Dist. Attorney; Steven Wolfson, Clark County Dist. Attorney; Mark B. Jackson, Douglas County Dist. Attorney; Tyler Ingram, Elko County Dist. Attorney; Robert E. Glennen, III, Esmeralda County Dist. Attorney; Theodore Beutel, Eureka County Dist. Attorney; Kevin Pasquale, Humboldt County Dist. Attorney; William E. Schaeffer, Lander County Dist. Attorney; Dylan V. Frehner, Lincoln County Dist. Attorney; Stephen B. Rye, Lyon County Dist. Attorney; T. Jaren Stanton, Mineral County Dist. Attorney; Brian T. Kunzi, Nye County Dist. Attorney; Bryce R. Shields, Pershing County Dist. Attorney; Anne Langer, Storey County Dist. Attorney; James S. Beecher, White Pine County Dist. Attorney,<br>                                                  Defendants.** | Case No. **3:85-cv-00331**<br><br>**Motion of Defendants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, for Relief from Judgment Under Fed. R. Civ. P. 60(b)(5)**<br><br>ORAL ARGUMENT REQUESTED |

---

** Current office-holder Defendants were automatically substituted for those in *Glick v. McKay*, 616 F. Supp. 322 (D. Nev. 1985). Fed. R. Civ. P. 25(d).

1

## Motion

Defendants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, move for relief from the Court's Judgment (Dkt #74) and the Clerk's Judgment in a Civil Case (Dkt #75). Fed. R. Civ. P. 60(b)(5). This Court's Judgment states:

> THIS MATTER comes before the Court upon the motion filed by Plaintiffs herein for the Entry of Summary Judgment. The Court, finding good cause therefor in that there is no question of material fact and Plaintiffs are entitled to Judgment as a matter of law, does hereby enter Judgment in favor of Plaintiffs and against Defendants, and each of them, jointly and severally as follows:
> 1. Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and
> 2. Permanently enjoining enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257.

The Clerk's Judgment entered accordingly states (underline and bold in original):

> IT IS ORDERED AND ADJUDGED that **JUDGMENT** is entered in favor of Plaintiffs and against Defendants, and each of them, jointly and severally, as follows:
> 1. Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and
> 2. Permanently enjoining enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257.

These Judgments (collectively "**Judgment**") were based on *Glick v. McKay*, 616 F. Supp. 322 (D. Nev. 1985) (using dkt. no. "CV-R-85-33" in error), and *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991), both based on the abortion right in *Roe v. Wade*, 410 U.S. 113 (1973). "[A]pplying [the Judgment] prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), because

- *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), removed its foundation by overruling *Roe* and *Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992), and substituting a rational-basis test that the challenged provisions readily survive;[1] and

- *Lambert v. Wicklund*, 520 U.S. 292 (1997) (per curiam), abrogated *Glick*, 937 F.2d 434.

---

[1] That *Dobbs* also abrogated cases recognizing third-party standing in the abortion context, *see* 142 S.Ct. at 2275, is a further reason to vacate. All hyperlinks herein functioned as of November 28, 2023.

## Memorandum of Points and Authorities in Support of Motion

## Parties, Counsel & Service

Plaintiffs in 1985 were Dr. Glick and Planned Parenthood of Washoe County ("**PPWC**"). Movants are separately filing a suggestion of Dr. Glick's death under Rule 25(a)(1), which authorizes "the proper party" to move to substitute. Fed. R. Civ. P. 25(a)(1). Rule 25 applies to post-judgment actions. *See, e.g.*, *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 40 (1st Cir. 2016), *quoted with approval in GMAT Legal Title Trust 2013-1 v. SFR Invs. Pool 1, LLC*, 2018 U.S. Dist. LEXIS 26978, *3. Whoever is now assuming Dr. Glick's role and interest herein, i.e., a physician wanting to perform abortions on minors without complying with Nevada's parental-notice provisions, would be such a "proper party." *See Glick*, 616 F. Supp. at 323. That person is unknown to Movants but is necessarily known to PPWC's successor in interest. Under Rule 25(a)(1), absent such a motion "the action by . . . the decedent must be dismissed." But since Movants seek relief *from judgment* in a case only reopened by operation of Rule 60(b)(5), it is too late to dismiss Dr. Glick's claim. However, only for purposes of establishing a successor in interest to PPWC in this case, Movants believe "the right sought to be enforced survives"[2] for PPWC's successor in interest, Fed. R. Civ. P. 25(a)(2), so a motion to substitute for Dr. Glick is permitted but not required.

A search for PPWC at esos.nv.gov/EntitySearch/OnlineEntitySearch yields no results. Rule 25(c) addresses interest transfers, including by corporate mergers. *See* 7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.). PPWC's transferee is Planned Parenthood Mar Monte, Inc. ("**PPMM**") at 455 West Fifth St. in Reno, *see* www.plannedparenthood.org/planned-parenthood-mar-monte/contact-us, which offers abortion services to minors without requiring parental notice, *see* www.plannedparenthood.org/planned-parenthood-mar-monte/patient-resources/information-for-teens. PPMM is at 455 West Fifth Street in Reno; its formation date is 07/29/1999.[3] The Planned

---

[2] Obviously, the abortion right declared in *Roe v. Wade*, 410 U.S. 113 (1973), was eliminated by *Dobbs*, 142 S.Ct. 2228, so the present motion should be granted. But that abortion right was the right Glick and PPWC both asserted, so that "right . . . survives" for the purpose of establishing a successor in interest.

[3] Search esos.nv.gov/EntitySearch/OnlineEntitySearch for "Planned Parenthood Mar Monte, Inc." "Registered Agent Information" lists Tanya McDougall-Johnson at that address.

3

1   Parenthood entity operating in Washoe County from 1971 to 1997 was Planned Parenthood of

2   Northern Nevada, also at 455 West Fifth Street.[4] PPMM was formed by "mergers of Planned Par-

3   enthood affiliates and independent health centers during the 1990s." *See* www.plannedparen-

4   thood.org/planned-parenthood-mar-monte/who-we-are/mission-and-history. One was with

5   Planned Parenthood of Northern Nevada. *See* B.D. Spence, *Planned Parenthood to merge*,

6   Recordnet.com (Sept. 27, 1996), www.recordnet.com/story/news/1996/09/27/planned-

7   parenthood-to-merge/50839953007/. PPMM is also the successor in interest based on abortion

8   services. *Cf. Lucero v. Trosch*, 121 F.3d 59 (11th Cir. 1997) (new owner of abortion business

9   could be joined as a party plaintiff to receive the protection of an injunction obtained by prior

10  owner). So PPMM may move to be substituted. But Rule 25(c) says "[i]f an interest is trans-

11  ferred, the action may be continued by . . . the original party unless the court, on motion, orders

12  the transferee to be substituted in the action or joined with the original party."

> 13 14 15  The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest though the successor is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

16  7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.) (citations omitted). Thus, PPMM may move to substi-

17  tute or assure that any defense it wishes to make is provided on behalf of the merged PPWC.

18  1985 Defendants were Attorney General McKay and district attorneys listed in *Glick*, 616 F.

19  Supp. at 322. Public-office substitutions are automatic, Fed. R. Civ. P. 25(d), so Movants substi-

20  tuted defendants in the present caption based on the current Attorney General and district attor-

21  neys at ag.nv.gov/uploadedFiles/agnvgov/Content/Home/NVDAA%20CONTACT%20LIST.pdf.

22  Movants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon

23  County District Attorney, are successors in office to defendants Plaintiffs sued. They seek relief

24  from the Judgment preventing them from enforcing Nevada's parental-notice provisions. Should

25  other defendants not support Movants, such issues were raised and rejected in *Bryant v. Woodall*,

26  622 F. Supp. 3d 147, 152 (M.D.N.C. 2022). There the court sua sponte ordered post-*Dobbs*

27
28  [4]  Search esos.nv.gov/EntitySearch/OnlineEntitySearch for "Planned Parenthood of Northern Nevada."

1   briefing as "injunctive relief granted in this case may now be contrary to law." *Id.* at 150 (citation

2   omitted). Plaintiffs there argued against lifting the injunction on abortion restrictions, and Defen-

3   dants *also* argued that "[l]ifting the injunction will likely worsen the public confusion that is in-

4   evitable from such a profound reversal in the law." *Id.* at 151 (citation omitted). The court said,

5   "Plaintiffs' and Defendants' arguments illustrate why this injunction must be dissolved and dis-

6   missed," since *Dobbs*'s elimination of the federal abortion right "depriv[ed] the injunction of any

7   constitutional basis from which to enjoin the challenged [provisions]." *Id.* That the two district

8   attorneys "ha[d] no intention to exercise that enforcement authority," and no other district attor-

9   ney indicated an intention to enforce the provisions, was simply "not a persuasive reason to

10   maintain the injunction" because "the likelihood of future prosecution will always be difficult to

11   predict." *Id.* (quotation marks omitted; citations omitted). "'[A] court of equity will not grant an

12   injunction to restrain one from doing what he is not attempting to do and does not intend to do.'"

13   *Id.* at 154 (citation omitted).

14        The Civil Cover Sheet lists Plaintiffs' counsel as Stanley H. Brown, Chartered, Stanley H.

15   Brown, Sr., and Stanley H. Brown Jr. at 147 East Liberty Street, Reno, NV 89501. *See also*

16   *Glick*, 616 F. Supp. at 323 (same). Nevada State Bar records show Stanley H. Brown, Sr. de-

17   ceased but Stanley H. Brown, Jr. practicing at 127 East Liberty Street. *See* nvbar.org/for-

18   the-public/find-a-lawyer/?usearch=stanley%20H.%20Brown. So Movants are serving attorney

19   Brown, Jr. both by this Court's electronic filing system (where he is listed as Plaintiffs' counsel

20   of record with an email address) and by mail at his new address, as required by Rules 5 and 25

21   But Movants are also serving PPMM directly because they are unsure that attorney Brown's rep-

22   resentation of PPWC continues with PPMM and because in *FDIC v. Harger*, 778 F. Supp. 2d

23   1123, 1133 (D.N.M. 2011), the court found notice to counsel appearing twenty years prior did

24   not suffice without serving the party. Counsel for all Defendants was the Attorney General. *See*

25   Docket p. 1. The specific attorney listed for the Attorney General's office, Brooke Nielsen, no

26   longer appears to be employed by Nevada, *see* https://transparentnevada.com/di-

27   rectory/?department=&q=Nielsen, so Movants are serving the Attorney General. For like reasons,

28   the also are serving the current district attorneys. Movants withdraw and do not renew their prede-

cessors' consent for Attorney General representation in this matter.

## Statutory Provisions

The Judgment declared unconstitutional and permanently enjoined three provisions: NRS § 442.255 ("**Notice Requirement**" with "**Judicial-Bypass Procedure**"); NRS § 442.2555 ("**Appeal Procedure**"), and NRS § 442.257 ("**Penalty Provision**"). *See Glick*, 937 F.2d at 442-43 (1985 texts of 442.255 and 442.2555); www.leg.state.nv.us/nrs/nrs-442.html#NRS442Sec255 (current texts). A 2015 Appeal Procedure amendment does not affect the present Motion.

## Statement of the Case

On June 28, 1985, Dr. Glick and PPWC challenged the constitutionality of the foregoing provisions "pursuant to the United States Constitution and 42 U.S.C. § 1983," *Glick*, 616 F. Supp. at 323, moving for a preliminary injunction (Dkt. #2) and a temporary restraining order (Dkt. # 5). On the same date, this Court issued a temporary restraining order against enforcement of the challenged provisions (Dkt. #6). On July 17, 1985, this Court entered an order granting the preliminary injunction (Dkt. #23), reported at 616 F. Supp. 322.

In its preliminary-injunction order, this Court noted the challenge's sole basis: "[t]he [federal] constitutional guarantee of personal liberty [that] protects a woman's right to terminate her pregnancy." 616 F. Supp. at 324 (citing *Roe*, 410 U.S. 113). But it said that "this right is not absolute and the Supreme Court has noted that 'a State's interest in protecting immature minors will sustain a requirement of a consent substitute, either parental or judicial.'" *Id.* (quoting *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 439 (1983) ("***Akron I***")). "Thus, Nevada's parental notification statute is not per se unconstitutional and must be analyzed under the applicable constitutional analysis." *Id.* Noting that the parties disagreed over whether parental-*consent* analysis applied to the Notice Requirement, *id.* at 324, this Court decided to apply the parental-consent analysis, *id.* at 325. The Court preliminarily enjoined NRS §§ 442.255, 442.2555, and 442.257. *Id.* at 325-28.

Defendants appealed that order. *Glick*, 937 F.2d at 436. The Ninth Circuit said "although this appeal arises from a ruling on a motion for a preliminary injunction, important constitutional

issues are at stake and the customary discretion accorded to a district court's ruling on a prelimi-

nary injunction yields to our plenary scope of review as to the applicable law." *Id.* (citation omit-

ted). The Ninth Circuit conducted briefing and argument, then "withheld judgment pending the

decision of the United States Supreme Court in *Thornburgh v. American College of Obstetri-*

*cians & Gynecologists*, 476 U.S. 747 (1986), *Hartigan v. Zbaraz*, 484 U.S. 171 (1987), *Hodgson*

*v. Minnesota*, 497 U.S. 417 (1990), and *Ohio v. Akron Center for Reproductive Health*, 497 U.S.

502 (1990) (*Akron II*)[⁵] . . . ." *Glick*, 937 F.2d at 436. It decided it need not decide appellants'

argument, left open in *Akron II*, that since a notification requirement lacked the potential for a

veto, a judicial bypass provision was not constitutionally required. *Id.* at 436. Rather, it decided

that it need only address the adequacy of the bypass procedure:

> Though we hold *infra* that the Nevada statute does not similarly satisfy the requirements
> for a parental consent statute, we need not address whether such a judicial or other bypass
> procedure is constitutionally required. Appellees attack only the adequacy of the judicial
> bypass, not the lack of it. Because the Nevada parental notification statute contains a bypass
> procedure, we must address the constitutional adequacy of the procedure, but we are con-
> strained from addressing the constitutional necessity of such a procedure.

*Id.* at 436-37 (paragraph break removed). Noting that "*Akron II* . . . held that a bypass procedure

that would suffice as a consent statute will suffice as a notice statute," *id.* at 437, the court ana-

lyzed the Notice Requirement under "[t]he four *Bellotti* [*II*] criteria applied in *Akron II*," *id.* (cit-

ing *Akron II*, 497 U.S. at 511-13 (citing *Bellotti v. Baird*, 443 U.S. 622, 643-44 (1979) (plurality

opinion) ("**Bellotti II**"))). Finding problems,[⁶] the panel affirmed the preliminary injunction:

> We hold that a bypass procedure within a parental notification statute must meet constitu-
> tional scrutiny. Because we find that the Nevada bypass procedure fails to meet the require-
> ments for a consent statute bypass, and also does not meet the expediency requirement for
> a notice statute bypass, . . . the district court properly enjoined NRS 442.255, NRS
> 442.2555, and NRS 442.257.

937 F.2d at 442. So the identified problems were with the bypass and expediency.

On October 10, 1991, this Court entered Judgment for declaratory and permanent injunctive

---

[⁵]  As established below, *Akron II* (1990) provided controlling precedent by upholding a
parental-notice provision nearly identical to Nevada's at issue in *Glick*. *See* Part II.

[⁶]  The panel's erroneous analysis was abrogated in *Wicklund*, 520 U.S. 292. *See* Part II.

7

relief without further analysis, *see supra* at 2 (Judgment language), so that Judgment was based on the analysis in this Court's preliminary-injunction analysis and the Ninth Circuit's opinion.

## Argument

*Legal Standard.* This Court should provide Movants relief from the Judgment preventing enforcement of Nevada's parental-notification provisions under Rule 60(b)(5): "On motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (5) . . . applying it prospectively is no longer equitable." The core issue is "whether ongoing enforcement of the original [injunction] is supported by ongoing violation of federal law." *See Horne v. Flores*, 557 U.S. 433, 454 (2009). If not, a severe federalism problem arises. *See, e.g.*, *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 389 (1992). Modifying an injunction under Rule 60(b)(5) is within a district court's discretion, but "a district court abuses its discretion by refusing to modify an injunction even after its legal basis has evaporated." *California by & through Becerra v. United States Environmental Protection Agency*, 978 F.3d 708, 711 (9th Cir. 2020) ("*EPA*"); *see also id.* at 713 (same). "An unbroken line of Supreme Court cases makes clear that it is an abuse of discretion to deny a modification of an injunction after the law underlying the order changes to permit what was previously forbidden." *Id.* at 713-14 (collecting cases); *see also id.* at 715 (Ninth Circuit and other circuit precedents holding same). For example, the Ninth Circuit said that *Agostini v. Felton*, 521 U.S. 203 (1997), "confirms the equitable principle that when the law changes to permit what was previously forbidden, it is an abuse of discretion not to modify an injunction based on the old law." *Id.* at 714-15. That "equitable principle" satisfies Rule 60(b)(5)'s "no longer equitable" analysis without further consideration of equitable factors in cases like this. The Ninth Circuit in *EPA* said this in rejecting plaintiff states' argument "that courts must look beyond the new regulations and conduct a broad, fact-specific inquiry into whether modification prevents inequity." *Id.* at 713. For example, it said, *Agostini*

8

"held —without any analysis of other equitable factors—that the City was entitled to relief from the prospective injunction" after the U.S. Supreme Court's "Establishment Clause jurisprudence had shifted so significantly that the prior cases supporting the injunction were no longer good law." *Id.* at 714 (citing *Agostini*, 521 U.S. at 208-09). Following *Agostini*, the Ninth Circuit "relied solely on the law without considering other equitable factors." *Id.* at 715 (citations omitted).

*Application by Other Courts.* Other district courts have applied Rule 60(b) to vacate similar injunctions post-*Dobbs*. For example, in *June Medical Services LLC v. Phillips*, No. 14-525-JWD-RLB, 2022 WL 16924100 (M.D. La. Nov. 14, 2022), the court held that post-*Dobbs* it was no longer in the public interest and no longer equitable to maintain a permanent injunction barring enforcement of a Louisiana law requiring doctors performing abortions to have admitting privileges at a nearby hospital (which it held also met the rational-basis test), so it vacated the injunction. For another example, in *Bryant v. Woodall*, 622 F. Supp. 3d 147 (M.D.N.C. 2022), the court sua sponte ordered briefing on whether a permanent injunction against enforcement of North Carolina abortion regulations should be lifted pursuant to Rule 60(b) and then ordered that the "the injunction described in the summary judgment order [citations omitted] and the Judgment [citation omitted], is hereby VACATED and DISSOLVED, and the injunctive relief is DISMISSED," *id.* at 155. Similarly, three circuit courts have vacated abortion-regulation injunctions post-*Dobbs*. *See Whole Woman's Health v. Young*, 37 F.4th 1098, 1099 (5th Cir. 2022); *Sistersong Women of Color Reprod. Justice Collective v. Governor*, 40 F.4th 1320, 1324 (11th Cir. 2022); *Planned Parenthood S. Atl. v. Wilson*, 2022 WL 2900658 (4th Cir. July 21, 2022).

*Application to Judgment.* As stated in the Motion, *supra* at 2, and developed next, the Judgment should be vacated because (**I**) *Dobbs* (2022) removed the Judgment's abortion-right foundation, substituting a rational-basis test that Nevada's parental-notice law readily survives; (**II**) even under *Roe*, the Supreme Court abrogated *Glick* (1991) in *Wicklund* (1997), holding that the controlling precedent was *Akron II* (1990), under which Nevada's parental-notice provisions were constitutional; and (**III**) applying the Judgment prospectively is not equitable.

# I.

### *Dobbs* replaced the Judgment's foundation and analysis with a rational-basis scrutiny that Nevada's law readily survives.

As established in the Statement of the Case, *Glick* was based solely on the right and scrutiny in *Roe*, 410 U.S. 113, and its progeny. But as established next: (**A**) *Dobbs* removed the Judgment's federal-right foundation; (**B**) *Dobbs* replaced the Judgment's analysis with a rational-basis test; and (**C**) Nevada's law readily meets the governing rational-basis scrutiny.

**A.   *Dobbs* removed the Judgment's federal-right foundation.**

*Dobbs* removed the Judgment's federal-right foundation by overruling *Roe* and *Casey*, 505 U.S. 833, because abortion is not "protected by *any* constitutional provision" (emphasis added):

> We hold that *Roe* and *Casey* must be overruled. The Constitution makes no reference to abortion, and *no such right is implicitly protected by any constitutional provision*, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment. That provision has been held to guarantee some rights that are not mentioned in the Constitution, but any such right must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). The right to abortion does not fall within this category.

142 S.Ct. at 2242 (emphasis added; paragraph break removed). So the abortion issue returns to the states: "We therefore hold that the Constitution does not confer a right to abortion. *Roe* and *Casey* must be overruled, and the authority to regulate abortion must be returned to the people and their elected representatives." *Id.* at 2279; *see also id.* at 2284 ("We now overrule those decisions and return that authority to the people and their elected representatives."). That overruling justifies relief from the Judgment because it removes *Glick*'s federal-right foundation.

**B.   *Dobbs* replaced the Judgment's analysis with a rational-basis test.**

With the overruling of *Roe*, 410 U.S. 113, and *Casey*, 505 U.S. 833, their analyses were also overruled, so *Dobbs* removed the Judgment's analysis. As established next (**1**) *Roe*'s strict scrutiny and *Casey*'s undue-burden test are gone, (**2**) facial challenges are governed by the no-set-of-circumstances test, and (**3**) *Dobbs* established a rational-basis test.

**1.   *Roe*'s strict scrutiny and *Casey*'s undue-burden test are gone.**

With *Dobbs*'s overruling of *Roe* and *Casey*, the strict scrutiny of *Roe*, 410 U.S. at 155, and

1  the undue-burden test of *Casey*, 505 U.S. at 878, are gone. All federal abortion cases post-*Roe*

2  (1973) and pre-*Casey* are built on *Roe*'s strict scrutiny. That includes the analyses in *Glick*, 616

3  F. Supp. 322, *Glick*, 937 F.2d 434, and this Court's October 10, 1991 Judgment. *Casey* replaced

4  that analysis, but *Casey*'s analysis is also overruled. So the Judgment's analysis is gone. *Dobbs*

5  also abrogated cases recognizing third-party standing in abortion cases, 142 S.Ct. at 2275, pro-

6  viding another reason to vacate the Judgment because Plaintiffs cannot assert patients' rights.

7  **2.  Facial challenges are governed by the no-set-of-circumstances test.**

8  As the present case is a facial challenge, the applicable facial-challenge test must be estab-

9  lished and followed. *Dobbs* noted that "[t]he Court's abortion cases have diluted the strict stan-

10  dard for facial constitutional challenges." 142 S. Ct. at 2275 (citing compare *United States v.*

11  *Salerno*, 481 U.S. 739, 745 (1987), with *Casey*, 505 U.S. at 895, and see also *Dobbs*, 142 S. Ct.

12  at 2771-74). With *Casey* overruled, that dilution is gone. But even back in *Akron II* (1990), the

13  Ohio parental-notice law was challenged facially and the Supreme Court held that the no-set-of-

14  circumstances rule applied and "worst-case" speculation must be rejected:

15      [B]ecause appellees are making a facial challenge to a statute, they must show that "no set
16      of circumstances exists under which the Act would be valid." *Webster v. Reproductive
        Health Services*, 492 U.S. 490, 524 (1989) (O'CONNOR, J., concurring). The Court of
17      Appeals should not have invalidated the Ohio statute on a *facial* challenge based upon a
        *worst-case analysis that may never occur.*
18

19  *Akron II*, 497 U.S. at 514 (emphasis added). Of course, this *Akron II* test is the well-known test

20  stated earlier in *Salerno*, 481 U.S. at 745 ("insufficient" to show that a challenged provision

21  "might operate unconstitutionally under some conceivable set of circumstances"); *id.* (must "es-

22  tablish that no set of circumstances exists under which the [provision] would be valid") So even

23  under *Roe*, *Salerno* controlled in abortion cases, including parental-involvement cases.

24  A question about the ongoing applicability of that test in the abortion context arose when

25  *Casey* (1992) employed a large-fraction analysis: If "in a large fraction of the cases in which [the

26  challenged spousal-notification provision] is relevant, it will operate as a substantial obstacle to a

27  woman's choice to undergo an abortion[,] [i]t is an undue burden, and therefore invalid." *Casey*,

28  505 U.S. at 895. The dissent noted that the large-fraction test did not comply with *Salerno*'s no-

1    set-of-circumstances test for facial challenges. *Id.* at 972-73 (Rehnquist, C.J., joined by White,

2    Scalia & Thomas, JJ., concurring in the judgment in part and dissenting in part).

3        Even under *Casey*'s large-fraction test, parental-involvement laws such as *Akron II*'s were

4    constitutional. After holding that a spousal-notice law was an undue burden on a substantial frac-

5    tion of women, *Casey* distinguished *parental-involvement* cases, 505 U.S. at 895:

6        This [spousal-notice] conclusion is in no way inconsistent with our decisions upholding
         parental notification or consent requirements. See, *e.g.*, *Akron II*, 497 U.S., at 510-519;
7        *Bellotti v. Baird*, 443 U.S. 622 (1979) (*Bellotti II* ); *Planned Parenthood of Central Mo. v.
         *Danforth*, 428 U.S. [52,] 74 [(1976)]. Those enactments, and our judgment that they are
8        constitutional, are based on the quite reasonable assumption that minors will benefit from
         consultation with their parents and that children will often not realize that their parents have
9        their best interests at heart. We cannot adopt a parallel assumption about adult women.

10       After *Casey*, the *Salerno* test *should* have controlled abortion cases because the Supreme

11   Court has made *no* statement that it was overruling *Salerno* in the abortion context, which state-

12   ment was required to deem it overruled since the Court instructs courts *not* to "conclude that its

13   recent cases have, by implication, overruled an earlier precedent," *Agostini,* 521 U.S. at 237.

14       Yet in 1999, the Ninth Circuit decided that "[a]lthough the Court ha[d] yet to address the

15   conflict between *Casey* and *Salerno* in a majority decision, members of the [Supreme] Court

16   have offered their opinions," on which the Ninth Circuit panel decided it could rely to decide that

17   "*Casey* has overruled *Salerno* in the context of facial challenges to abortion statutes . . . ."

18   *Planned Parenthood of Southern Arizona v. Lawall*, 180 F.3d 1022, 1025, 1027 (1999), *amended

19   on other grounds*, *Planned Parenthood of Southern Arizona v. Lawall*, 193 F.3d 1042 (9th Cir.

20   1999) (Order amending opinion and denying en-banc rehearing). So the Ninth Circuit decided

21   *Salerno*'s test did not apply to a facial challenge to a judicial bypass to a parental-consent statute.

22   *Id.* at 1024.[7] Notably, that *Lawall* decision ignored *Casey*'s own distinguishing of parental-

23   _____

24   [7]  In the Order amending its *Lawall* opinion and denying en banc rehearing, 193 F.3d 1042, dis-
25   senters said *Salerno* governed, but even under *Casey* "plaintiffs . . . have not shown that Ari-
26   zona's trial courts will impermissibly drag out their consideration of a 'large fraction' of minors'
27   petitions for judicial bypasses." *Id.* at 1045-47 (O'Scannlain, J., joined by Nelson & Kleinfeld,
28   JJ., dissenting). The dissent said "[t]his holding flies in the face of . . . *Hodgson v. Minnesota*,
     497 U.S. 417 (1990) (plurality opinion). In *Hodgson*, five Justices (with Justice O'Connor writ-

12

involvement cases under its new undue-burden, large-fraction analysis and citing *Akron II*'s law as a constitutionally permissible example, 505 U.S. at 895. The Ninth Circuit's refusal to follow Supreme Court authority was presaged in *Glick* where the Ninth Circuit first noted *Akron II*'s facial-challenge rule and followed it, 937 F.2d at 439 (confidentiality criterion), but then again noted *Akron II*'s rule and did *not* follow it, *id.* at 440 n.4 (expedition criterion).

But now the large-fraction analysis is gone with the overruling of *Casey* in *Dobbs*. *Salerno*'s analysis governs abortion-case facial challenges. And long before *Dobbs* overruled *Casey* in 2022, the Supreme Court was rejecting facial challenges in abortion cases. *See, e.g.*, *Gonzalez v. Carhart*, 550 U.S. 124, 167 (2007) (" [T]hese facial attacks should not have been entertained in the first instance. In these circumstances the proper means to consider exceptions is by as-applied challenges."); *id.* ("The latitude given facial challenges in the First Amendment context is inapplicable here. Broad challenges of this type impose 'a heavy burden' upon the parties maintaining the suit. *Rust v. Sullivan*, 500 U.S. 173, 183 (1991).").[8]

As the present case involved a facial challenge, Plaintiffs had the burden to prove that *no* circumstances exist under which the challenged provisions would be constitutionally applied. That was not required of them, and the Ninth Circuit erroneously failed to follow *Salerno*'s test. 937 F.2d at 440 n.4. That requires vacating the Judgment because under the proper test Nevada's provisions survived strict scrutiny. *See infra* Part II (further discussion of this *Glick* problem).[9]

---

ing separately) upheld the judicial bypass provision of a Minnesota parental-notice statute that imposed no specific time-limits on the courts' disposition of bypass petitions." 193 F.3d at 1044.

[8] *Rust* (a challenge to restrictions on abortion counseling, referral, and advocacy restrictions under federal Title X) stated the facial-challenge test thus, 500 U.S. at 183:

Petitioners face a heavy burden in seeking to have the regulations invalidated as facially unconstitutional. 'A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [the regulations] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid.' *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[9] Applying *Salerno*'s analysis also establishes that *Wicklund* entirely (not partially) abrogated *Glick*. *See infra* Part II.

### 3.  *Dobbs* established a rational-basis test.

*Dobbs* substituted a rational-basis test for the analysis on which the Judgment was based. Under the U.S. Constitution, provisions regulating abortion now are subject only to low, rational-basis scrutiny: "[R]ational-basis review is the appropriate standard for . . . challenges [to abortion regulations]." 142 S. Ct. at 2283. "[W]hen such regulations are challenged under the Constitution, courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.'" *Id.* at 2283-84 (citation omitted). "A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.'" *Id.* at 2284 (citation omitted). "It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* (citation omitted). Citing legitimate interests for restricting abortion, *id.*, the Court held that those interests justified Mississippi's ban on abortion after 15 weeks of probable gestational age: "These legitimate interests provide a rational basis for the Gestational Age Act, and it follows that respondent's constitutional challenge must fail." *Id.*

That analysis also applies to *Roe*'s progeny regarding parental-involvement laws. *Dobbs* noted that "[d]espite *Roe*'s weaknesses, its reach was steadily extended in the years that followed. The Court struck down laws requiring . . . that minors obtain parental consent . . . ." *Id.* at 2271. But with the *Roe* and *Casey* foundation gone—because "no [abortion] right is implicitly protected by any constitutional provision," *Dobbs*, 142 S. Ct. at 2242—there is no federal constitutional basis to employ either *Roe*'s strict scrutiny or *Casey*'s undue-burden test in reviewing parental-involvement requirements for minors seeking abortion. Rather, as *Dobbs* established, rational-basis scrutiny now controls abortion law under the federal Constitution. *Id.* at 2283.

**C.  Nevada's law readily meets the governing rational-basis scrutiny.**

Nevada's parental-notice provisions are constitutional under rational-basis scrutiny. As *Dobbs* established, "rational-basis review is the appropriate standard," *id.*, which requires only "a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* at 2284. *Dobbs* provided legitimate reasons for the post-15-week abortion ban provision at issue there (which it upheld):

14

These legitimate interests include respect for and preservation of prenatal life at all stages of development, *Gonzales*, 550 U.S. [at 157-158]; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability. See *id.*, at 156-157; *Roe*, 410 U.S. at 150; cf. [*Washington v.*] *Glucksberg*, 521 U.S. [702,] 728-731 [(1997)] (identifying similar interests).

*Id.* And specifically in the parental-notice context, *Akron II* held that a parental-notice requirement is justified by the requisite legitimate interests, for example, 497 U.S. at 520:

It is both rational and fair for the State to conclude that, in most instances, the family will strive to give a lonely or even terrified minor advice that is both compassionate and mature. The statute in issue here is a rational way to further those ends. It would deny all dignity to the family to say that the State cannot take this reasonable step in regulating its health professions to ensure that, in most cases, a young woman will receive guidance and understanding from a parent. We uphold H.B. 319 on its face and reverse the judgment of the Court of Appeals.

That apples here. Since parental-notice laws have been held constitutional under both strict scrutiny, *see, e.g.*, *Akron II*, 497 U.S. 502, and undue-burden, large-fraction scrutiny, *see Casey*, 505 U.S. at 895, *a fortiori* they survive rational-basis scrutiny. Since minors have no federal abortion right, states may now even ban abortion, so *a fortiori* they may require parental notice.

## II.

### *Wicklund* abrogated the Judgment for failure to follow *Akron II*.

Even *post-Casey* and pre-*Dobbs*, *Glick*, 937 F.2d 434, was abrogated in *Wicklund*, 520 U.S. at 294-99, for failure to follow federal precedent in *Akron II*, 497 U.S. 502, under which Nevada's law was constitutional.[10] Westlaw's red-flagged *Glick* caveat says: "Severe Negative Treatment[:] Abrogated by Lambert v. Wicklund, U.S.Mont., March 31, 1997." 937 F.2d 434.

The Supreme Court's decision to summarily (i) reverse the Ninth Circuit in *Wicklund* and (ii) abrogate *Glick* was not a close call for the Supreme Court. It granted certiorari and summarily reversed the Ninth Circuit in a six-member, per-curiam opinion, with Justice Stevens (joined by Justices Ginsburg and Breyer) concurring in the judgment. 520 U.S. at 293, 301. So there was

---

[10]  With the reversal of *Roe* and *Casey* in *Dobbs*, federal parental-involvement cases like *Akron II* no longer control generally, but they show Nevada's provisions survive any scrutiny level. So though no state-law challenge is at issue here, the provisions should survive any such scrutiny.

15

1 unanimous agreement that the Ninth Circuit erred in *Wicklund* by relying on its erroneous *Glick*

2 decision, and the error was so obvious that (i) full briefing and oral argument were unnecessary

3 and (ii) the Ninth Circuit could be summarily reversed in a for-the-court opinion.

4     The Supreme Court abrogated *Glick* in *Wicklund* while upholding a 1995 Montana parental-

5 notification statute the Supreme Court found "substantively indistinguishable" from (i) the Ohio

6 statute the Court upheld in *Akron II* and (ii) Nevada's statute at issue in *Glick*:

7     In *Akron* [*II*], we upheld a statute requiring a minor to notify one parent before having an

8     abortion, subject to a judicial bypass provision. We declined to decide whether a parental
      notification statute must include some sort of bypass provision to be constitutional. [497

9     U.S. at 510]. Instead, we held that this bypass provision satisfied the four *Bellotti*[ *II*, 443
      U.S. at 643-44,] criteria required for bypass provisions in parental *consent* statutes, and that

10    *a fortiori* it satisfied any criteria that might be required for bypass provisions in parental
      notification statutes. Critically for the case now before us, the judicial bypass provision we

11    examined in *Akron* was substantively indistinguishable from both the Montana judicial
      bypass provision at issue here and the Nevada provision at issue in *Glick*. See 497 U.S., at

12    508 (summarizing Ohio Rev. Code Ann. § 2151.85 (1995)).

13 *Wicklund*, 520 U.S. at 296 (emphasis in original). And the *Wicklund* Court again reiterated that

14 the statutes in the three states must be treated alike: "The Ohio parental notification statute at is-

15 sue [in *Akron II* ] was indistinguishable in any relevant way from the Montana statute at issue" in

16 *Wicklund*, *id.* at 297, which in turn was "substantively indistinguishable from . . . the Nevada

17 provision at issue in *Glick*," *id.* at 296. Yet in *Glick* the Ninth Circuit ignored the "virtual[] ident-

18 i[ty]" of both the Montana statute (in *Wicklund*) and the Nevada statute (in *Glick*) with the Ohio

19 statute that *Akron II* said met all of *Bellotti II*'s judicial-bypass criteria, *id.* (emphasis added):

20
21    Despite the fact that *Akron* [*II*] involved a parental notification statute, and *Bellotti* [*II*]
      involved a parental consent statute; despite the fact that *Akron* [*II*] involved a statute *virtu-*

22    *ally identical* to the Nevada statute at issue in *Glick*; and despite the fact that *Akron* [*II*]
      explicitly held that the statute met all of the *Bellotti* [*II*] requirements, the Ninth Circuit in

23    *Glick* struck down Nevada's parental notification statute as inconsistent with *Bellotti* . . . .

24 The Supreme Court noted the Ninth Circuit's failure in *Wicklund* to follow the *Akron II* prece-

25 dent regarding *Bellotti II*'s judicial-bypass criteria though the statutes were "indistinguishable in

26 any relevant way"—all based on the Ninth Circuit's error in *Glick*:

27    Based entirely on *Glick*, the Ninth Circuit in this case affirmed the District Court's ruling
      that the Montana statute is unconstitutional, since the statute allows waiver of the notifica-

28

16

1
2
3
4
5
6
7

tion requirement only if the youth court determines that notification—not the abortion itself—is not in the minor's best interests. 93 F.3d, at 572.

As should be evident from the foregoing, this decision simply cannot be squared with our decision in *Akron* [*II*]. The Ohio parental notification statute at issue there was <u>indistinguishable in any relevant way</u> from the Montana statute at issue here. Both allow for judicial bypass if the minor shows that parental *notification* is not in her best interests. We asked in *Akron* [*II*] whether this met the *Bellotti* [*II*] requirement that the minor be allowed to show that "the desired abortion would be in her best interests." We explicitly held that it did. 497 U. S., at 511. Thus, the Montana statute meets this requirement, too. In concluding otherwise, the Ninth Circuit was mistaken.

8
9
10
11
12
13
14

*Id.* at 297 (italics in original; underlining added). Despite the three provisions being "indistinguishable in any relevant way," *id.*, the Supreme Court noted that in *Wicklund* the Ninth Circuit declared itself bound by the Ninth Circuit's erroneous decision in *Glick*. *Id.* at 294. But the *Wicklund* district-court and Ninth-Circuit decisions—following the *Glick* precedent—failed to follow the controlling Supreme Court precedents, leading to reversal: "Because the reasons given by the District Court and the Ninth Circuit for striking down the Act are inconsistent with our precedents, we . . . reverse the judgment of the Ninth Circuit." *Id.* at 299.[11]

15
16
17
18
19
20
21
22
23
24

From the foregoing, it is clear that the analysis and holding of the Ninth Circuit opinion in *Glick* and (by extension) this Court's Judgment were erroneous, even pre-*Dobbs*, and were abrogated in *Wicklund* for failing to follow the controlling *Akron II* precedent (which governed as to both its facial-challenge and *Bellotti II*-criteria analyses). Though that suffices for vacating the Judgment herein, Nevada's parental-notice provisions are briefly addressed next to show that, as the Supreme Court said, they readily fit both *Akron II*'s facial-challenge analysis and *Bellotti II*'s four-criterion parental-*consent* analysis to further illustrate that the provisions were constitutional when preliminarily enjoined. The focus will be on the Ninth Circuit's analysis since it engaged in "plenary . . . review," *Glick*, 937 F.2d at 436, and ignored some concerns of this Court, such as with a "pocket approval" not providing a physician with a "tangible" order or whether "necessary

25
26
27
28

_____

[11]  The Ninth Circuit then "remanded to the district court for further proceedings in light of *Lambert v. Wicklund*, 520 U.S. 292," to "consider in particular those contentions raised by plaintiffs that were not addressed by the Supreme Court." *Wicklund v. Lambert*, 112 F.3d 1040, 1040 (9th Cir. 1997). That court upheld Montana's parental-notice law under *Bellotti II*'s criteria and rejected an equal-protection challenge. *Wicklund v. Lambert*, 979 F. Supp. 1285 (D. Mont. 1997).

steps" to establish confidentiality sufficed.[12] *Glick*, 616 F. Supp. at 325.

Regarding the *Bellotti II* four-part criteria, the first was that a parental-consent law "allow the minor to bypass the consent requirement if she establishes that she is mature enough and well enough informed to make the abortion decision independently." *Wicklund*, 520 U.S. at 295. The Ninth Circuit held that Nevada's bypass procedures at NRS §§ 442.255(2)(a) and NRS 442.2555(3)(a) sufficed. *Glick*, 937 F.2d at 438 ("Under *Akron II*, the Nevada statute meets the first *Bellotti* [*II*] criterion.").

The second *Bellotti II* criterion was that the law "allow the minor to bypass the consent requirement if she establishes that the abortion would be in her best interests." *Wicklund*, 520 U.S. at 295. As just discussed, the Ninth Circuit erred on what the best-interests showing requires and failed to follow *Akron II*. *Id.* at 294-99. Since Montana's near-identical bypass procedure satisfied this *Bellotti II* criterion, *id.*, Nevada's does too.

The third *Bellotti II* criterion was that the law "ensure the minor's anonymity." *Id.* at 295. The Ninth Circuit held that NRS § 442.255(4) and the Nevada Supreme Court's April 30, 1991 order met this criterion. *Glick*, 937 F.2d at 439-40.

The fourth *Bellotti II* criterion was that the law "provide for expeditious bypass procedures." *Wicklund*, 520 U.S. at 295. Regarding the Nevada provisions in *Glick*, the Ninth Circuit held that because "the statute does not contain *any* time period within which the district court must rule upon a minor's petition under NRS 442.2555," 937 F.2d at 440 (emphasis in original), "[t]he district court review procedure does not meet the *Bellotti* [*II*] expediency criterion," *id.* at 441. Noting that the *Bellotti II* criterion was for a bypass to a *consent* requirement, the Ninth Circuit also decided that the district-court-review procedure failed the expedition requirement for a *notice* provision. *Id.* at 441-42. So the flaw found was based on *assuming* a court might not expedite.

But that holding is erroneous because *Glick* was a *facial* challenge. For such a challenge, *Akron II* (the precedent the Supreme Court said in *Wicklund* was controlling) said courts may not assume worst-case scenarios, such as state courts not being expeditious: "The Court of Appeals

---

[12]   *Akron II* considered and rejected both of these concerns. 497 U.S. at 515, 517.

should not have invalidated the Ohio [parental-notice] statute on a facial challenge based upon a worst-case analysis that may never occur." *Akron II*, 497 U.S. at 514. Because the Supreme Court held in *Wicklund* that (i) *Akron II*'s Ohio law met all *Bellotti II* criteria and (ii) the Ohio, Montana, and Nevada laws were "substantively indistinguishable," "virtually identical," and "indistinguishable in any relevant way," *see supra* Part II (citations omitted), the Court necessarily decided that Nevada's statutory decision not to impose a district-court time-limit did not distinguish the Nevada law from the Ohio and Montana laws in any relevant or substantive way. Thus, under *Akron II*, the Ninth Circuit's assumption that a state court would not act expeditiously was not a relevant, substantive, or proper basis to hold that the expediency criterion was not met.

Because all three cases involved *facial* challenges, the differences between the Ohio, Montana, and Nevada provisions were irrelevant and insubstantial, and the Supreme Court rejected speculative possibilities and assumed judges would act appropriately. Under *Akron II*'s no-set-of circumstances rule, if one circumstance is that a district-court judge would rule expeditiously, a facial challenge must fail. A non-expeditious ruling would be rare or never occur, and an as-applied challenge is available if the speculated event ever actually occurred. *Akron II* also noted that "[*Planned Parenthood Assn. of Kansas City, Mo., Inc. v.*] *Ashcroft*, [462 U.S. 476 (1983),] . . . upheld a Missouri statute that contained a bypass procedure that could require 17 calendar days *plus a sufficient time for deliberation and decisionmaking* at both the trial and appellate levels. See 462 U.S., at 47[9], n. 4,[13] 491, n. 16 . . . .[14]" *Akron II*, 497 U.S. at 514 (emphasis added). "[U]nder our precedents, the mere possibility that the procedure may require up to 22 days in a rare case is plainly insufficient to invalidate the statute *on its face*." *Id.* (emphasis added). *See also id.* at 513 ("We refuse to base a decision on the *facial* validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees." (emphasis added)); *id.* at

---

[13] *Ashcroft* provided the Missouri statute at issue, which had *no* deadline for the district court, so it was presumed the court would act expeditiously. *See* 462 U.S. at 479 n.4.

[14] The Supreme Court decided the appellate expedition was sufficient, though there was *no* appellate-court deadline, because "[t]here is no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions." 462 U.S. at 491 n.16.

517 ("Regardless of whether Ohio could have written a simpler statute, H.B. 319 survives a *facial challenge*." (emphasis added)); *id.* at 519 ("On this *facial challenge*, we find the physician notification requirement unobjectionable." (emphasis added)). Based on that facial-challenge analysis, the Supreme Court decided in *Wicklund* that the Ninth Circuit should not have held as it did in the facial challenge to Montana's law: "As with the Ohio statute in *Akron* [*II*], the challenge to the Montana statute here is a facial one. Under these circumstances, the Ninth Circuit was incorrect to assume that Montana's statute 'narrow[ed]' the *Bellotti* [*II*] test, 937 F.2d, at 439, as interpreted in *Akron* [*II*]." 520 U.S. at 298.

In the *Glick* facial challenge, the Ninth Circuit first noted and followed *Akron II*'s facial-challenge analysis, but then later rejected it. Regarding the *Bellotti II* confidentiality criterion, the court followed *Akron II* in rejecting a facial challenge:

> Following the lead of the Supreme Court, we refuse to base our decision on the facial validity of this provision requiring the courts to provide confidentiality on the mere possibility that the courts may illegally fail to do so. *Akron II*, 110 S.Ct. at 2980. NRS 442.255(4) meets the *Bellotti* [*II*] confidentiality prong.

*Glick*, 937 F.2d at 439. But regarding expedition, the Ninth Circuit did *not* follow *Akron II*:

> We acknowledge that the Supreme Court in *Akron II* did caution against invalidating a notification statute on a facial challenge based upon a worst-case analysis that may never occur. *See Akron II*, 110 S.Ct. at 2981. However, in *Akron II* the Court was considering a bypass procedure with a maximum time of twenty-two days, which the Court compared favorably with the seventeen-day period it upheld in *Ashcroft*, 462 U.S. at 477, n. 4, 491 n. 16. *See Akron II*, 110 S.Ct. at 2981. While a seventeen or twenty-two day bypass procedure period satisfies the *Bellotti* [*II*] requirement that the courts must conduct a bypass procedure with expediency to allow the minor an effective opportunity to obtain an abortion, an indefinite period does not. *See Akron II*, 110 S.Ct. at 2980; *Bellotti* [*II*], 443 U.S. at 644.

*Glick*, 937 F.2d at 440 n.4. Nor did it follow *Ashcroft*, in which the Supreme Court upheld "an indefinite period" as *Akron II* noted, 497 U.S. at 514 (statute at issue in *Ashcroft* "could require 17 calendar days *plus a sufficient time for deliberation and decisionmaking* at both the trial and appellate levels" (emphasis added)).

But in *Wicklund* the Supreme Court summarily reversed the Ninth Circuit's facial-challenge analysis in *Wicklund* and abrogated the same erroneous analysis in the Ninth Circuit's *Glick*

20

1  opinion because the Ninth Circuit failed to apply *Salerno*'s facial-challenge rule and *Akron II*'s

2  application of that rule to a parental-notice statute. In effect, the Ninth Circuit was still applying

3  the post-*Roe* hyper-strict scrutiny of abortion regulations that the Supreme Court had, in the

4  parental-involvement context, rejected even in 1983 in *Akron II* and *Ashcroft*. More recent abor-

5  tion cases have applied the High Court's same facial-challenge analysis, for example, in *Gonza-

6  lez*, 550 U.S. 124, which upheld the Partial-Birth Abortion Ban Act of 2003 against a facial chal-

7  lenge. *See, e.g.*, *id.* at 168 ("For this reason, '[a]s-applied challenges are the basic building blocks

8  of constitutional adjudication.' Fallon, As-Applied and Facial Challenges and Third-Party Stand-

9  ing, 113 Harv. L. Rev. 1321, 1328 (2000).").

10      That *Wicklund* abrogated *all* of *Glick* is unaltered by the Ninth Circuit's dictum regarding

11  *Glick* in its 1999 *Lawall* decision, wherein the Ninth Circuit dropped a footnote in passing at-

12  tempting to rehabilitate *Glick* in part, *Lawall*, 180 F.3d at 1029 n.9 (parallel citation omitted):

13      The Supreme Court has disapproved the analysis in *Glick*, in which we held unconstitu-
        tional a bypass procedure which allowed a minor to have an abortion if parental notifica-
14      tion, and not the abortion itself, was not in the *minor's* best interests. *See Wicklund*, 520
        U.S. at 297-99. Nothing in *Wicklund*, however, affects *Glick*'s holding regarding *Bellotti
15      II*'s expediency requirement.

16

17  But that non-binding dictum is erroneous. While the Supreme Court did not expressly discuss the

18  expediency criterion, it said Nevada's law did not differ in any relevant way from the constitu-

19  tionally sound Ohio and Montana laws, indicating that, under *Salerno*, the differences in Neva-

20  da's law were not relevant. Moreover, *Wicklund* established that *Akron II* was the controlling pre-

21  cedent, and *Akron II* noted approvingly that *Ashcroft* "upheld a Missouri statute that could re-

22  quire 17 calendar days *plus a sufficient time for deliberation and decisionmaking* at both the trial

23  and appellate levels," 497 U.S. at 514 (emphasis added). *Akron II* gave that *Ashcroft* example

24  immediately after it stated the facial-challenge rule: "The Court of Appeals should not have in-

25  validated the Ohio statute on a facial challenge based upon a worst-case analysis that may never

26  occur." *Id.* So it was an illustration of the just-stated facial-challenge rule. Thus, *Akron II* and

27  *Ashcroft* were the controlling precedents on this issue and definitively discredit the Ninth Cir-

28  cuit's *Lawall* dictum.

Moreover, that *Lawall* dictum was based on the Ninth Circuit's erroneous rejection of *Akron II*'s no-set-of-circumstances facial-challenge test in favor of *Casey*'s large-fraction test. 180 F.3d at 1027 ("In light of our previous suggestion, combined with the great weight of circuit authority holding that *Casey* has overruled *Salerno* in the context of facial challenges to abortion statutes, we apply *Casey*'s undue burden standard in determining the facial constitutionality of [the challenged parental-consent statute and judicial bypass]").[15] But *Akron II*'s no-set-of-circumstances facial-challenge test properly controlled, so the Ninth Circuit's *Lawall* dictum was based on a fundamental error regarding the facial challenges in *Glick*. Under *Salerno*'s facial-challenge test, which properly governed *Glick* for analyzing Nevada's provisions under *Bellotti II*'s expedition criterion, Nevada's law readily satisfied the expediency requirement. (It clearly does now, too, since any large-fraction argument about facial challenges is gone with *Casey*'s overruling.)

In sum, the Supreme Court in *Wicklund* abrogated *entirely* the Ninth Circuit's affirmation in *Glick* of this Court's Judgment. So the Judgment lacked constitutional support before *Dobbs* overruled *Roe* and *Casey* because it failed to follow controlling Supreme Court precedents.

### III.
### Applying the Judgment prospectively is not equitable.

As established, the Judgment's foundation and analysis were replaced by *Dobbs* (Part I), and even under the law post-*Roe* and pre-*Dobbs*, the Judgment's analysis was erroneous and so abrogated (Part II). Either the overruling or abrogation would suffice to meet Movants' Rule 60(b) burden to establish that it is inequitable to apply the Judgment prospectively. Fed. R. Civ. P. 60(b)(5). So the Judgment and its injunction should be vacated.

---

[15]  Ironically, *Lawall* cited Justice Stevens's statement that "*Salerno*'s 'no set of circumstances' rule was dictum and unsupported by law," 180 F.3d at 1026 (citation omitted), though *Akron II* said the rule controlled, 497 U.S. at 514 (citation omitted), mooting the dictum claim. In *Planned Parenthood of S. Arizona v. Lawall* ("**Lawall II**"), the Ninth Circuit equated the facial-challenge test with the undue-burden test: "In analyzing a facial challenge to an abortion statute, we apply the undue burden standard set forth in *Planned Parenthood v. Casey*, 505 U.S. 833, 895 (1992). *See Lawall*, 180 F.3d at 1027." 307 F.3d 783, 786 (9th Cir. 2002) (footnote omitted). *Lawall II* upheld Arizona's revised parental-consent against a facial challenge based on the third *Bellotti II* confidentiality requirement as *Akron II* had rejected a like facial challenge. 180 F.3d at 789.

Nor is there need for more to vacate the Judgment, as established in *Legal Standard* at the beginning of the Argument section. "[R]efusal to modify [an] injunction . . . , when a change in law dissolved the legal basis for its order, is an abuse of discretion." *EPA*, 978 F.3d at 713. "An unbroken line of Supreme Court cases makes clear that it is an abuse of discretion to deny a modification of an injunction after the law underlying the order changes to permit what was previously forbidden." *Id.* at 713-14. *Agostini*, 521 U.S. 203, "confirms the equitable principle that when the law changes to permit what was previously forbidden, it is an abuse of discretion not to modify an injunction based on the old law." 978 F.3d at 714-15. That "equitable principle" satisfies Rule 60(b)(5)'s "no longer equitable" element without further consideration of equitable factors. *Id.* at 713. *Agostini* "held—without any analysis of other equitable factors—that the City was entitled to relief from the prospective injunction" after the U.S. Supreme Court's "Establishment Clause jurisprudence had shifted so significantly that the prior cases supporting the injunction were no longer good law." *Id.* at 714. Following *Agostini*, the Ninth Circuit "relied solely on the law without considering other equitable factors." *Id.* at 715 (citations omitted).

Though considering equitable factors is not required, Movants note that the post-*Dobbs* district court applying Rule 60(b)(5) to vacate an injunction barring enforcement of a Louisiana abortion regulation also held that the "significant change in the law brought by *Dobbs* makes continued maintenance of the injunction *detrimental to the public interest* and inequitable so as to justify an order vacating it." *June Medical Services*, 2022 WL 16924100, at *13 (emphasis added). The court cited *Moore's Federal Practice* for the principle that in public-interest litigation, "'*[a]nd when no consent decree is involved, a change in the law that permits what was previously forbidden is sufficient by itself to warrant modification of the injunction, the court need not consider other factors such as the balance of harms*.'" *Id.* (quoting *Moore's Federal Practice—Civil* § 60.47(2)(b) (2002)) (emphasis added by court). The court then (i) noted that other courts had lifted injunctions post-*Dobbs*, *id.*, (ii) found cases purportedly saying the change in the law alone was insufficient to be "distinguishable or unpersuasive," *id.* at *14, and (iii) applied *Dobbs*'s rational-basis test to uphold the challenged provision, *id.* at *14-*15. Here as there, up-

holding an injunction against an abortion regulation that now passes constitutional muster would not be in the public interest, making it inequitable on that basis not to vacate the injunction.

## Conclusion

As established above, the Motion should be granted and this Court's Judgment (Dkt. #74) and the Clerk's Judgment (Dkt. #75) should be vacated, including the permanent injunction against "enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257," because "applying them prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Respectfully submitted,

/s/ Emily C. Mimnaugh

James Bopp, Jr. (IN Bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
    rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar #87799)*
    jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Pro hac vice counsel will comply with LR IA
11-2 within 14 days.
*Counsel for Moving Defendants*

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org
*Designated Resident Nevada Counsel for Moving Defendants*

24

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December 2023, I personally served a true and correct copy of the foregoing Motion for Relief Under Fed. R. Civ. P. 60(b) by the following means: U.S. Mail and Email (except where noted)

***Plaintiffs' Counsel and Plaintiff Successor in Interest***

Stanley H. Brown Jr.
127 East Liberty Street
Reno, NV 89501
shbjrlaw@gmail.com
Tel: (775) 337-8800
*Counsel for Plaintiffs Glick and Planned Parenthood of Washoe County per docket*

Tanya McDougall-Johnson
Registered Agent for
Planned Parenthood Mar Monte, Inc.
455 West Fifth St., Suite D-2.,
Reno, NV 89503
Tel: (775) 321-8711
*Successor in Interest to Plaintiff Planned Parenthood of Washoe County*
(by certified mail only, no email address)

***Defendants' Counsel and Defendant Successors in Interest***

Aaron D. Ford
Nevada Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701
Tel: (775) 684-1100
adford@ag.nv.gov
*Defendant Successor in Office and Counsel for Original District Attorney Defendants per docket*

Arthur E. Mallory
Churchill County District Attorney
165 North Ada Street
Fallon, NV 89406
Tel: (775) 423-6561
amallory@churchillda.org
*Defendant Successor in Office*

Steven Wolfson
Clark County District Attorney
P.O. Box 552212
Las Vegas, NV 89155
Tel: (702) 671-0978
steven.wolfson@clarkcountyda.com
*Defendant Successor in Office*

Mark B. Jackson
Douglas County District Attorney
P.O. Box 218
Minden, NV 89423
Tel: (775) 782-9800
mjackson@douglas.nv.gov
*Defendant Successor in Office*

Tyler Ingram
Elko County District Attorney
540 Court Street, 2nd Floor
Elko, NV 89801
Tel: (775) 738-3101
tingram@elkocountynv.net
*Defendant Successor in Office*

Robert E. Glennen, III
Esmeralda County District Attorney
P.O. Box 339
Goldfield, NV 89013
Tel: (775) 485-6352
escodaoffice@gmail.com
*Defendant Successor in Office*

Theodore Beutel
Eureka County District Attorney
701 South Main Street
Eureka, NV 89316
Tel: (775) 237-5315
tbeutel@eurekacountynv.gov
*Defendant Successor in Office*

Kevin Pasquale
Humboldt County District Attorney
P.O. Box 909
Winnemucca, NV 89445
Tel: (775) 623-6360
kevin.pasquale@humboldtcountynv.gov
*Defendant Successor in Office*

William E. Schaeffer
Lander County District Attorney
P.O. Box 187
Battle Mountain, NV 89820
Tel: (775) 635-5195
districtattorney@landercountynv.org
*Defendant Successor in Office*

Bryce R. Shields
Pershing County District Attorney
P.O. Box 299
Lovelock, NV 89419-0299
Tel: (775) 273-2613
bshields@pershingcountynv.gov
*Defendant Successor in Office*

Dylan V. Frehner
Lincoln County District Attorney
P.O. Box 60
Pioche, NV 89043
Tel: (775) 962-8073
dfrehner@lincolncountynv.gov
*Defendant Successor in Office*

Anne Langer
Storey County District Attorney
P.O. Box 496
Virginia City, NV 89440
Tel: (775) 847-0964
alanger@storeycounty.org
*Defendant Successor in Office*

Stephen B. Rye
Lyon County District Attorney
31 S. Main Street
Yerington, NV 89447
Tel: (775) 463-6511
srye@lyon-county.org
*Defendant Successor in Office*

Christopher J. Hicks
Washoe County District Attorney
P.O. Box 11130
Reno, NV 89520
Tel: (775) 328-3220
chicks@da.washoecounty.gov
*Defendant Successor in Office*

T. Jaren Stanton
Mineral County District Attorney
P.O. Box 1210
Hawthorne, NV 89415
Tel: (775) 945-3636
jstanton@mineralcountynv.org
*Defendant Successor in Office*

James S. Beecher
White Pine County District Attorney
1786 Great Basin Blvd., Suite 4
Ely, NV 89301
Tel: (775) 293-6565
JBeecher@whitepinecountynv.gov
*Defendant Successor in Office*

Brian T. Kunzi
Nye County District Attorney
1520 E. Basin Ave., Suite 107
Pahrump, NV 89060
Tel: (775) 751-7080
btkunzi@nyecountynv.gov
*Defendant Successor in Office*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

/s/ Emily C. Mimnaugh
_____

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
Email: emimnaugh@pji.org
*Designated Resident Nevada Counsel for Moving Defendants*

**Attachment 9**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Suggestion of Death, Dkt. No. 84**

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org
*Designated Resident Nevada Counsel for Defendants Woodbury and Rye*

James Bopp, Jr. (IN Bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
    rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar  #87799)*
    jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Pro hac vice counsel will comply with LR IA 11-2 within 14 days.*
*Counsel for Defendants Woodbury and Rye*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Eugene Glick, M.D., and Planned Parenthood of Washoe County, a non-profit Nevada Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Aaron D. Ford, Nevada Attorney Gen.; Christopher J. Hicks, Washoe County Dist. Attorney; Jason D. Woodbury, Carson City Dist. Attorney; Arthur E. Mallory, Churchill County Dist. Attorney; Steven Wolfson, Clark County Dist. Attorney; Mark B. Jackson, Douglas County Dist. Attorney; Tyler Ingram, Elko County Dist. Attorney; Robert E. Glennen, III, Esmeralda County Dist. Attorney; Theodore Beutel, Eureka County Dist. Attorney; Kevin Pasquale, Humboldt County Dist. Attorney; William E. Schaeffer, Lander County Dist. Attorney; Dylan V. Frehner, Lincoln County Dist. Attorney; Stephen B. Rye, Lyon County Dist. Attorney; T. Jaren Stanton, Mineral County Dist. Attorney; Brian T. Kunzi, Nye County Dist. Attorney; Bryce R. Shields, Pershing County Dist. Attorney; Anne Langer, Storey County Dist. Attorney; James S. Beecher, White Pine County Dist. Attorney, <br><br> Defendants.** | Case No. **3:85-cv-00331** <br><br><br> **Suggestion of Death of Plaintiff Eugene Glick, M.D. Under Fed. R. Civ. P. 25(a)(1)** |

---

** Current office-holder Defendants were automatically substituted for those in *Glick v. McKay*, 616 F. Supp. 322 (D. Nev. 1985). Fed. R. Civ. P. 25(d).

1

# Suggestion of Death

Defendants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, suggest on the record, pursuant to Federal Rule of Civil Procedure 25(a)(1),[1] the death in (or about) 2010 of Plaintiff Eugene Glick, M.D. Defendants Woodbury and Rye have filed their Motion of Defendant Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, for Relief from Judgment Under Fed. R. Civ. P. 60(b)(5) ("**Relief Motion**"). As established in the Relief Motion, this case continues in the name of the successor in interest to Co-Plaintiff Planned Parenthood of Washoe County ("**PPWC**") without Dr. Glick. *See id.* at Parties, Counsel & Service.

In 1985, Dr. Glick was an abortion provider at co-Plaintiff Planned Parenthood of Washoe County ("**PPWC**"). *Glick v. McKay*, 616 F. Supp. 322, 323 (1985). As Movants established in their Relief Motion, PPWC is no longer a Nevada business but has a Planned Parenthood successor in interest (under Fed. R. Civ. Pr. Procedure 25(c)) that provides abortions at the same Reno (Washoe County) address. *See* Relief Mot. at Parties, Counsel & Service. Based on publicly available evidence, it appears Dr. Glick is deceased. An online search yields information regarding the death of Dr. Eugene Glick (1929-2010) who performed abortions in a clinic he opened in Reno, Nevada. *See* findagrave.com/memorial/175577554/eugene-j-glick (Exhibit 1, *infra* at 5);

---

[1]   **Rule 25. Substitution of Parties**
(a) Death.

(1) *Substitution if the Claim Is Not Extinguished*. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

(2) *Continuation Among the Remaining Parties*. After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.

(3) *Service*. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

legacy.com/us/obituaries/name/eugene-glick-obituary?pid=178313861 (Exhibit 2, *infra* at 9).

Rule 25(a)(1) authorizes a "proper party" to move to substitute. A "proper party" would be whoever now assumes Dr. Glick's role and interest herein: a physician wanting to perform abortions on minors without complying with Nevada's parental-notice provisions. *See Glick*, 616 F. Supp. at 323. That person is unknown to Defendants Woodbury and Rye but is necessarily known to PPWC's successor in interest. Under Rule 25(a)(1), absent such a motion "the action by . . . the decedent must be dismissed." But since Defendants Woodbury and Rye seek relief *from judgment* in a case only reopened by operation of Rule 60(b)(5), it is too late to dismiss Dr. Glick's claim. However, only for purposes of establishing a successor in interest to PPWC in this case, Defendants Woodbury and Rye believe "the right sought to be enforced survives"[2] for PPWC's successor in interest, Fed. R. Civ. P. 25(a)(2), so a motion to substitute for Dr. Glick is permitted but not required.

Respectfully submitted,

James Bopp, Jr. (IN Bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
    rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar #87799)*
    jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Pro hac vice counsel will comply with LR IA 11-2 within 14 days.
*Counsel for Defendants Woodbury and Rye*

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org
*Designated Resident Nevada Counsel for Defendants Woodbury and Rye*

---

[2] Obviously, the abortion right declared in *Roe v. Wade*, 410 U.S. 113 (1973), was eliminated by *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), so the separate Relief Motion should be granted. But that abortion right was the right Glick and PPWC both asserted, so that "right . . . survives" for the purpose of establishing a successor in interest.

3

1

2

3

4

**Index of Exhibits (LR IA 10-3(d))**

Exhibit 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Find a Grave Record for Dr. Eugene Glick
findagrave.com/memorial/175577554/eugene-j-glick

Exhibit 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Dr. Eugene Glick Obituary,
legacy.com/us/obituaries/name/eugene-glick-obituary?pid=178313861

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4          **Exhibit 1 – Find a Grave Record for Dr. Eugene Glick**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# Dr Eugene J Glick

**BIRTH** 10 Dec 1929
New Jersey, USA

**DEATH** 9 Jan 2010 (aged 80)
Chico, Butte County, California, USA

**BURIAL** Cremated, Ashes given to family or friend

**MEMORIAL ID** 175577554

Eugene's life came straight out of an American immigrant storybook. A first-generation citizen, Eugene Glick embodied the most beautiful and enduring qualities of this country's myths and dreams: achievement through merit, service to those in need, and a deep commitment to provide love and comfort to his family. He was a remarkable physician, an exemplary father, a dogged political activist, an enthusiastic musician, and an unselfish supporter of our most unusual mother, Ruth. Eugene was one of the kindest, most genuine, good-tempered, and generous men we have ever known. Both Steve and I are deeply honored to be his surviving sons.

He was the only son of Russian Jewish immigrant parents who survived the pogroms and the Russian Revolution before coming to the United States in the early 1920s. Genia and Isaak worked seven days a week, 16 hours a day running a corner pharmacy in Philadelphia in order to boost young Eugene up in the New World. They lived in the back of the store, and Dad said he didn't remember having family dinners because somebody always had to mind the counter.

He took the boost and flew his Jewish mama's coop. At 17, he packed into a Pontiac with his cousin Gene Gluck and made a mad, cross-country dash-and-back several years before Kerouac, narrowly missing an amputation at the jaws of a Yellowstone grizzly bear. He fledged to university at the unfortunately-named Ursinus College, where he quarterbacked his single-wing team in the leather helmet years and

performed in Gilbert and Sullivan spectacles. He summered as a waiter and counselor in the Poconos, playing folk guitar on the 1950 Martin D18 he received for his 21st birthday (which Pete Seeger once grabbed from Pop to tune it). On the day Dad returned from basic training in Ft. Dix, where he served briefly in the Army Reserves, he learned he had been accepted to the hometown medical school, Jefferson, where his eldest son would also train. He married his high school sweetheart, a union to a woman with great beauty and intellect that lasted a miraculous 56 years before Ruth Elaine Moser's death two years ago. (Dad famously reported to his father-in-law that Mom was pregnant with Robert Paul, 15 minutes after conception.)

After medical school, he packed his growing family off to California (with son number two, Daniel Jay, in utero), where he reinvented himself as an obstetrician and gynecologist at a fledgling health maintenance organization named Kaiser-Permanente. Baby son Steven Roy was born in the waning years of the Eisenhower 50s, and the family soon moved into a suburban tract home at the furthest edges of Los Angeles, with a swimming pool in the backyard and three sports-mad sons who became his best friends.

In the momentous year of 1967-1968, he took an almost unheard of job as a trailing spouse when Mom accepted an offer to do linguistics research in Uganda. He soon found a role as a professor at the Makerere University Medical School in Kampala, conducting groundbreaking maternal and child health studies. He also caught a 120-pound Nile Perch that was bigger than he was, which wasn't hard to do if you were his sprouting teenage sons, but was impressive for a fish.

That year transformed the country, transformed our family, and transformed our dad. After returning from Africa, he and mom became deeply involved in Civil Rights politics and anti-Vietnam War politics, hosting SNCC parties at our house and losing me (temporarily) at an anti-war rally in San Francisco. Dad decided to go back to school at UC Berkeley to get his Masters in Public Health, which launched him and our family into another chapter as Northern Californians. In those pre-Roe v. Wade days, Dad would do illegal abortions because he was seeing too many botched abortions in his practice. As he later said in a documentary about early abortions, "I knew what I was doing was against the law, but I also knew the law was wrong." He was right; the

law was changed.

Reproductive rights for women and sex education became our parents' passion, which led naturally to our father leaving Kaiser and opening a women's health clinic in Reno, Nevada. For nearly two decades he worked at the front lines of the abortion wars, driving past picketers, cleaning up stink bombs, and working the political back channels to shore up support for a woman's right to choose. His deep compassion, expert clinical skills, and warm humor helped salvage the lives of thousands of women – and allowed them to have children when and if they chose to.

Even after retiring, he continued to lobby and work tirelessly on behalf of reproductive choice, testifying at colleagues' malpractice trials as an expert witness, and authoring a book on surgical abortion that is still being used to train medical students today.

Information from the Neptune Society of Chico.

## Family Members

**Spouse**

 Ruth Elaine *Moser* Glick
1932–2007

**Children**

 Robert Paul Glick
1953–2001

---

**Created by:** Cindy Cannon

Added: 21 Jan 2017

Find a Grave Memorial ID: **175577554**

*Find a Grave*, database and images
(https://www.findagrave.com/memorial/175577554/eugene-j-glick: accessed 08 August 2023), memorial page for Dr Eugene J Glick (10 Dec 1929–9 Jan 2010), Find a Grave Memorial ID 175577554; Cremated, Ashes given to family or friend; Maintained by Cindy Cannon (contributor 48297897).

1
2
3
4          **Exhibit 2 – Dr. Eugene Glick Obituary**
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Search by Name

Glick  /  Eugene Glick

# Dr. Eugene Glick



Share

Eugene up in the New World. They lived in the back of the store, and Dad said he didnâ€™t remember having family dinners because somebody always had to mind the counter. He took the boost and flew his Jewish mamaâ€™s coop. At 17, he packed into a Pontiac with his cousin Gene Gluck and made a mad, cross-country dash-and-back several years before Kerouac, narrowly missing an amputation at the jaws of a Yellowstone grizzly bear. He fledged to university at the unfortunately-named Ursinus College, where he quarterbacked his single-wing team in the leather helmet years and performed in Gilbert and Sullivan spectacles. He summered as a waiter and counselor in

the Poconos, playing folk guitar on the 1950 Martin D18 he received for his 21st birthday
(which Pete Seeger once grabbed from Pop to tune it). On the day Dad returned from
basic training in Ft. Dix, where he served briefly in the Army Reserves, he learned he had
been accepted to the hometown medical school, Jefferson, where his eldest son would
also train. He married his high school sweetheart, a union to a woman with great beauty
and intellect that lasted a miraculous 56 years before Ruth Elaine Moser's death two
years ago. (Dad famously reported to his father-in-law that Mom was pregnant with
Robert Paul, 15 minutes after conception.) After medical school, he packed his growing
family off to California (with son number two, Daniel Jay, in utero), where he reinvented
himself as an obstetrician and gynecologist at a fledgling health maintenance
organization named Kaiser-Permanente. Baby son Steven Roy was born in the waning
years of the Eisenhower 50s, and the family soon moved into a suburban tract home at
the furthest edges of Los Angeles, with a swimming pool in the backyard and three
sports-mad sons who became his best friends. In the momentous year of 1967-1968, he
took an almost unheard of job as a trailing spouse when Mom accepted an offer to do
linguistics research in Uganda. He soon found a role as a professor at the Makerere
University Medical School in Kampala, conducting groundbreaking maternal and child
health studies. He also caught a 120-pound Nile Perch that was bigger than he was,
which wasn't hard to do if you were his sprouting teenage sons, but was impressive
for a fish. That year transformed the country, transformed our family, and transformed
our dad. After returning from Africa, he and mom became deeply involved in Civil Rights
politics and anti-Vietnam War politics, hosting SNCC parties at our house and losing me
(temporarily) at an anti-war rally in San Francisco. Dad decided to go back to school at
UC Berkeley to get his Masters in Public Health, which launched him and our family into
another chapter as Northern Californians. In those pre-Roe v. Wade days, Dad would do
illegal abortions because he was seeing too many botched abortions in his practice. As
he later said in a documentary about early abortions, "I knew what I was doing was
against the law, but I also knew the law was wrong." He was right; the law was
changed. Reproductive rights for women and sex education became our parents'
passion, which led naturally to our father leaving Kaiser and opening a women's
health clinic in Reno, Nevada. For nearly two decades he worked at the front lines of the
abortion wars, driving past picketers, cleaning up stink bombs, and working the political
back channels to shore up support for a woman's right to choose. His deep
compassion, expert clinical skills, and warm humor helped salvage the lives of
thousands of women – and allowed them to have children when and if they chose to.

Even after retiring, he continued to lobby and work tirelessly on behalf of reproductive choice, testifying at colleagues' malpractice trials as an expert witness, and authoring a book on surgical abortion that is still being used to train medical students today. Dad lost his eldest son and doctor-doppelganger Bob to breast cancer in 2001, a loss that we still grieve and always will. Mom and Dad moved from their stunning Lake Tahoe home to Chico to focus attention on their astounding grandchildren who survive them: Michelle, Brandon, Jason, Britney, Kolya, Casey, Zoe and Travis. After Mom passed away in 2007, Dad had a mini-Renaissance even as his health began to fail: He focused his medical energy on end-of-life issues, becoming a vocal member of Compassion & Choices and consulting to help California write new legislation to allow physicians to help their patients with more humane deaths. He traveled to Israel to visit his beloved cousin Rena, and went to New York to help another beloved cousin, Shelley, celebrate her 80th birthday. He gave generously to help Obama get elected, and believed deeply in the ACLU. Just months before passing on, he attended the National Abortion Federation annual meeting, and was welcomed as a venerated and beloved elder statesman. Our family celebrated Dad's 80th birthday on December 10, along with his grandson Casey who turned 21 on the same day, his daughters-in-law Renda and Melanie, and the rest of the Chico crew. In truth, Casey did help Dad to blow out the candles. In Dad's last year, his body and mind began to deteriorate. The aforementioned years of playing football without a proper helmet, winters of skiing in a marginally-controlled speedball down black diamond slopes, and decades of wrestling with three rambunctious sons had taken a toll on his back and neck vertebrae. He had a bionic hip, a brain that suffered from a few too many momentary blood losses, and a ticker that was host to a stent that couldn't compensate for his closing arteries. On Thursday, December 7, he suffered a stroke at dinner that paralyzed his right side. He asked me to fly out the next day. On December 9, 2010, at halftime of the Eagles-Cowboys wildcard game, Dad asked Steve and me to help him to bed and not just because the Eagles were getting creamed. He hadn't given up, but his body had given out. Steve and I crawled into bed on either side of him, and told him that he was the best father that anybody could have ever hoped for. We told him we loved him deeply, and thanked him for the immeasurable gifts he had given us. Dad hugged us both, and told us he was content with the beautiful life he had led. We are thrilled to have had him as our father. He was a great man, and we will miss him.

∧ **Read Less**

# CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December 2023, I personally served a true and correct copy of the foregoing Suggestion of Death of Plaintiff Eugene Glick, M.D. Under Fed. R. Civ. P. 25(a)(1), by the following means: U.S. Mail and Email (except where noted)

***Plaintiffs' Counsel and Plaintiff Successor in Interest***

Stanley H. Brown Jr.
127 East Liberty Street
Reno, NV 89501
shbjrlaw@gmail.com
Tel: (775) 337-8800
*Counsel for Plaintiffs Glick and Planned Parenthood of Washoe County per docket*

Tanya McDougall-Johnson
Registered Agent for
Planned Parenthood Mar Monte, Inc.
455 West Fifth St., Suite D-2.**,**
Reno, NV 89503
Tel: (775) 321-8711
*Successor in Interest to Plaintiff Planned Parenthood of Washoe County*
(by certified mail only, no email address)

***Defendants' Counsel and Defendant Successors in Interest***

Aaron D. Ford
Nevada Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701
Tel: (775) 684-1100
adford@ag.nv.gov
*Defendant Successor in Office and Counsel for Original District Attorney Defendants per docket*

Arthur E. Mallory
Churchill County District Attorney
165 North Ada Street
Fallon, NV 89406
Tel: (775) 423-6561
amallory@churchillda.org
*Defendant Successor in Office*

Steven Wolfson
Clark County District Attorney
P.O. Box 552212
Las Vegas, NV 89155
Tel: (702) 671-0978
steven.wolfson@clarkcountyda.com
*Defendant Successor in Office*

Mark B. Jackson
Douglas County District Attorney
P.O. Box 218
Minden, NV 89423
Tel: (775) 782-9800
mjackson@douglas.nv.gov
*Defendant Successor in Office*

Tyler Ingram
Elko County District Attorney
540 Court Street, 2nd Floor
Elko, NV 89801
Tel: (775) 738-3101
tingram@elkocountynv.net
*Defendant Successor in Office*

Robert E. Glennen, III
Esmeralda County District Attorney
P.O. Box 339
Goldfield, NV 89013
Tel: (775) 485-6352
escodaoffice@gmail.com
*Defendant Successor in Office*

Theodore Beutel
Eureka County District Attorney
701 South Main Street
Eureka, NV 89316
Tel: (775) 237-5315
tbeutel@eurekacountynv.gov
*Defendant Successor in Office*

Kevin Pasquale
Humboldt County District Attorney
P.O. Box 909
Winnemucca, NV 89445
Tel: (775) 623-6360
kevin.pasquale@humboldtcountynv.gov
*Defendant Successor in Office*

14

1

William E. Schaeffer
Lander County District Attorney
P.O. Box 187
Battle Mountain, NV 89820
Tel: (775) 635-5195
districtattorney@landercountynv.org
*Defendant Successor in Office*

Bryce R. Shields
Pershing County District Attorney
P.O. Box 299
Lovelock, NV 89419-0299
Tel: (775) 273-2613
bshields@pershingcountynv.gov
*Defendant Successor in Office*

Dylan V. Frehner
Lincoln County District Attorney
P.O. Box 60
Pioche, NV 89043
Tel: (775) 962-8073
dfrehner@lincolncountynv.gov
*Defendant Successor in Office*

Anne Langer
Storey County District Attorney
P.O. Box 496
Virginia City, NV 89440
Tel: (775) 847-0964
alanger@storeycounty.org
*Defendant Successor in Office*

Stephen B. Rye
Lyon County District Attorney
31 S. Main Street
Yerington, NV 89447
Tel: (775) 463-6511
srye@lyon-county.org
*Defendant Successor in Office*

Christopher J. Hicks
Washoe County District Attorney
P.O. Box 11130
Reno, NV 89520
Tel: (775) 328-3220
chicks@da.washoecounty.gov
*Defendant Successor in Office*

T. Jaren Stanton
Mineral County District Attorney
P.O. Box 1210
Hawthorne, NV 89415
Tel: (775) 945-3636
jstanton@mineralcountynv.org
*Defendant Successor in Office*

James S. Beecher
White Pine County District Attorney
1786 Great Basin Blvd., Suite 4
Ely, NV 89301
Tel: (775) 293-6565
JBeecher@whitepinecountynv.gov
*Defendant Successor in Office*

Brian T. Kunzi
Nye County District Attorney
1520 E. Basin Ave., Suite 107
Pahrump, NV 89060
Tel: (775) 751-7080
btkunzi@nyecountynv.gov
*Defendant Successor in Office*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

/s/ Emily C. Mimnaugh
_____

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
Email: emimnaugh@pji.org
*Designated Resident Nevada Counsel for Moving Defendants*

15

**Attachment 10**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Motion to Substitute, Dkt. No. 103**

1  BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
   DANIEL BRAVO, ESQ. (SBN 13078)
2  BRAVO SCHRAGER LLP
   6675 South Tenaya Way, Suite 200
3  Las Vegas, Nevada 89113
   Tele.: (702) 996-1724
4  Email: bradley@bravoschrager.com
   Email: daniel@bravoschrager.com
5  *Attorneys for Movant*

6

7                    **UNITED STATES DISTRICT COURT**

8                         **DISTRICT OF NEVADA**

9

10  Eugene Glick, M.D., and Planned          Case No.: 3:85-cv-00331-ART-CSD
    Parenthood of Washoe County, a non-
11  profit Nevada Corporation,

12                                           **MOTION FOR SUBSTITUTION
                  Plaintiff,                 AND TO BE DESIGNATED
13                                           SUCCESSOR PLAINTIFF,
             vs.                             PURSUANT TO FRCP 25(c)**
14
    Aaron Ford, in his capacity as Nevada
15  Attorney General, et al.,

16                Defendants

17         In light of the motion (Dkt. #83) of Defendants Jason D. Woodbury, Carson City

18  District Attorney, and Stephen B. Rye, Lyon County District Attorney, for relief from

19  the Court's Judgment (Dkt #74) and the Clerk's Judgment in a Civil Case (Dkt #75),

20  Planned Parenthood Mar Monte, Inc., makes motion to substitute and be designated

21  successor Plaintiff in the present matter. This motion is based upon the memorandum

22  of points & authorities below, all papers and exhibits on file herein, and any argument

23  this Court sees fit to allow at hearing.

24  / / /

25  / / /

26  / / /

27  / / /

28

## MEMORANDUM OF POINTS & AUTHORITIES

As detailed in the motion for relief filed by Defendants Woodbury and Rye, Plaintiff Eugene Glick is deceased, and Plaintiff Planned Parenthood of Washoe County ("PPWC") is defunct. Pursuant to FRCP 25(c), movant Planned Parenthood Mar Monte, Inc. ("PPMM") seeks substitution and designation as Plaintiff in this matter, and agrees with Woodbury and Rye that PPMM's presence in the litigation is both proper and will facilitate the conduct of this important litigation. PPMM currently provides reproductive health care services across the region once served by PPWC, and there is a clear continuity of interest in this multi-decade litigation, as discussed by Defendants in Dkt. 83, 3-4. PPMM is a venerable organization serving the community with health care services affected by the injunction at issue in this matter, and will prosecute this matter with full recognition of its duties to assume the positions and litigation goals of the original Plaintiffs.

PPMM makes this motion to afford the numerous Defendants opportunity to be heard on the matter of its substitution and designation.

Furthermore, PPMM, as a new party to this litigation after almost forty years, and anticipating the eventual grant of the present motion, asks the Court to set a reasonable briefing schedule reflecting the age and duration of the case and the need for appropriate preparation to prosecute the action from this juncture. PPMM, therefore, requests **60 days** from the date of the order resolving this motion, after any responses and replies are submitted and the Court has occasion to consider the instant request, for the filing of a response to Dkt. 83. Thereafter, PPMM seeks the pleasure of the Court in setting further deadlines for submissions by parties.

/ / /

/ / /

/ / /

/ / /

2

1       PPMM asks the Court to grant the motion, to direct the clerk of the court to

2  make the appropriate amendments to the caption to reflect its entry into the action,

3  and to establish a briefing schedule as requested herein.

4       Dated this 31st day of January, 2024.

5                    **BRAVO SCHRAGER LLP**

6

7            By    */s/ Bradley S. Schrager*

8                  BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
                 DANIEL BRAVO, ESQ. (SBN 13078)

9                   6675 South Tenaya Way, Suite 200
                 Las Vegas, Nevada 89113

10                  Tele.: (702) 996-1724
                 Email: bradley@bravoschrager.com

11                  Email: daniel@bravoschrager.com

12                  *Attorneys for Movant*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### CERTIFICATE OF SERVICE

2          I hereby certify that on this 31st day of January, 2024, a true and correct copy

3 of this **MOTION FOR SUBSTITUTION AND TO BE DESIGNATED**

4 **SUCCESSOR PLAINTIFF, PURSUANT TO FRCP 25(c)** was served via the

5 United States District Court CM/ECF system on all parties or persons requiring

6 notice.

7

8                          By    */s/ Dannielle Fresaquez*

9                                  Dannielle Fresquez, an Employee of
10                                 BRAVO SCHRAGER LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Attachment 11**

**In re: Woodbury, et al. v.  United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Order on Motion to Substitute, Dkt. No. 105**

CLOSED

# United States District Court
## District of Nevada (Reno)
## CIVIL DOCKET FOR CASE #: 3:85-cv-00331-ART-CSD

| | |
|---|---|
| Glick et al v. McKay et al | Date Filed: 06/28/1985 |
| Assigned to: District Judge Anne R. Traum | Date Terminated: 09/06/1985 |
| Referred to: Magistrate Judge Craig S. Denney | Jury Demand: None |
| Case in other court: Ninth Circuit, 85-02335 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Eugene Glick**
*M.D.*

represented by **Stanley Howard Brown , Jr.**
Stanley H. Brown, Jr., Chartered
127 E. Liberty Street
Reno, NV 89501
775-337-8800
Fax: 775-337-8805
Email: shbjrlaw@gmail.com
*TERMINATED: 01/05/2024*
*LEAD ATTORNEY*

**Plaintiff**

**Planned Parenthood of Washoe County**

represented by **Stanley Howard Brown , Jr.**
(See above for address)
*TERMINATED: 01/05/2024*
*LEAD ATTORNEY*

V.

**Movant**

**Planned Parenthood Mar Monte, Inc.**

represented by **Daniel Bravo**
Bravo Schrager, LLP
6675 South Tenaya Way
Suite 200
Las Vegas, NV 89113
702-996-1724
Email: daniel@bravoschrager.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley Scott Schrager**
Bravo Schrager, LLP
6675 South Tenaya Way
Suite 200
Las Vegas, NV 89113
702-996-1724
Email: bradley@bravoschrager.com
*ATTORNEY TO BE NOTICED*

| 12/20/2023 | [100](#) | MOTION to Withdraw as Attorney by Stanley H. Brown, Jr. for Plaintiffs Eugene Glick, Planned Parenthood of Washoe County. Responses due by 1/3/2024. (Brown, Stanley) (Entered: 12/20/2023) |
| --- | --- | --- |
| 12/20/2023 | [101](#) | NOTICE *of Appearance of Zachary Wadle and Douglas V. Ritchie on Behalf of Defendant Mark B. Jackson, Doulgas County District Attorney* by Mark B. Jackson.. (Wadle, Zachary) (Entered: 12/20/2023) |
| 01/05/2024 | [102](#) | ORDER **granting** [100](#) Motion to Withdraw as Attorney Stanley Howard Brown, Jr., withdrawn from the case. Signed by Magistrate Judge Craig S. Denney on 1/5/2024. (Copies have been distributed pursuant to the NEF - HJ) (Entered: 01/05/2024) |
| 01/31/2024 | [103](#) | MOTION to Substitute Party and Extension to Respond to Motion for Relief from Judgment [83](#) by Movant Planned Parenthood Mar Monte, Inc.. Responses due by 2/14/2024. (Schrager, Bradley) (Entered: 01/31/2024) |
| 03/14/2024 | [104](#) | Unopposed MOTION for Scheduling Conference by Defendants Stephen B. Rye, Jason D. Woodbury. Responses due by 3/28/2024. (Maughon, Joseph) (misc) (injunctive) (Entered: 03/14/2024) |
| 03/19/2024 | 105 | MINUTE ORDER IN CHAMBERS of the Honorable District Judge Anne R. Traum on 3/19/2024. Movant Planned Parenthood Mar Monte, Inc. (PPMM) has filed a Motion to Substitute Party (ECF No. [103](#) ). Finding good cause, the Court will grant the motion. The Clerk of Court is directed to substitute PPMM for the Plaintiffs in this action.The Court denies without prejudice Defendants' Motion for a Scheduling Conference (ECF No. [104](#) ). The parties are to meet and confer to coordinate a briefing schedule for the Motion for Relief from Judgment (ECF No. [83](#) ). The Court will entertain a renewed unopposed motion for a scheduling conference only if the parties have completed a meet and confer conference but are unable to agree on a briefing schedule. Furthermore, the Court declines to schedule a hearing at this time regarding the motion for relief (ECF No. [83](#) ) and will reconsider the request after briefing on the motion is complete. **(no image attached)** (Copies have been distributed pursuant to the NEF - CBW) (Entered: 03/19/2024) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 04/17/2024 07:03:27 | | |
| **PACER Login:** | jmaughon | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:85-cv-00331-ART-CSD |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**Attachment 12**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**PPMM Opp'n, Dkt. No. 115**

1  BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
   DANIEL BRAVO, ESQ. (SBN 13078)
2  BRAVO SCHRAGER LLP
   6675 South Tenaya Way, Suite 200
3  Las Vegas, Nevada 89113
   Tele.: (702) 996-1724
4  Email: bradley@bravoschrager.com
   Email: daniel@bravoschrager.com
5
   VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
6  PLANNED PARENTHOOD FEDERATION OF AMERICA
   123 William Street, Floor 9
7  New York, NY 10038
   Email: valentina.defex@ppfa.org
8
   HANNAH SWANSON, ESQ. *(admitted pro hac vice)*
9  PLANNED PARENTHOOD FEDERATION OF AMERICA
   1110 Vermont Ave NW, Suite 300
10 Washington, DC 20005
   Email: hannah.swanson@ppfa.org
11
   *Attorneys for Plaintiff*
12

13              **UNITED STATES DISTRICT COURT**

14                   **DISTRICT OF NEVADA**

15

16 Planned Parenthood Mar Monte, Inc.,        Case No.: 3:85-cv-00331-ART-CSD

17              Plaintiff,

18       v.                                    **PLAINTIFF'S OPPOSITION TO**
                                               **RULE 60(B) MOTION OF**
19 Aaron Ford, in his capacity as Nevada       **DEFENDANTS JASON D.**
   Attorney General, et al.,                   **WOODBURY, CARSON CITY**
20                                             **DISTRICT ATTORNEY, AND**
              Defendants                        **STEPHEN B. RYE, LYON COUNTY**
21                                             **DISTRICT ATTORNEY**

22

23

24

25 / / /

26 / / /

27 / / /

28

BRAVO SCHRAGER LLP

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .......................................................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ............................................ 1

    I.     1985 Lawsuit Challenging Parental Notification Requirement and Judicial Bypass Procedures ........................................................................................................ 1

    II.    Post-Judgment Events ................................................................................ 3

STANDARD OF REVIEW ......................................................................................... 4

ARGUMENT ............................................................................................................... 5

    I.     This Court Can Construe Movants' Arguments Under Other Rule 60(b) Provisions. ........................................................................................................ 6

    II.    All of Movants' Arguments Are Procedurally Barred. ............................ 7

          A.    Rule 60's text, structure, and underlying policy compel a strict reading of the rule's temporal requirement ..................................... 7

          B.    Movants' failure to address the "reasonable time" factor, on its own, compels denial of this motion. ....................................... 9

          C.    Movants fail to carry their burden in demonstrating that their motion was filed within reasonable time. .................................. 10

          D.    Movants' "mistake of law" arguments are indisputably time-barred. ............ 12

    III.   As A Matter Of Law, Movants Fail To Satisfy Their Burden Under Rule 60(b)(5). ........................................................................................................ 12

          A.    Movants improperly use *Lambert* to relitigate the adequacy of the judicial bypass process. ....................................................... 13

          B.    Movants fail to demonstrate that the underlying judgment has been reversed. ........................................................................... 14

          C.    Movants fail to demonstrate that prospective enforcement of the injunction is inequitable. ....................................................... 16

    IV.   Movants Have No Grounds To Seek FRCP 60(b)(6) Relief. ................... 22

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Access Indep. Health Servs., Inc. v. Burdick,*
　No. 22-3595, 2023 WL 3986375 (8th Cir. May 18, 2023) ...................................... 15

*Ackermann v. United States,*
　340 U.S. 193 (1950) ...................................................................................... 1, 11, 13

*Agostini v. Felton,*
　521 U.S. 203 (1997) .............................................................................................. 17, 22

*Am. Unites for Kids v. Rousseau,*
　985 F.3d 1075 (9th Cir. 2021) ........................................................................... passim

*Ashford v. Steuart,*
　657 F.2d 1053 (9th Cir. 1981) ................................................................................. 10

*Azzolini v. Marriott Int'l Inc.,*
　417 F.Supp.2d 243 (S.D.N.Y. 2005) ........................................................................ 16

*Batman v. Perez,*
　No. 20-CV-2298, 2022 WL 17330466 (S.D. Cal. Nov. 29, 2022) ...................... 9, 11

*Bellevue Manor Assocs. v. United States,*
　165 F. 3d 1249 (9th Cir. 1999) ................................................................................ 16

*Bellotti v. Baird,*
　443 U.S. 622 (1979) ................................................................................................. 12

*BNSF Ry. Co. v. Tri-City & Olympia R.R. Co.,*
　No. 2:09-cv-5062-EFS, 2022 WL 2015288 (E.D. Wash. June 6, 2022) ................ 18

*Bynoe v. Baca,*
　966 F.3d 972 (9th Cir. 2020) ................................................................................... 14

*California by and through Becerra v. EPA,*
　978 F.3d 708 (9th Cir. 2020) ................................................................................... 17

*Casey v. Albertson's, Inc.,*
　362 F.3d 1254 (9th Cir. 2004) ................................................................................... 5

*Def. of Wildlife v. Martin,*
　No. 2:05-cv-00248-RHW, 2021 WL 5890661 (E.D. Wash. Dec. 13, 2021) ........... 18

*Dobbs v. Jackson Women's Health Organization,*
　597 U.S. 215 (2022) ................................................................................................... 4

*Eisenstadt v. Baird,*
　405 U.S. 438 (1972) ................................................................................................. 19

*Fed. Trade Comm'n v. AH Media Grp.,*
    339 F.R.D. 612 (N.D. Cal. 2021) ............................................................................ 16

*Fed. Trade Comm'n v. Cottelli,*
    854 F. App'x 837 (9th Cir. 2021) ............................................................................ 9

*Fed. Trade Comm'n v. EMP Media,*
    334 F.R.D. 611 (D. Nev. 2020) ............................................................................... 9

*Franklin v. Tate,*
    No. 1:19-cv-01170-AWI-SAB, 2022 WL 17406094 (E.D. Cal. Dec. 2, 2022) ................. 9, 10

*Fyk v. Facebook,*
    No. 21-16997, 2022 WL 10964766 (9th Cir. Oct. 19, 2022) ............................................ 9, 10

*Glick v. McKay,*
    616 F.Supp. 322 (D. Nev. 1985) ............................................................................... 2, 7

*Glick v. McKay,*
    937 F.2d 434 (9th Cir. 1991) ............................................................................... 3, 6, 14

*Guam Society of Obstetricians & Gynecologists v. Guerrero,*
    No. 90-00013, 2023 WL 2631836 (D. Guam Mar. 24, 2023) .................................... 18, 19, 20

*Hamer v. Neighborhood Hous. Servs. of Chicago,*
    583 U.S. 17 (2017) ............................................................................................... 9

*Henson v. Fidelity National Financial,*
    943 F.3d 434 (9th Cir. 2019) ............................................................................... 7, 22

*Hodgson v. Minnesota,*
    497 U.S. 417 (1990) ............................................................................................... 3

*Horne v. Flores,*
    557 U.S. 433 (2009) ............................................................................................... 14

*In re Cook Med.,*
    27 F.4th 539 (7th Cir. 2022) ............................................................................... 8

*In re G.A.D.,*
    340 F.3d 331, 334 (6th Cir. 2003) ............................................................................... 8

*In re Rumsey Land,*
    944 F.3d 1259 (10th Cir. 2019) ............................................................................... 8

*Kemp v. United States,*
    596 U.S. 528 (2022) ............................................................................... passim

*Kniespeck v. Unum Life Ins. Co. of Am.,*
    No. CIV. 2:01-0878 WBS EFB, 2009 WL 3320289 (E.D. Cal. Oct. 14, 2009) ............... 16

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. Wisconsin,*
    769 F.3d 543 (7th Cir. 2014) ............................................................................... 10

*Lambert v. Wicklund*,
   520 U.S. 292 (1997) ............................................................................................ 3, 14

*Levy v. United States*,
   No. 22-CV-05009-JSC, 2023 WL 5599608 (N.D. Cal. Aug. 28, 2023) .................. 11

*Liljeberg v. Health Services Acquisition Corp.*,
   486 U.S. 847 (1988) .................................................................................................. 22

*Lubben v. Selective Serv. Sys. Loc. Bd. No. 27*,
   453 F.2d 645 (1st Cir. 1972) ..................................................................................... 15

*Maraziti v. Thorpe*,
   52 F.3d 252 (9th Cir. 1995) ....................................................................................... 13

*Martinez v. Shinn*,
   33 F.4th 1254 (9th Cir. 2022) ...................................................................................... 5

*Matter of Diodato*,
   No. 2:19-BK-09775-EPB, 2023 WL 6119635 (D. Ariz. Sept. 19, 2023) ................... 6

*McIntosh v. United States*,
   601 U.S. 330 (2024) ............................................................................................... 5, 8

*McLawhorn v. John W. Daniel & Co. Inc.*,
   924 F.2d 535 (4th Cir. 1991) ..................................................................................... 11

*Mendez v. Republic Bank*,
   725 F.3d 651 (7th Cir. 2013) ....................................................................................... 8

*Miss. Univ. for Women v. Hogan*,
   458 U.S. 718 (1982) .................................................................................................. 19

*MKB Mgmt. Corp. v. Wrigley*,
   343 F.R.D. 68 (D.N.D. 2022) .................................................................................... 15

*Morton v. Twitter, Inc.*,
   No. 23-55732, 2024 WL 2843031 (9th Cir. June 5, 2024) ..................................... 9, 10

*National Organization for Women v. Operation Rescue*,
   47 F.3d 667 (4th Cir. 1995) .................................................................................. 11, 12

*Nutraceutical Corp. v. Lambert*,
   586 U.S. 188 (2019) .................................................................................................... 8

*Ohio v. Akron Center for Reproductive Health*,
   497 U.S. 502 (1990) ........................................................................................... 3, 6, 12

*Oregon Advoc. Ctr. v. Allen*,
   No. 20-35540, 2021 WL 3615536 (9th Cir. Aug. 16, 2021) ............................... 18, 21

*Perry v. San Diego Cnty.*,
   670 F. App'x 599 (9th Cir. 2016) ................................................................................ 9

*Phelps v. Alameida,*
   569 F.3d 1120 (9th Cir. 2009) ................................................................ 5, 15, 22

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,*
   507 U.S. 380 (1993) ........................................................................................ 22

*Planned Parenthood Assn. of Kansas City, Mo. v. Ashcroft,*
   462 U.S. 476 (1983) ........................................................................................ 12

*Roe v. Wade,*
   410 U.S. 113 (1973) .......................................................................................... 4

*Rufo v. Inmates of Suffolk Cnty. Jail,*
   502 U.S. 367 (1992) .............................................................................. 4, 16, 21

*Schrubb v. Blankenship,*
   No. 2:19-CV-06557-MWF, 2022 WL 3971054 (C.D. Cal. July 26, 2022) ........................ 6, 15

*State v. Hodge,*
   941 N.E.2d 768 (Ohio 2010) ............................................................................ 20

*Stokes v. Williams,*
   475 F.3d 732 (6th Cir. 2007) ............................................................................ 23

*Tamayo v. Stephens,*
   740 F.3d 986 (5th Cir. 2014) ............................................................................ 11

*Thornburgh v. American College of Obstetricians & Gynecologists,*
   476 U.S. 747 (1986) .......................................................................................... 3

*Title v. United States,*
   263 F.2d 28 (9th Cir. 1959) .............................................................................. 13

*Tomlin v. McDaniel,*
   865 F.2d 209 (9th Cir. 1989) ...................................................................... 15, 16

*United States v. Asarco Inc.,*
   430 F.3d 972 (9th Cir. 2005) ............................................................................ 17

*United States v. Hughes,*
   No. 18-CV-05931-JCS, 2024 WL 1056002 (N.D. Cal. Mar. 11, 2024) ....................... 11

*United States v. Turner,*
   No. 3:13-CV-1827-DMS-NLS, 2022 WL 1570741 (S.D. Cal. May 17, 2022) ................. 18

*United States v. Williams,*
   56 F.4th 366 (4th Cir. 2023) ........................................................................... 5, 8

*United States. v. Salerno,*
   481 U.S. 739 (1987) ..................................................................................... 6, 12

*Warren v. Garvin,*
   219 F.3d 111 (2d Cir. 2000) ............................................................................... 8

*Wolff v. California*,
    236 F. Supp. 3d 1154 (C.D. Cal. 2017) ................................................. 8

*Zamora v. Wells Fargo Bank*,
    No. 13-CV-00134-MEJ, 2014 WL 2093763 (N.D. Cal. May 19, 2014) ................. 11

*Zbaraz v. Hartigan*,
    484 U.S. 171 (1987) .............................................................. 3

## Statutes

NRS 442.255 ............................................................................. 1

NRS 442.2555 ............................................................................ 1

## Other Authorities

William Michael Treanor & Gene B. Sperling,
    *Prospective Overruling and the Revival of 'Unconstitutional' Statutes*,
    93 Colum. L. Rev. 1902 (1993) ......................................................... 20

## Rules

Fed. R. Civ. P. Rule 6 ................................................................ 8

Fed. R. Civ. P. Rule 60 ...................................................... 1, 4, 5, 8

## Treatises

11 Charles Alan Wright, Arthur R. Miller, & M. Kane,
    *Federal Practice and Procedure* (3d ed. 2022) ................................... 8, 15

**INTRODUCTION**

"There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950). In 1985, this Court enjoined portions of S.B. 510 (1985), Nevada's parental notification requirement for minors seeking abortions, before it could go into effect. After six years of litigation, including a Ninth Circuit appeal of a preliminary injunction, this Court in 1991 entered final judgment granting declaratory and permanent injunctive relief. No defendant contested that final judgment.

Thirty-two years later, the Carson City District Attorney and Lyon County District Attorney seek to vacate this Court's final judgment in its entirety. Movants attempt to shoehorn a myriad of arguments into a Fed. R. Civ. P. Rule 60(b)(5) motion, which allows a party to seek relief from a final order when "applying [the judgment] prospectively is no longer equitable." Fatal to their cause, however, is the glacial pace at which they sought relief. But even if the significant untimeliness of each Movants' argument is overlooked, they cannot carry their burden and establish on the merits that this Court should exercise its discretion to grant their request. Ultimately, Movants fall far short of demonstrating why this Court should disturb the finality of its decades-old final judgment and allow a law enacted and then enjoined in 1985 to go into effect for the first time in 2024. For a multitude of reasons, the motion should be denied.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

**I.    1985 Lawsuit Challenging Parental Notification Requirement and Judicial Bypass Procedures**

In 1985, the Nevada legislature adopted S.B. 510,[1] which prevents a provider from performing an abortion for a person under the age of 18[2] without either notifying "a custodial

---

[1] At the time of passage, the challenged sections were codified in NRS 442.255(1) ("the parental notification provision"), NRS 442.255(2), (3), and (4) (collectively "the judicial bypass provisions"), and NRS 442.2555 (the "bypass appeal provisions").

[2] NRS 442.255 exempts from the parental notification or judicial bypass requirement young people under 18 that are (1) married, (2) emancipated, or (3) if the abortion is necessary to preserve the "patient's life or health."

BRAVO SCHRAGER LLP

parent or guardian" ("parental notification") or receiving court authorization excusing compliance with this requirement ("judicial bypass"). Dr. Eugene Glick and Planned Parenthood of Washoe County filed suit in the District of Nevada against state and local officials responsible for enforcing these statutes. Plaintiffs argued that the challenged sections violated their rights and those of their patients as secured by the U.S. Constitution's First, Fourth, Fifth, Ninth, and Fourteenth Amendments. Compl., ECF No. 1.[3] Namely, the challenged sections deprived Plaintiffs and their patients of various liberties without due process in violation of the Fourteenth Amendment; violated the Fourteenth Amendment's equal protection clause by impermissibly discriminating against pregnant unmarried or unemancipated young people; and violated the First Amendment's free speech clause. *Id*. at 8–10.

On June 28, 1985, the district court entered a temporary restraining order barring enforcement of the statutes. On July 17, 1985, the district court entered a preliminary injunction barring enforcement of the parental notification and judicial bypass provisions, and associated criminal penalties, while declining to enjoin in NRS 442.253(1)(c) requiring certain mandatory disclosures before an abortion. *See Glick v. McKay*, 616 F.Supp. 322 (D. Nev. 1985). This Court found (1) that the judicial bypass process suffered from numerous constitutional infirmities including failure to assure that the patient's petition would be resolved with sufficient promptness, and to provide for adequate confidentiality; (2) that the failure to promulgate rules implementing the directives constituted a "fundamental defect" in the statute; (3) that the criminal penalties and parental notification provisions must be enjoined until the bypass process's constitutional infirmities were cured; and (4) that Plaintiffs had standing to assert their patients' rights. *Id.* at 327-28.

The State of Nevada (the "State") appealed the district court's preliminary injunction decision. The Ninth Circuit withheld judgment pending numerous U.S. Supreme Court cases, and ordered the parties to brief the impact on the appeal, if any, of *Thornburgh v. American College of*

---

[3] If it would aid the Court's resolution of this motion, Plaintiff could file as an addendum copies of the old case documents referenced in this brief.

1    *Obstetricians & Gynecologists*, 476 U.S. 747 (1986); *Zbaraz v. Hartigan*, 484 U.S. 171 (1987);

2    *Hodgson v. Minnesota*, 497 U.S. 417 (1990); and *Ohio v. Akron Center for Reproductive Health*,

3    497 U.S. 502 (1990) ("*Akron II*"). On June 21, 1991, the Ninth Circuit affirmed the district court's

4    preliminary injunction. *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991). It held that the judicial

5    bypass process did not survive constitutional scrutiny because it lacked a procedure to ensure that

6    a court would rule upon a bypass petition with sufficient expediency, *id*. at 441; furthermore, the

7    statute contained an "impermissibly constricted" "best interest" standard. *Id*. at 442.

8        On October 10, 1991, upon the Plaintiffs' unopposed motion for summary judgment, Mot

9    for Summ. J., ECF No. 68; Resp to Mot for Summ. J., ECF No. 71, this Court entered declaratory

10    and permanent injunctive relief barring enforcement of the enjoined statutes. Because no defendant

11    appealed this decision, the judgment in this case has been final for 32 years.

12       **II.**      **Post-Judgment Events**

13        Since its passage in 1985, S.B. 510's parental notification scheme has never gone into

14    effect. Nevadans under the age of 18 have never been required to obtain a judge's permission to

15    have an abortion without parental notification. Since the parental notification scheme was declared

16    unconstitutional and permanently enjoined, Nevada courts have not adopted administrative rules

17    or procedures either to facilitate judicial bypass proceedings or to cure the statutes' deficiencies.[4]

18        In 1997, the U.S. Supreme Court upheld as constitutional a judicial bypass provision

19    requiring a showing that parental notification was not in the minor's best interest. *Lambert v.*

20    *Wicklund*, 520 U.S. 292 (1997). In doing so, it rejected one aspect of *Glick*'s analysis—

21    specifically, that Nevada's judicial bypass procedure violated the Constitution because it required

22    a showing that parental notification was not in the minor's best interest, and that this showing was

23    impermissibly narrow. *Lambert*, 520 U.S. at 298. *Lambert*, however, did not repudiate *Glick*'s

24

25

---

26      [4] On April 30, 1991—before the Ninth Circuit's decision affirming the preliminary injunction and before the final judgment was entered in this case—the Nevada Supreme Court issued an order

27    which ordered appeals taken pursuant to NRS 442.2555(5) to be "confidential and submitted to the court for expedited review." *Glick*, 937 F.2d at 438 (9th Cir. 1991).

28

holding that Nevada's judicial bypass procedure was unconstitutional because it did not sufficiently ensure expediency in issuing a decision on a petition.

On June 24, 2022, the U.S. Supreme Court issued *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), overruling *Roe v. Wade*, 410 U.S. 113 (1973). On December 1, 2023, the Carson City District Attorney and Lyon County District Attorney (hereinafter Movants)[5] filed a Motion under Rule 60(b)(5) seeking to vacate this Court's 32-year-old final judgment. Mot. of Defs. Jason D. Woodbury, Carson City Dist. Att'y, and Stephen B. Rye, Lyon Cnty. Dist. Att'y, for Relief from J. Under Fed. R. Civ. P. 60(b)(5) ("Rule 60(b) Mot."), ECF No. 83. On January 31, 2024, this Court granted Planned Parenthood Mar Monte's request to be designated as substitute-Plaintiff. Mot. for Substitution and to be Designated Successor Pl., ECF No. 103; Min. Ord. in Chambers ECF No. 105.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) governs reconsideration of a district court's "final judgment, order, or proceeding" under six enumerated grounds. Fed. R. Civ. P. 60(b). The party making a Rule 60(b) motion bears the burden of proof in establishing that the motion satisfies the rules' requirements. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect." Subsections (b)(2) through (b)(5) supply other grounds for reopening a judgment. Relevant here, Rule 60(b)(5) allows a party to seek modification of judgment when (i) the judgment has been satisfied, released, or discharged; (ii) it is based on an earlier judgment that has been reversed or vacated; or (iii) applying it prospectively is no longer equitable. Fed. R. Civ. P. 60(b)(5). Finally, Rule 60(b)(6) provides a catch-all for "any other reason that justifies relief" and is available only when relief under subsections (1) through (5) is inapplicable. *Kemp v. United States*, 596 U.S. 528, 533 (2022).

---

[5] To date, no other Defendants have joined Movants' request seeking relief under Rule 60(b).

1      Rule 60(c) dictates that all Rule 60(b) motions must be filed within a reasonable time, and

2  in certain circumstances, no later than one year after the entry of judgment. Fed. R. Civ. P. 60(c)(1);

3  *Kemp*, 596 U.S. at 533. This timeliness requirement is a mandatory claim-processing rule, not

4  subject to equitable tolling. *See United States v. Williams*, 56 F.4th 366, 373 (4th Cir. 2023), *cert.*

5  *denied*, 143 S. Ct. 2682 (2023); *McIntosh v. United States*, 601 U.S. 330, 337 (2024) (describing

6  mandatory claim-processing rules).

7      Motions under Rule 60(b) are "addressed to the sound discretion of the district court."

8  *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004). "A court's power to vacate

9  judgments under Rule 60(b) in order 'to accomplish justice' is balanced against 'the strong public

10  interest in the timeliness and finality of judgments.'" *Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th

11  Cir. 2022), *cert. denied*, 143 S. Ct. 584 (2023) (citing *Phelps v. Alameida*, 569 F.3d 1120, 1135

12  (9th Cir. 2009)). Accordingly, a "district court's authority to modify an injunction is more limited

13  than its authority to formulate an injunction in the first instance because of the additional interest

14  in the finality of judgments. A balance must thus be struck between the policies of res judicata and

15  the right of the court to apply modified measures to changed circumstances." *Am. Unites for Kids*

16  *v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (citation omitted).

17                                      **ARGUMENT**

18      Movants cannot satisfy their burden to demonstrate that this Court should grant

19  discretionary relief under Rule 60(b). All of Movants' arguments are significantly untimely and

20  fail to establish that relief is warranted. Though styled as a Rule 60(b)(5) motion seeking relief on

21  the basis that "applying the injunction prospectively is inequitable," most of Movants' arguments

22  should be evaluated under different Rule 60(b) subsections. Notwithstanding under which

23  subsection the Court evaluates their arguments, however, Movants fail to address, much less

24  satisfy, Rule 60's "reasonable time" requirement. This alone is fatal to Movants' request.

25  Separately, on the merits, Movants fail to satisfy their burden under the applicable Rule 60(b)

26  subsections. Furthermore, Movants fail to acknowledge other important considerations that should

27  inform this Court's exercise of discretion: namely, the impracticability of enforcing this law and

28

the interplay of S.B. 510 and existing Nevada law, including constitutional amendments not in effect in 1985.

**I.     This Court Can Construe Movants' Arguments Under Other Rule 60(b) Provisions.**

Though captioned as a Rule 60(b)(5) motion seeking relief on the grounds that prospective enforcement of the judgment is inequitable ("equity clause"), the style, text, and substance of the motion compels the evaluation of the bulk of Movants' arguments under other Rule 60(b) subsections. Courts have the authority to determine independently whether Movants seek reopening on grounds other than those appearing on the face of the Rule 60(b) motion. *See Kemp*, 596 U.S. at 532. "When determining which provision of Rule 60(b) a reconsideration motion implicates, a reviewing court must undertake a fact-intensive analysis that includes evaluating the language of the motion and the parties' and judge's actions and considering, but not treating as dispositive, the subdivision of Rule 60(b) the movant invoked." *See Matter of Diodato*, No. 2:19-BK-09775-EPB, 2023 WL 6119635, at *8 (D. Ariz. Sept. 19, 2023) (citing *Kemp*, 596 U.S. at 532); *see e.g., Schrubb v. Blankenship*, No. 2:19-CV-06557-MWF, 2022 WL 3971054, at *3 (C.D. Cal. July 26, 2022), *appeal dismissed*, No. 22-55809, 2023 WL 2369387 (9th Cir. Jan. 25, 2023) (evaluating Movant's Rule 60(b)(5) and (b)(6) arguments under Rule 60(b)(1)). Accordingly, this Court's analysis should not be limited by Movants' own Rule 60(b)(5) framing. Specifically, several of Movants' arguments should be construed under the following three subsections: (b)(1)'s "mistake of law" grounds, (b)(5)'s "earlier judgment that has been reversed or vacated" clause, and (b)(6)'s "residual clause."

First, Movants allege that in resolving the 1985 preliminary injunction appeal in this case, *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991), the Ninth Circuit failed to properly apply U.S. Supreme Court precedent in *United States. v. Salerno*, 481 U.S. 739 (1987) and *Akron II*, 497 U.S. 502 (1990). *See, e.g.*, Rule 60(b) Mot. 13, 16-17, ECF No. 83. Movants also argue that *Glick* was abrogated by the subsequent U.S. Supreme Court decision in *Lambert v. Wicklund* because *Lambert*'s discussion of *Glick* confirms that the Ninth Circuit erred in affirming this Court's 1985

1    preliminary injunction by improperly applying *Akron II* and *Bellotti*, *id.* at 15-22. At bottom, these

2    arguments allege that the challenged judgment rests on a mistake of law, contentions that must be

3    raised exclusively under Rule 60(b)(1); accordingly, this Court should evaluate these arguments

4    under this subsection. *See Kemp*, 596 U.S. at 534 (determining that Rule 60(b)(1) governs "all

5    mistakes of law made by a judge").

6         Second, Movants argue that *Dobbs*'s overruling of *Roe* justifies relief from judgment

7    because it removes *Glick*'s federal-right foundation and that *Dobbs* abrogated cases recognizing

8    third-party standing in abortion cases[6] such that Plaintiff lacks standing. Rule 60(b) Mot. 2, 9, 22,

9    ECF No. 83. Because these arguments are predicated upon the notion that the original judgment's

10   underlying cases have been overruled, these arguments must be treated as seeking relief under

11   (b)(5)'s "underlying judgment has been vacated" subsection.

12        Lastly, Movants' arguments that a change in case law warrants relief may be considered

13   under (b)(6)'s residual clause. The Ninth Circuit has recognized that in certain circumstances, a

14   change in law may provide sufficient basis for granting relief under Rule 60(b)(6), *Henson v.*

15   *Fidelity National Financial*, 943 F.3d 434, 444 (9th Cir. 2019), and thus Movants' arguments

16   related to change in case law can be assessed under Rule 60(b)(6).

17        **II.    All of Movants' Arguments Are Procedurally Barred.**

18        As a threshold matter, all of Movants' arguments are procedurally barred. Movants entirely

19   fail to address, much less demonstrate, that relief was sought under Rule 60(b) in a timely manner.

20   Whether this Court assesses the motion under Rule 60(b)(5) or other subsections, Movants'

21   arguments are all time-barred. On this basis alone, their motion should be denied.

22        **A.    Rule 60's text, structure, and underlying policy compel a strict**
23        **reading of the rule's temporal requirement.**

24        Rule 60(c) expressly states that all motions filed under Rule 60(b) must be filed within a

25   reasonable time, and motions under subsections (b)(1), (b)(2), and (b)(3) must be filed no later

---

26        [6] Movants raise this third-party standing argument in a footnote. Without conceding that this
27   argument was properly preserved, this argument is also untimely and improperly aims to relitigate
     an issue that this Court already dispensed with. *Glick*, 616 F. Supp. at 324.
28

7

than one year after the entry of final judgment. Fed. R. Civ. P. Rule 60(c)(1); *Kemp*, 596 U.S. at 533. This requirement serves to deter abusive litigation practices by "denying motions that should have been raised sooner." *Kemp*, 596 U.S. at 538 (citing *Mendez v. Republic Bank*, 725 F.3d 651, 660 (7th Cir. 2013)) (cleaned up). Moreover, as one circuit court noted, subsection (6)'s "residual clause," though intended to allow motions where subsections (1) to (5) are inapplicable, is also subject to 60(c)(1)'s "reasonable time" limit and does not serve as a safe harbor for parties that have failed to comply with another subsection's time limits. *See Williams*, 56 F.4th at 373.

Because Rule 60(c)'s temporal requirement is a mandatory claim-processing rule, once a violation is raised, the court cannot excuse non-compliance. "Simply because Rule 60(b)'s time limit is not jurisdictional does not mean that a court may dispense with it, even for good cause." *Williams*, 56 F.4th at 371; *see also Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (Rule 60(b)'s time limit is "absolute"); *In re G.A.D.*, 340 F.3d 331, 334 (6th Cir. 2003) ("Regardless of circumstances, no court can consider a motion brought under Rule 60(b)(1), (2), or (3) a year after judgment."); *In re Cook Med.*, 27 F.4th 539, 543 (7th Cir. 2022) (refusing to extend Rule 60(b)'s time limit for equitable reasons "[n]o matter the potential merits of the plaintiffs' [...] arguments," because it was a mandatory claim-processing rule); *In re Rumsey Land*, 944 F.3d 1259, 1277 (10th Cir. 2019) (Rule 60(b)'s time limit is absolute). Accordingly, Rule 60(b) motions are not subject to equitable tolling. *See* 11 Charles Alan Wright, Arthur R. Miller, & M. Kane, *Federal Practice and Procedure* § 2866 (3d ed. 2022) ("Nor does the court have any power to enlarge the time limits of the rule."); *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 19–93 (2019) ("Where the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving."); Fed. R. Civ. P. Rule 6(b)(2) ("A court must not extend the time to act under . . . 60(b)"). Thus, this Court cannot grant a Rule 60(b) motion that was not filed within the rule's prescribed time. *Wolff v. California*, 236 F. Supp. 3d 1154, 1164 (C.D. Cal. 2017); *McIntosh*, 601 U.S. at 337 ("If the affected party alerts the court to the [mandatory claim-processing rule] deadline and invokes its protection, the relevant action cannot be taken after the deadline has

1  passed."); *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017) ("If properly

2  invoked, mandatory claim-processing rules must be enforced [.]").

3      Whether a motion was filed within reasonable time is a fact-based inquiry judged on a case-

4  by-case basis. *Fed. Trade Comm'n v. EMP Media*, 334 F.R.D. 611, 613 (D. Nev. 2020), *aff'd sub*

5  *nom. Fed. Trade Comm'n v. Cottelli*, 854 F. App'x 837 (9th Cir. 2021). Generally, timeliness is

6  measured from the date of the challenged final judgment, order, or proceeding.

7
    **B.  Movants' failure to address the "reasonable time" factor, on its own,
8         compels denial of this motion.**

9      Here, Movants failed to provide any explanation as to the timing of their motion—either

10  for arguments related to events that transpired in the 1990s or for the delay between the issuance

11  of *Dobbs* and the eventual filing of their Rule 60(b) motion.[7] This alone is sufficient grounds to

12  deny relief under Rule 60(b).

13      Significantly, multiple courts in this circuit have found that the failure to explain a delay

14  in filing can be weighed against the grant of a Rule 60(b) motion. *See, e.g.*, *Morton v. Twitter, Inc.*,

15  No. 23-55732, 2024 WL 2843031, at *1 (9th Cir. June 5, 2024); *Franklin v. Tate*, No. 1:19-cv-

16  01170-AWI-SAB, 2022 WL 17406094, at *3 (E.D. Cal. Dec. 2, 2022), *appeal dismissed*, No. 23-

17  15163, 2023 WL 5012117 (9th Cir. May 31, 2023); *Fyk v. Facebook*, No. 21-16997, 2022 WL

18  10964766, at *1 (9th Cir. Oct. 19, 2022), *cert. denied*, 143 S. Ct. 1752 (2023); *Perry v. San Diego*

19  *Cnty.*, 670 F. App'x 599, 600 (9th Cir. 2016); *Batman v. Perez*, No. 20-CV-2298, 2022 WL

20  17330466, at *5 (S.D. Cal. Nov. 29, 2022) ("*Without any reasonable explanation*, the Court is led

21  to the conclusion that Plaintiffs' seven-month delay in moving for relief from judgment was

22  unreasonable") (emphasis added) (collecting cases).

23      Separately, Movants' reliance upon some successful post-*Dobbs* Rule 60(b) motions does

24  not overcome this flaw. None of the cases cited by Movants discuss what constitutes reasonable

25
26      [7] Should Movants proffer this explanation for the first time in their reply, this argument should
be treated as waived. Generally, substantive arguments cannot be raised for the first time in a reply
27  brief as it deprives an opposing party of the opportunity to respond. *Doe v. City of San Diego*, 198
F. Supp. 3d 1153, 1164 (S.D. Cal. 2016).
28

time to file a Rule 60(b) motion post-*Dobbs*. And even if those cases did analyze what constitutes "reasonable time" for filing a Rule 60(b) motion, they are factually distinguishable from this case, because in those cases the Rule 60(b) motions were filed within *four months* of the Supreme Court's decision in *Dobbs*.

### C. Movants fail to carry their burden in demonstrating that their motion was filed within reasonable time.

In evaluating whether the delay in filing a Rule 60(b) motion is reasonable, courts will look at: (1) the party's ability to learn earlier of the grounds relied upon, (2) the reason for the delay, (3) the parties' interests in the finality of the judgment, and (4) any prejudice caused to parties by the delay. *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981); *Morton*, 2024 WL 2843031, at *1 (applying *Ashford* to affirm denial of Rule 60(b) as untimely); *see also Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. Wisconsin*, 769 F.3d 543, 548 (7th Cir. 2014) ("[W]hat is reasonable depends on the circumstances. If reasonable reliance on a judgment is likely to grow over time, a motion to modify it should be made sooner rather than later."). No matter when the Court's "reasonable time" evaluation commences, Movants' arguments plainly fail to satisfy this requirement.

Movants filed their Rule 60(b) motion 32 years after the final judgment in this case, which they chose not to appeal, and 26 years after *Lambert v. Wicklund*. Although Movants incorrectly suggest that *Lambert* abrogated *Glick* in its entirety, even if that were true, it is patently unreasonable for Movants to have waited 26 years to argue that the final judgment be vacated as a result. Movants also waited 17 months after the issuance of *Dobbs* to file their motion. In evaluating the timeliness of a Rule 60(b) filing, numerous courts within this Circuit have found delays *shorter* than 17 months to be unreasonable when a party failed (1) to proffer any explanation for the delay in filing or (2) to provide an *adequate* explanation as to why the party failed to file a motion earlier. *See, e.g., Fyk*, 2022 WL 10964766, at *1 (affirming denial of 9 month delay in filing Rule 60(b) after alleged change in applicable law when Plaintiff offered no excuse); *Franklin*, 2022 WL 17406094, at *3 ("Plaintiff's delay of a full year in filing the instant motion,

1   with no explanation for the delay, weighs against granting the motion."); *Levy v. United States*,

2   No. 22-CV-05009-JSC, 2023 WL 5599608, at *3 (N.D. Cal. Aug. 28, 2023) (finding that the filing

3   of a Rule 60(b) motion 4 months after the plaintiff became aware of underlying facts is

4   unreasonable when "nothing impeded Plaintiff's awareness of the Court's rulings or of the relevant

5   facts and law"); *United States v. Hughes*, No. 18-CV-05931-JCS, 2024 WL 1056002, at *2 (N.D.

6   Cal. Mar. 11, 2024) (11 month delay unreasonable); *Batman*, 2022 WL 17330466, at *5 (7 month

7   delay unreasonable); *Zamora v. Wells Fargo Bank*, No. 13-CV-00134-MEJ, 2014 WL 2093763,

8   at *3 (N.D. Cal. May 19, 2014) (4 month delay unreasonable) (collecting cases).

9        Likewise, other circuits have held that Rule 60(b) motions were untimely where they were

10  filed months after the issuance of the Supreme Court precedent cited as the basis for relief. *See,

11  e.g., Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014) (affirming determination that motion

12  brought nearly 8 months after Supreme Court decision was not timely). In *National Organization

13  for Women v. Operation Rescue*, the Fourth Circuit affirmed the denial of a Rule 60(b) motion that

14  was filed over a year after a U.S. Supreme Court decision upon which the motion was predicated.

15  47 F.3d 667, 669 (4th Cir. 1995). There, a party sought to vacate a two-and-a-half-year-old

16  judgment where the movant filed the Rule 60(b) motion, seeking relief under 60(b)(5) and (b)(6),

17  over a year after the Supreme Court reversed a similar judgment in a separate case. In denying

18  their motion, the district court ruled that the motion was untimely as movants had failed to provide

19  a valid reason for failing to act for over a year after the Supreme Court issued the underlying

20  decision. *Id.* (citing *McLawhorn v. John W. Daniel & Co. Inc.*, 924 F.2d 535, 538 (4th Cir. 1991)).

21  Similarly, the court's analysis was bolstered by the fact that the movants did not appeal the original

22  judgment, "taking the risk of the result that ensued." *Id.* (citing *Ackermann*, 340 U.S. at 198).

23        Here, Movants' request for relief suffers from the same fatal flaw as the motion in *National

24  Organization for Women* as well as those considered by numerous district courts. Movants provide

25  no explanation for their failure to seek relief more promptly, particularly when the events relied

26  upon in support of their motion were well known to all. Defendants' strategic decision to not appeal

27

28

the 1991 final judgment only bolsters this conclusion. *National Organization for Women*, 47 F.3d at 669. Accordingly, Movants have failed to demonstrate that that relief is warranted.

### D.  Movants' "mistake of law" arguments are indisputably time-barred.

Separately, Movants' arguments that the Ninth Circuit's 1991 decision in *Glick* failed to follow Supreme Court precedent, Rule 60(b) Mot. 15–22, ECF No. 83, are unequivocally time-barred under Rule 60(c)(1) as relief was not sought within a "reasonable time . . . no more than a year" from the date of the final judgment. Boiled down, Movants argue that the Ninth Circuit committed a judicial error by failing to properly apply the standard for facial relief discussed in *Salerno*, *Akron II*, and *Planned Parenthood Assn. of Kansas City, Mo. v. Ashcroft*, 462 U.S. 476 (1983). Rule 60(b) Mot. 13, 20–21, ECF 83; Rule 60(c)(1). Similarly, Movants argue that the Ninth Circuit failed to apply *Akron II*'s precedent regarding *Bellotti v. Baird*, 443 U.S. 622, 643-44 (1979) ("*Bellotti II*)'s judicial-bypass criteria. *Id*. at 15-22. Though Movants frame their arguments as being about a change in the underlying law—specifically, arguing that *Lambert* abrogated *Glick*—the substance of their argument is that the Ninth Circuit committed a legal error in *Glick*. As such, these arguments fall squarely within subdivision (b)(1)'s ambit and are subject to the rule's temporal limitations.

Movants' mistake-of-law argument that *Glick* failed to properly follow U.S. Supreme Court precedent is now being raised over 32 years after the Ninth Circuit's decision. Because Movants failed to raise these arguments within a reasonable time, let alone within one year after the final judgment was entered, these arguments are time barred. Fed. R. Civ. P. 60(c)(1); *Kemp*, 596 U.S. at 533. This alone is sufficient grounds to deny relief under Rule 60(b).

### III.    As A Matter Of Law, Movants Fail To Satisfy Their Burden Under Rule 60(b)(5).

Even if the Court were to find that the significant untimeliness of the filing does not preclude consideration of Movants' arguments, Movants again fail to meet their burden of proof in demonstrating that this Court should exercise its discretion and grant relief under Rule 60(b). Though Movants caption their arguments under Rule 60(b)(5)'s "prospective enforcement of the

1   injunction is inequitable" subdivision because (1) *Dobbs* overturned *Roe* and (2) *Lambert*

2   abrogated the Ninth Circuit's decision in *Glick*, at bottom, Movants' arguments should be

3   considered under various subdivisions of the rule: 60(b)(1)'s "mistake of law" provision,

4   60(b)(5)'s "underlying judgment vacated" clause, 60(b)(5)'s "prospective enforcement is

5   inequitable" clause, and 60(b)(6)'s "residual clause."

6
7
### A. Movants improperly use *Lambert* to relitigate the adequacy of the judicial bypass process.

8   As discussed above, Movants argue that *Lambert*'s discussion of *Glick* serves as

9   confirmation that the Ninth Circuit erred when it affirmed this Court's preliminary injunction in

10  1991, and that this alone compels Rule 60(b)(5) relief. Rule 60(b) Mot. 17–21, ECF No. 83.

11  Because this argument asserts a mistake of law, it must be evaluated under Rule 60(b)(1). *See*

12  *supra* at 7–8.

13  Movants misconstrue both *Glick* and *Lambert* to reach an outcome that this Court has

14  already considered and rejected. Relying on *Lambert* as a pretext, Movants attempt to reiterate

15  arguments already considered by the Ninth Circuit in *Glick* related to the constitutionality of the

16  challenged statutes *Akron II* and *Bellotti II*. Rule 60(b) Mot. 17–20, ECF No. 83. Rule 60(b)

17  motions do not allow Movants to seek a mulligan 32 years later for their tactical decision to forgo

18  appeal of the Ninth Circuit's 1991 decision through a petition for certiorari to the U.S. Supreme

19  Court. *Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959); *Maraziti v. Thorpe*, 52 F.3d 252, 255

20  (9th Cir. 1995) (holding that Rule 60(b) motions cannot be used to "merely reiterate" arguments

21  that have already been presented and rejected by the court); *see also* Resp to Mot for Summ. J.,

22  ECF No. 71 (indicating that Defendants intended to seek a legislative solution rather than

23  appealing *Glick*'s final judgment). Beyond the untimeliness of these arguments, Rule 60(b)(5) does

24  not afford Movants a second bite at the apple, allowing them to switch from one unsuccessful legal

25  strategy to another in an effort to achieve a different outcome. *See Ackermann*, 340 U.S. at 198.

26  Second, Movants' Rule 60(b)(5) argument that *Lambert* abrogated *Glick* in its entirety,

27  therefore making prospective enforcement of the injunction inequitable, is incorrect. Rule 60(b)

28

Mot. 20–22, ECF No. 83. While *Lambert* rejected *Glick*'s analysis as to whether due process requires "a minor to show that parental notification is not in her best interests," as opposed to "requiring a minor to show that an abortion (without such notification) is in her best interests," *Lambert*, 520 U.S. at 298, it did not refute the entirety of the Ninth Circuit's analysis affirming the grant of this Court's preliminary injunction. The analysis in *Glick* identified two separate, independent ways in which S.B. 510's judicial bypass process violated the Fourteenth Amendment, and explicitly acknowledged that the "impermissibly constricted the meaning of best interests only *adds* to the [constitutional] infirmity." *Glick*, 937 F.2d at 442 (emphasis added). As such, *Lambert*, while rejecting that aspect of the *Glick* decision, did not repudiate the ultimate holding of *Glick*: that S.B. 510's judicial bypass process was unconstitutional. Because Movants cannot establish that *Lambert* eroded the entire legal basis for this Court's 1991 judgment, Movants cannot meet their burden on the merits. *Bynoe v. Baca*, 966 F.3d 972, 986 (9th Cir. 2020) ("Where a court rested its judgment on a basis only marginally altered by later changes in relevant law, reopening a judgment is disfavored."). Thus, this 60(b)(5) argument fails as well.

### B. Movants fail to demonstrate that the underlying judgment has been reversed.

Separately, Movants argue that because *Dobbs* overruled *Roe*, it removed the judgment undergirding the permanent injunction's analysis, and thus relief is warranted under Rule 60(b)(5)'s "prospective enforcement is inequitable" clause. Rule 60(b) Mot. 10–11, 22, ECF No. 83. However, the substance of this argument compels evaluation under a separate clause of (b)(5), permitting relief from a judgment that is "based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). To satisfy their burden, Movants must do more than point to a change in Supreme Court precedent. Rule 60(b)(5) is not intended to "challenge the legal conclusions on which a prior judgment or order rests." *See Horne v. Flores*, 557 U.S. 433, 447 (2009). "The relation between the present judgment and the prior judgment must . . . be closer than that of a later case relying on the precedent of an earlier case; the fact that the prior case provides a precedent for the later one is not sufficient." *Tomlin v. McDaniel*, 865 F.2d 209, 211 (9th Cir.

14

1989),  *overruled on other grounds by Phelps*, 569 F.3d 1120; *see also* 11 Charles Alan Wright,

Arthur. R. Miller, & M. Kane, *Federal Practice and Procedure* § 2863 (3d ed. 2022) ("This ground

is limited to cases in which the present judgment is based on the prior judgment in the sense of

claim or issue preclusion. It does not apply merely because a case relied on as precedent by the

court in rendering the present judgment has since been reversed"). "Subpart (2) of Rule 60(b)(5)

requires that there be a direct connection between the judgment being challenged and the judgment

that has been reversed [.] The fact that [. . .], after the judgment being challenged issued, precedent

arose in a different case that rendered the challenged judgment flawed or incorrect is not sufficient

to implicate subpart (2) of Rule 60(b)(5)." *Schrubb*, 2022 WL 3971054, at *2 (collecting cases).

The narrowness of this basis for vacating a judgment post-*Dobbs* is reflected in *MKB Management v. Wrigley*, where the district court denied a Rule 60(b) motion predicated on *Dobbs*, as Movants' motion is. *MKB Mgmt. Corp. v. Wrigley*, 343 F.R.D. 68, 70 (D.N.D. 2022), appeal dismissed sub nom. *Access Indep. Health Servs., Inc. v. Burdick*, No. 22-3595, 2023 WL 3986375 (8th Cir. May 18, 2023) (collecting cases). There, the district court denied a Rule 60(b) motion seeking to vacate a 2014 abortion-related permanent injunction. *See MKB Mgmt.*, 343 F.R.D. at 70–71. In denying the motion, the Court determined that simply because the prior order's analysis cited *Roe* and *Casey*, which *Dobbs* overruled, this, alone, was not sufficient to reopen its 2014 decision. In doing so, the Court noted "[Rule 60](b)(5) does not provide a basis for relief when one judgment relies on an earlier judgment merely as legal precedent and that legal precedent is subsequently set aside or overturned." *Id*. at 70. Such interpretation of Rule 60(b)(5)'s breadth would undermine the principles and importance of finality in litigation. *Id*. at 71.

Quite simply, Movants' request for 60(b) relief suffers from the same shortcomings as that in *MKB Management*. While Plaintiff does not dispute that *Glick* cited *Roe*, that the final judgment relied on *Glick*, and that *Dobbs* overruled *Roe*, this is not sufficient to grant relief under the second prong of Rule 60(b)(5). *See Schrubb*, 2022 WL 3971054 at *2; *see also Lubben v. Selective Serv. Sys. Loc. Bd. No. 27*, 453 F.2d 645, 650 (1st Cir. 1972) (explaining that Rule 60(b)(5) "does not authorize relief from a judgment on the ground that the law applied by the court in making its

15

adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding") (citation omitted). Because *Roe* is not connected either structurally or procedurally with *Glick*—as would be, for example, a merits decision establishing the prevailing party for purposes of a subsequent attorneys' fees judgment—this Court's ruling is not "based on" it for the purposes of 60(b)(5) relief, and thus its overruling is not sufficient to trigger this clause. *Tomlin*, 865 F.2d at 210; *see also Fed. Trade Comm'n v. AH Media Grp.*, 339 F.R.D. 612, 618 (N.D. Cal. 2021) ("Under the plain language of the rule, there simply is no 'earlier judgment that has been reversed or vacated' that these stipulated orders were based on; there has only been a subsequent decision in a different case, which defendants seek to benefit from."); *see e.g., Kniespeck v. Unum Life Ins. Co. of Am.*, No. CIV. 2:01-0878 WBS EFB, 2009 WL 3320289, at *1 (E.D. Cal. Oct. 14, 2009) (granting Rule 60(b)(5) motion vacating attorneys fees and costs when Ninth Circuit vacated judgment in the case that spawned award to prevailing party); *Azzolini v. Marriott Int'l Inc.*, 417 F.Supp.2d 243, 245 (S.D.N.Y. 2005) (granting Rule 60(b)(5) motion to vacate dismissal order based on doctrine of res judicata, where case establishing res judicata had been vacated). Therefore, Movants cannot establish that the issuance of *Dobbs* satisfies Rule 60(b)(5)'s "underlying judgment vacated" requirements warranting relief.[8]

### C. Movants fail to demonstrate that prospective enforcement of the injunction is inequitable.

At face value, Movants' entire Rule 60(b)(5) argument is that prospective enforcement of the injunction against Nevada's parental notice requirement would be inequitable because *Dobbs* overruled *Roe* and *Lambert* abrogated *Glick* (which is incorrect, *supra* at 14-15). Even if timely, Movants fail to demonstrate that "the changed conditions make compliance with the [judgment] more onerous, unworkable, or detrimental to the public interest" as is required to obtain relief under the equity clause of Rule 60(b)(5). *Rousseau*, 985 F.3d at 1097–98 (citing *Rufo*, 502 U.S. at 384); *see also Bellevue Manor Assocs. v. United States*, 165 F. 3d 1249, 1255 (9th Cir. 1999).

---

[8] Nor does the U.S. Supreme Court's decision in *Lambert* provide grounds for relief under (b)(5)'s "underlying judgment vacated" clause, as explained above.

1    Movants' reliance on *Becerra* and *Agostini v. Felton* does not change this analysis. In

2    *Agostini v. Felton*, the Supreme Court—after reversing its own precedent—determined that

3    petitioners were entitled to Rule 60(b)(5) relief under the equity clause because the prior decision

4    and ongoing mandatory injunctive obligations that burdened them could not be squared with

5    intervening jurisprudence. 521 U.S. 203 (1997). Applying *Agostini*, the Ninth Circuit in *Becerra*

6    held that when the *entire* legal basis for a judgment has eroded, which in the case of *Becerra* was

7    a federal rule that mandated ongoing obligations of the EPA, a court cannot maintain injunctive

8    relief based on equitable factors alone. *California by and through Becerra v. EPA*, 978 F.3d 708,

9    713–17 (9th Cir. 2020) ("EPA is now under *no legal duty*—besides the court's injunction—to

10   [comply with the injunction]" (emphasis added)). But *Becerra*, and *Agostini*, cannot be read so

11   broadly as to require a court to grant Rule 60(b)(5) relief anytime there is any change in law,

12   irrespective of whether other independent legal bases exist warranting the continuation of such

13   relief.   Notably, the Plaintiffs in *Becerra* conceded that there was no remaining legal duty

14   underlying the injunction. *Becerra*, 978 F.3d at 715–16. This is factually and legally

15   distinguishable from the situation here. Nor do these cases bar consideration of equitable factors

16   in conjunction with whether there have been changed legal circumstances warranting the

17   modification of an injunction.

18       Indeed, in *Rousseau*, which postdates *Agostini* and *Becerra*, the Ninth Circuit continued to

19   look beyond a simple change in law in evaluating Rule 60(b)(5) motions under the equity clause.

20   Specifically, the court required the movant to demonstrate that there had been a significant change

21   either in factual conditions or in the law warranting modification of the injunction; that the

22   proposed modification of the injunction was suitably tailored to resolve the problems created by

23   the changed factual or legal conditions; and "that the changed conditions ma[de] compliance with

24   the [injunction] more onerous, unworkable, or detrimental to the public interest." *Rousseau*, 985

25   F.3d at 1097–98 (quoting *United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005)).

26       Here, Movants' filing omits any acknowledgment of *Rousseau*'s guidance, which

27   numerous courts throughout this circuit continue to follow when evaluating Rule 60(b)(5) motions

28

based on the equity clause. *See e.g., Oregon Advoc. Ctr. v. Allen*, No. 20-35540, 2021 WL 3615536, at *1 (9th Cir. Aug. 16, 2021); *BNSF Ry. Co. v. Tri-City & Olympia R.R. Co.*, No. 2:09-cv-5062-EFS, 2022 WL 2015288, at *5 (E.D. Wash. June 6, 2022); *Def. of Wildlife v. Martin*, No. 2:05-cv-00248-RHW, 2021 WL 5890661 (E.D. Wash. Dec. 13, 2021); *United States v. Turner*, No. 3:13-CV-1827-DMS-NLS, 2022 WL 1570741, at *1 (S.D. Cal. May 17, 2022) ("Rule 60(b)(5) requires the Court to take all the circumstances into account including the public interest and the judiciary's interest in the finality of judgments.") (citations omitted). By contrast, no court in the circuit has applied *Becerra* as Movants suggest.[9]

In *Guam Society of Obstetricians & Gynecologists v. Guerrero*, the district court denied a Rule 60(b)(5) motion seeking to vacate a 1990 permanent injunction because of *Dobbs*. No. 90-00013, 2023 WL 2631836, at *2 (D. Guam Mar. 24, 2023). Emphasizing that the movants bore the burden of persuasion, the court found that they had failed to satisfy their burden in demonstrating that *Dobbs*'s reversal of *Roe* constituted a sufficiently significant change in law warranting vacatur of the permanent injunction in its entirety when independent legal infirmities remained to justify the decades-old permanent injunction barring enforcement of the law. *Id.*

Here, Movants' request suffers from the same fatal flaw as that in *Guam Society of Obstetricians*. Relying on *Becerra* and failing to properly address this circuit's standard, Movants improperly attempt to shift the burden to Plaintiff to *affirmatively disprove* that there has been a significant change in law that makes continued compliance with the injunction more onerous, unworkable, or detrimental to the public interest, and that the requested modification of the injunction is "suitably tailored" to the change in circumstances. *See Rousseau*, 985 F.3d at 1097–98. As with the other Rule 60(b) requirements, Movants again fail to acknowledge the applicable standard, much less that their motion satisfies it.

---

[9] To the date of this filing, undersigned counsel have not been able to identify any additional cases beyond the out-of-circuit district court decision in *June Medical Services*, cited in Movants' brief, that supports such broad interpretation of *Becerra* and *Agostini*.

In fact, Movants cannot demonstrate that there has been a "significant change" in law that erodes all legal basis for this judgment. While Plaintiff does not dispute that *Dobbs* overruled *Roe*, other independent legal grounds compel against dissolving the 1991 judgment[10] in its entirety. Movants fail to acknowledge or even address the remaining constitutional claims raised in the pleadings, including equal protection and other due process claims under the Fourth, Fifth, Ninth, and Fourteenth Amendment.[11] Compl. 3, 8–10, ECF No. 1. For example, the complaint challenged the parental notification and judicial bypass scheme on the grounds that notification was only required for unmarried, unemancipated patients, therefore depriving them of equal protection in violation of the Fourteenth Amendment. *Id.* at 5–6, 9; *cf.*, *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982); *Eisenstadt v. Baird*, 405 U.S. 438, 447–55 & n.7 (1972) (holding that classification between married and unmarried people seeking contraception failed rational basis review under the Equal Protection Clause). Movants' failure to address the remaining constitutional infirmities alone compels denial of their motion on the merits. *See Guam Soc'y of Obstetricians & Gynecologists*, 2023 WL 2631836, at *2.

Separately, there are additional grounds upon which S.B. 510's challenged sections remain unlawful. First, given the lack of any contemporary legal scheme to govern the implementation of this area of law and policy, Movants offer no authority establishing that the automatic revival of statutes previously found to be unconstitutional is permissible in Nevada, nor do they provide any guidance on how implementation of these statutes will be harmonized with subsequent legislation, such as the 2019 Trust Nevada Women Act, which amended Nevada's abortion laws to remove a number of restrictions, including the requirement that the abortion provider certify in writing the

---

[10] Of note, the Court's final judgment declined Defendants' request in their summary judgment response to ensure that the final judgment reflected the holding of the Ninth Circuit in *Glick* and "the precise manner in which the statutes at issue were held to be unconstitutional," Resp. to Mot. for Summ. J. 2, ECF No. 71; Judgment, ECF No. 75.

[11] Because Plaintiffs only sought summary judgment on these provisions, procedurally, the "mandatory information" provisions are not subject to this Rule 60(b) motion. Without waiving any challenges to the validity of these statute, in light of the procedural posture of this motion, Plaintiffs will not address their legal infirmities.

patient's "marital status and age." *See* S.B. 179, 80th Sess. (Nev. 2019), § 1 (amending NRS 442.252, effective July 1, 2019). As one court recently facing the same dilemma stated, "[c]onsidered in the abstract, the rule of automatic revival has the potential to disrupt expectations of predictability and finality that attach as a consequence of this court's issuing of a decision holding a statute unconstitutional." *State v. Hodge*, 941 N.E.2d 768, 775 (Ohio 2010). Here, as in *Hodge,* "[i]t would be speculative to assume" that the Nevada Legislature "would wish to reinstate" the invalid portions of NRS 442.255, and "[t]his militates in favor of requiring positive action by the General Assembly to indicate its intent and desire in a complicated area of the law." *Id.* The Legislature, accountable to the Nevada electorate, should be required to re-enact parental notification if a policy of such significance is now to be made law.[12] Second, it is unclear what legal effect the recent enactment of Nev. Const. Article I, Section 24—the Nevada Equal Rights Amendment ("NERA")—may have on the constitutionality of NRS 442.255. Inarguably, NRS 442.255 curtails rights to reproductive services—rights guaranteed by other Nevada statutes—on the basis of age, arguably in violation of Nev. Const. art. I, sec. 24. At least one district court has already ruled that the NERA implicates and protects access to abortion and reproductive services. Press Release, ACLU, Nevada Court Will Block State Ban on Medicaid Coverage for Abortion (March 19, 2024), https://www.aclu.org/press-releases/nevada-court-will-block-state-ban-on-medicaid-coverage-for-abortion. Though Movants' failure to satisfy their heavy burden and address these additional legal infirmities is fatal to their cause, *see Guam Society of Obstetricians and Gynecologists*, 2023 WL 2631836 at *2, should the Court conclude that it is necessary to air these alternative bases for maintaining the permanent injunction, Plaintiff respectfully requests the opportunity to submit supplemental briefing to address these issues and any other unknown variables, which space here does not presently permit. The Court might also deem it necessary to

---

[12]  *See also* William Michael Treanor & Gene B. Sperling, *Prospective Overruling and the Revival of 'Unconstitutional' Statutes*, 93 Colum. L. Rev. 1902, 1906 (1993) ("Proper concern for the majoritarian process leads to the conclusion that in some situations political reliance merits protection through nonrevival.")

certify questions of state law to the Nevada Supreme Court pursuant to Nev. R. App. P. 5 in order to seek interpretation of state law, especially touching upon the newly-enacted NERA.

Next, should this Court find that there is a significant change in decisional law, Movants cannot establish that vacating the decades-old judgment in its entirety is suitably tailored nor in the public interest. Because Movants have not demonstrated how such broad relief is "suitably tailored" to the circumstances at hand, this Court may exercise its discretion to deny such broad relief. *See Oregon Advoc. Ctr.*, 2021 WL 3615536 at * 2 (citing *Rousseau*, 985 F.3d at 1097) (remanding case to district court to craft a more suitably tailored modification order through factfinding and considering alternatives).

Just as they have repeatedly failed to satisfy their heavy burden as it relates to the other requirements for Rule 60(b)(5) modification, Movants cannot show that continued compliance with the injunction is "more onerous, unworkable, or detrimental to the public interest." *Rousseau*, 985 F.3d at 1097–98. Indeed, it cannot be reasonably argued that Nevadans are better off being subjected to the overnight reimposition of a decades-old law that has never been enforced and which requires complex planning, coordination, and rulemaking across various branches of government and stakeholders to ensure that all individuals subject to the statutes' requirements and penalties have access to all necessary systems and processes required to comply with S.B. 510 without inadvertently creating further constitutional infirmities through the implementation process. *See Rufo,* 502 U.S. at 391 ("[O]f course, a modification must not create or perpetuate a constitutional violation"). Because NRS 442.255 and NRS 442.2555 have never gone into effect, the sudden reanimation of this law would be met by a lack of legal or administrative preparedness within Nevada's court system, and would require rulemaking, adequate training of the judiciary, court staff, medical authorities, and counsel appointed pursuant to the statute. In effect, the chaos, confusion, and hardships that will result from this sudden implementation will force young people to navigate an unworkable, unprepared, and undefined judicial process in order to access time-sensitive necessary health care.

1   Lastly, turning to the public interest, unlike *Agostini*'s mandatory injunction, the judgment

2   here is prohibitive and does not require Defendants nor the State to expend any funds or resources

3   to remain in compliance. *Agostini*, 521 U.S. at 240. In fact, the vacatur of the injunction in its

4   entirety would require Defendants and the State to expend resources to ensuring constitutionally

5   compliant implementation. Finally, and crucially, the disruption of the status quo, deviation from

6   general principles of finality in litigation, and abrupt imposition of a requirement first enjoined

7   almost 39 years ago, which for some Nevadans threatens consequences ranging from criminal

8   charges to the functional denial of access to health care while systems are implemented and refined,

9   itself, weighs in support of preserving the existing final judgment.

10   **IV.    Movants Have No Grounds To Seek FRCP 60(b)(6) Relief.**

11   Apart from the untimeliness of their motion, Movants have no substantive avenue to obtain

12   relief under Rule 60(b)(6)'s "residual" clause. Here, Movants fail to seek relief under subsection

13   (b)(6), nor can they show that they merit the extraordinary relief that the rule provides. While most

14   of Movants' theories should be construed under subsections other than the one under which

15   Movants fashioned their demand for relief, even under the "catch-all" subsection, Movants cannot

16   meet the heavy burden required to obtain relief under (b)(6).

17   This subsection is not a safe harbor for parties who fail to seek timely relief or are unable

18   to satisfy their heavy burden under other specific provisions; it "is available only when Rules

19   60(b)(1) through (b)(5) are inapplicable," and even then "extraordinary circumstances" must

20   justify reopening. *Kemp*, 596 U.S. at 533; *see also Liljeberg v. Health Services Acquisition Corp.*,

21   486 U.S. 847, 863 n.11 (1988); *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S.

22   380, 393 (1993).

23   The Ninth Circuit has stated that "a change in the controlling law can—but does not

24   always—provide a sufficient basis for granting relief under Rule 60(b)(6)." *Henson*, 943 F.3d at

25   444; *see also Phelps*, 569 F.3d at 1132–33. A Rule 60(b)(6) motion "requires the trial court to

26   intensively balance numerous factors, including the competing policies of the finality of judgments

27   and the incessant command of the court's conscience that justice be done in light of all the facts."

28

*Henson*, 943 F.3d at 444–45 (*quoting Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007)). The Ninth Circuit has adopted six factors that "should guide courts in exercising their discretion under Rule 60(b)(6)." *Id.* at 445. Those are (1) the nature of the change in the law; (2) the movant's diligence; (3) the parties' reliance interests in the case's finality; (4) the delay; (5) the relationship between the original judgment and the change in the law; and (6) comity. *Id.* at 446–53. As discussed in prior sections evaluating Movants' request under different subsections, five of these six factors—nature of the purported change, diligence, delay, relation with the original judgment, and comity—weigh decisively against granting relief. The fifth factor, the parties' reliance on the finality of the judgment assailed, perhaps goes most strongly in Movants' disfavor. Certainly, more than three decades of conduct by generations of Nevadans and their physicians in the wake of the invalidation of the parental notification statute, as well as the Nevada Legislature's conduct during the intervening period, constitutes reliance upon the final judgment of the highest order.[13] *Henson*, 943 F.3d at 450. ("[C]ourts should consider whether the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment such that granting the motion for relief would undo the past, executed effects of the judgment." (internal quotation omitted)).

   Beyond their waiver of this argument, even if Movants pled a Rule 60(b)(6) argument, they cannot establish the sort of extraordinary circumstances necessary for this Court to grant relief on that basis.

---

[13] Should Movants point to isolated instances in the past of failed legislative bills, or initiative petitions seeking to template new versions of the statute, these should not alter the Court's calculations. Should such external events be relevant to this analysis, it should be noted that ballot initiative proponents have proposed a widely supported Nevada constitutional amendment for placement on the 2024 General Election ballot that would establish a fundamental and wide-ranging individual right to reproductive care and services. *See* Notice of Intent, https://www.nvsos.gov/sos/home/showpublisheddocument/12633/638375592027970000 (last accessed, June 13, 2024); Kelsea Frobes, *Abortion Rights Activists Believe They Have Enough Signatures to Get Measure on Ballot*, Nevada Independent (May 20, 2024), https://thenevadaindependent.com/article/abortion-rights-activists-believe-they-have-enough-signatures-to-get-measure-on-ballot.

**CONCLUSION**

Because Movants have failed to satisfy their burden of proving that this Court should exercise its discretion to vacate a decades-old final judgment under Rule 60(b), Plaintiffs respectfully request that this Court deny their motion.

Dated this 14 day of June, 2024.

**BRAVO SCHRAGER LLP**


By _____*/s Bradley S. Schrager*_____
        BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
        DANIEL BRAVO, ESQ. (SBN 13078)
        6675 South Tenaya Way, Suite 200
        Las Vegas, Nevada 89113
        Tele.: (702) 996-1724
        Email: bradley@bravoschrager.com
        Email: daniel@bravoschrager.com

        VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
        PLANNED PARENTHOOD FEDERATION OF AMERICA
        123 William Street, Floor 9
        New York, NY 10038
        Email: valentina.defex@ppfa.org

        HANNAH SWANSON, ESQ. *(admitted pro hac vice)*
        PLANNED PARENTHOOD FEDERATION OF AMERICA
        1110 Vermont Ave NW, Suite 300
        Washington, DC 20005
        Email: hannah.swanson@ppfa.org

        *Attorneys for Plaintiff,*
        *Planned Parenthood Mar Monte, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 14th day of June, 2024, a true and correct copy of this **PLAINTIFF'S OPPOSITION TO RULE 60(B) MOTION OF DEFENDANTS JASON D. WOODBURY, CARSON CITY DISTRICT ATTORNEY, AND STEPHEN B. RYE, LYON COUNTY DISTRICT ATTORNEY** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.


By    */s/ Dannielle Fresaquez*
         Dannielle Fresquez, an Employee of
         BRAVO SCHRAGER LLP

**Attachment 13**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Reply, Dkt. No. 116**

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org
*Designated Resident Nevada Counsel for Defendants Woodbury and Rye*
James Bopp, Jr. (IN Bar #2838-84)*
        jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
        rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar  #87799)*
        jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Admitted pro hac vice.
*Counsel for Defendants Woodbury and Rye*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Planned Parenthood Mar Monte, Inc.,

Plaintiff,

v.

Aaron D. Ford, Nevada Attorney Gen.; Christopher J. Hicks, Washoe County Dist. Attorney; Jason D. Woodbury, Carson City Dist. Attorney; Arthur E. Mallory, Churchill County Dist. Attorney; Steven Wolfson, Clark County Dist. Attorney; Mark B. Jackson, Douglas County Dist. Attorney; Tyler Ingram, Elko County Dist. Attorney; Robert E. Glennen, III, Esmeralda County Dist. Attorney; Theodore Beutel, Eureka County Dist. Attorney; Kevin Pasquale, Humboldt County Dist. Attorney; William E. Schaeffer, Lander County Dist. Attorney; Dylan V. Frehner, Lincoln County Dist. Attorney; Stephen B. Rye, Lyon County Dist. Attorney; T. Jaren Stanton, Mineral County Dist. Attorney; Brian T. Kunzi, Nye County Dist. Attorney; Bryce R. Shields, Pershing County Dist. Attorney; Anne Langer, Storey County Dist. Attorney; James S. Beecher, White Pine County Dist. Attorney,

Defendants.

Case No. **3:85-cv-00331-ART-CSD**

**Reply in Support of Motion for Relief from Judgment Under Fed. R. Civ. P. 60(b)(5)**

On December 1, 2023, Defendants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney (collectively, "**District Attorneys**") filed their Rule 60(b)(5) Motion for Relief from Judgment, D. 83 ("**Motion**"), seeking relief from the Judgments entered in this case (collectively, "**Judgment**"), *id.* at 2. On June 14, 2024, successor-Plaintiff Planned Parenthood Mar Monte, Inc. ("**PPMM**") filed its Response in Opposition. D. 115. District Attorneys now timely reply. Because PPMM's various attempts to cast doubt on the Motion's arguments fail, the Motion should be granted.

### I. The Motion was properly submitted as a Rule 60(b)(5) motion.

The Motion was properly lodged under Fed. R. Civ. P. 60(b)(5), which governs relief from prospective application of a judgment whose legal basis is dissolved. PPMM errs in attempting to shoehorn into this case other Rule 60(b) subsections. *E.g.* D. 115, 6–7, 29–30. "'General language of a statutory provision . . . will not be held to apply to a matter specifically dealt with in another part of the same enactment.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U. S. 639, 646 (2012) (citation omitted). While Rule 60(b)(1) governs "mistake," the Motion falls properly under the more specific Rule 60(b)(5), as precedent dictates that the latter governs motions concerning a legal change rendering prospective application of a judgment inequitable ("**Inequity Prong**"). *E.g.*, *Agostini v. Felton*, 521 U.S. 203, 215, 237 (1997).

In urging this Court to construe District Attorneys' argument that *Casey*'s "large fraction analysis" for facial challenges no longer controls as a Rule 60(b)(1) "mistake of law" argument, D. 115, 13–14, PPMM ignores that *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), is the precedent *showing* the abrogation of that analysis. Motion, D. 83, 13 ("the large-fraction analysis is gone with . . . *Dobbs*."). The Motion did show the context of cases *leading* to *Dobbs*, including strong pre-*Dobbs* indications that the large-fraction analysis did not apply to

**Reply in Support of Mot. for Relief**          1

1    certain cases, *id.* at 11–13, but stated plainly that "[a] question about the ongoing applicability of

2    th[e no-set-of-circumstances] test" arose as a result of *Casey*, *id.* at 13. A *question* about the legal

3    standard applied in a judgment does not render its application inequitable. *Dobbs* unequivocally

4    got rid of the large-fraction analysis, which *did* render application of the Judgment relying on that

5    test inequitable. So the Inequity Prong controls. The Motion explained that under binding prece-

6    dent, such changes constitute inequities requiring relief. D. 83, 8–9, 23. Indeed, the Supreme

7    Court straightforwardly "concluded that" a "change in law entitles petitioners to relief under" the

8    Inequity Prong. *Agostini v. Felton*, 521 U.S. 203, 215, 237 (1997). "[O]nce a party carries [its]

9    burden" to establish that such a change warrants relief, "a court abuses its discretion when it

10   refuses to modify an injunction[.]" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (cleaned up).

11       PPMM does not persuasively dispute this. Although PPMM quotes part of a sentence from

12   *Horne*, 557 U.S. at 447—"Rule 60(b)(5) is not intended to 'challenge the legal conclusions on

13   which a prior judgment or order rests,'" D. 115, 21—its seemingly narrow understanding of this

14   half-quotation is belied by the rest of the sentence: "but the Rule provides a means by which a

15   party can ask a court to modify or vacate a judgment or order if a significant change either in

16   factual conditions or in law renders continued enforcement detrimental to the public interest."

17   557 U.S. at 447 (quotation marks and citation omitted). This single snippet of a line in *Horne*,

18   with no further explanation, was therefore clearly not the Supreme Court's signal that its previ-

19   ous instruction to that effect (viz., that change in law *can* justify Rule 60(b)(5) relief) in

20   *Agostini*—or the line of cases *Agostini* cited, 521 U.S. at 215—was no longer good law. Thus,

21   *Horne* only *affirms* that the Rule 60(b)(5) provides grounds for proper relief here.

22       PPMM additionally claims that the Motion should be evaluated under the prong of Rule

23   60(b)(5) concerning judgments "based on an earlier judgment that has been reversed or vacated"

**Reply in Support of Mot. for Relief**          2

1    ("**Prior Judgment Prong**"), which applies only when claim or issue preclusion is the basis for

2    the challenged judgment, D. 115, 22. But rather than explaining *why* that is the appropriate

3    prong, PPMM simply cites cases explaining how its analysis operates. *Id.* at 21–22 (citing vari-

4    ous Prior Judgment Prong sources); *see also id.* at 23 (citing additional cases). By failing to argue

5    how a rule about claim or issue preclusion judgments—plainly not at issue here—could apply,

6    and instead only discussing the operation of the prong *when* applicable, PPMM misses the mark.

7    This Court should pay no heed to that unsupported contention.

8       It follows that PPMM's reliance on a case (from a district court in a different circuit) deny-

9    ing a Prior Judgment Prong motion, *MKB Mgmt. Corp. v. Wrigley*, 343 F.R.D. 68, 70 (D.N.D.

10   2022), is misplaced. *See* D. 115, 22. Even if *Wrigley did* concern the Inequity Prong, it still sheds

11   no light here. *Wrigley* stated that the underlying judgment "was based on the United States Con-

12   stitution, not simply *Roe* and *Casey*." 343 F.R.D. at 70. Here, District Attorneys have shown that

13   a fundamental basis of the Judgment *was* overturned, D. 83, 10–15, rendering this case distinct.

14   They have also explained how the continuing enforcement of the Judgment would no longer be

15   equitable, *id.* at 8–9, 22–24—something not addressed at all in *Wrigley*. Thus, they have shown

16   grounds requiring relief under Rule 60(b)(5). *See Horne*, 557 U.S. at 447.

17                              **II. The Motion is timely.**

18      Because the Motion is properly made under Rule 60(b)(5), Rule 60(c)'s one-year time limit

19   for filing a motion for relief (which applies only to motions made pursuant to Rule 60(b)(1), (2),

20   or (3)) is inapplicable, and its "reasonable time" requirement is the correct standard.

21      That standard shows the Motion was timely. "What constitutes reasonable time" is fact-

22   contingent, *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985), but "Rule 60(b) . . .

23   must be liberally applied," *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695–96 (9th Cir.

2001) (cleaned up). The facts of this case are akin to Ninth Circuit cases in which such motions have been found timely. For example, in *Holtzman*, the court found motions timely despite the movant's approximate five-year delay in seeking such relief. *See* 762 F.2d at 723, 725. Although the problem with the challenged injunction was its lack of a "fixed termination date," *id.* at 726—which would have been apparent upon its issuance—the Court nonetheless found the many-year delay did not defeat timeliness. This was in spite of the fact that the delay resulted from "judgment errors"; the Court explained that the circumstances warranted a finding of timeliness because no prejudice resulted from the "errors and because the prospective nature of the injunction calls for leniency in interpreting the reasonable time requirement." *Id.*

Other cases confirm that delay alone has little weight if the delay does not prejudice the opposing party. In *Cisneros v. United States (In re Cisneros)*, for example, the Ninth Circuit affirmed a finding of timeliness even where the moving party had "offered no explanation for its [eight-month] delay." 994 F.2d 1462, 1467 (9th Cir. 1993). While the appellant "insist[ed]" the delay was accorded "insufficient weight," the appellate court noted that the court below had clearly considered the controlling factors, observing that it had "found that the delay had caused the Debtors no prejudice, while a failure to grant the motion to reopen would have been highly prejudicial to the government." *Id.* Other Ninth Circuit cases have likewise held that delays well in excess of a year did not render Rule 60 motions untimely, all based on factual analysis.[1]

---

[1] *E.g.*, *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 945 (9th Cir. 2007) (two year delay justified); *Washington v. Penwell*, 700 F.2d 570, 572-73 (9th Cir. 1983) (four-year delay justified); *In re Pac. Far E. Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989) (18-month delay justified); *Jones v. Ryan*, 733 F.3d 825, 839 (9th Cir. 2013) (17 month delay "ha[d] little weight in either direction."). The Ninth Circuit also approvingly cites similar cases from other courts. *E.g.*, *Bynoe v. Baca*, 966 F.3d 972, 981 (9th Cir. 2020) (citing *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987), as "describing . . . nine months . . . as a 'brief delay'; and *Thompson v. Bell*, 580 F.3d 423, 443-44 (6th Cir. 2010), as "concluding that a four-year delay . . . was timely in light of the petitioner's diligence").

**Reply in Support of Mot. for Relief**          4

1    Regarding finality, the proper focus is not mere abstract interest in finality, but whether the

2    party opposing relief "had any reliance interest in the finality of the judgment." *Henson v. Fid.*

3    *Nat'l Fin., Inc.*, 943 F.3d 434, 450 (9th Cir. 2019). Such interest is shown where "granting the

4    motion for relief would undo the past, executed effects of the judgment." *Id.* PPMM, like the

5    opposing party in *Henson*, has provided "no evidence that [it] has relied . . . on the finality of the

6    [judgment] . . . [and] there are no past effects . . . that would be disturbed if the case were re-

7    opened[.]" *Id.* PPMM has alleged no *past* effect of the Judgment that would be disturbed as a

8    result of the *prospective* relief sought, and logically there could be no such effects. "Thus . . . this

9    factor should 'weigh[] heavily in [District Attorneys'] favor.'" *Id.* (citation omitted).[2] The Ninth

10   Circuit's frequent citation[3] to a case from another circuit, *Clarke*, makes that case notable. There,

11   the Eighth Circuit found a Rule 60(b)(6) motion timely because "nothing . . . indicate[d] th[e

12   opposing party] ha[d] changed its position to its detriment in reliance on the judgment . . . ." 570

13   F.2d at 831. Thus, as *Pacific Far East* summarizes *Clarke*'s holding, a "six-year delay [is] not

14   unreasonable where no detrimental legal reliance" is shown. 889 F.2d at 249. Again, PPMM has

15   shown no such reliance, so this factor weighs heavily in District Attorneys' favor.

16   All of the foregoing shows that, while PPMM cites a smattering of cases in which motions

17   following less "delay" were held to be untimely, D. 115, 17–18, it fails to demonstrate *factual*

18   similarity to the present case, a fatal flaw since timeliness is fact-contingent. The most significant

19   *fact* here is the lack of *any* prejudice to PPMM as a result of any delay in filing the Motion.

---

20   [2]A reliance on finality can also result from the loss of facts over time, *e.g.*, *Jeff D. v.
Little*, 2023 U.S. Dist. LEXIS 198142, *11 (D. Idaho), but PPMM has alleged no such concerns

21   in this purely legal case. This confirms that this consideration weighs in District Attorneys' favor.

22   [3]In the highly specific context of a Rule 60(b)(5) or (6) motion, the circuit court has cited
*Clarke v. Burkle*, 570 F.2d 824 (8th Cir. 1978), no less than three times to show that a six-year

23   delay may properly be found "not unreasonable." *Holtzman*, 762 F.2d at 725; *Pac. Far E. Lines,
Inc.*, 889 F.2d at 249; *Zurich Am. Ins. Co.*, 503 F.3d at 945.

**Reply in Support of Mot. for Relief**          5

1   Although PPMM *recognized* that prejudice is significant in the timeliness analysis, D. 115, 17, it

2   failed to even passingly allege it was prejudiced by the Motion's timing. *See generally id.* Be-

3   cause PPMM's implied interest[4] is facilitating abortions for "Nevadans under the age of 18 . . .

4   without parental notification," *see id.* at 10, in the absence of any detrimental reliance (indeed, no

5   changed position at all, since the law never went into effect), any delay *served* PPMM by effec-

6   tively pushing back the time at which the Motion, if granted, would effect that interest.

7       Nor does PPMM discuss application of the *remaining* timeliness factors—"the party's

8   ability to learn earlier of the grounds . . . [and] the reason for the delay[.]" *Bynoe v. Baca*, 966

9   F.3d 972, 980 (9th Cir. 2020). As discussed, PPMM attempts to shoehorn parts of the Motion

10  into Rule 60(b)(1), but the fact that an earlier *question* had arisen about *Glick*'s continuing valid-

11  ity does not mean the Motion should have been filed then.[5] District Attorneys rightly declined to

12  seek relief when courts had demonstrated disagreement about the analysis for abortion regula-

13  tions. Similarly, although *Wicklund* did abrogate *Glick*, *infra* Part III.A, the Ninth Circuit said it

14  did not, *Planned Parenthood of Southern Arizona v. Lawall*, 180 F.3d 1022, 1029 n.9 (9th Cir.

15  1999), so any *Wicklund*-based Rule 60(b) motion would have been fruitless at that time, which

16  PPMM tacitly concedes by claiming *Lambert* "did not repudiate *Glick*[,]" D. 115, 3–4.

17      District Attorneys acted diligently upon learning of the grounds of relief. As both parties'

18  _____

    [4]Implied, but not stated directly and, importantly, not evidenced. *See infra* Part IV.

19

20  [5] *See, e.g.*, *Estate of Abduraham Mohammed v. City of Morgan Hill*, No. 5:10-cv-05630
    EJD, 2013 U.S. Dist. LEXIS 157823, at *7 (N.D. Cal. Nov. 1, 2013) ("disagreement with the
    court's decision does not equate to error"); *Autotek, Inc. v. Cty. of Sacramento*, No.
21  2:16-cv-01093-KJM-CKD, 2020 U.S. Dist. LEXIS 127573, at *15 (E.D. Cal. July 17, 2020)
    (holding that for Rule 60(b)(1) purposes, the alleged "mistake must be obvious . . . . Moreover,
22  reconsideration based on court error requires that the moving party present 'facts or law of a
    strongly convincing nature'") (citing 11 C. Wright & A. Miller, Federal Practice and Procedure
    § 2858.1 (3d ed. 2020); *Glavor v. Shearson Lehman Hutton, Inc.*, 879 F. Supp. 1028, 1032 (N.D.
23  Cal. 1994) (citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985))).

**Reply in Support of Mot. for Relief**          6

1  procedural history discussions show, this is no ordinary case in which all original parties remain

2  or pursue their original interests. Yet, despite the fact that the Motion could not have reasonably

3  been expected to be filed immediately after *Dobbs*' issuance, District Attorneys did act diligently

4  in a case that required, *inter alia*, the acquisition of a large record that was un-available on the e-

5  filing system; research and conferral with court personnel about how to comply with the e-filing

6  rule when the case was not on the e-filing system; research on the status of the parties, including

7  inquiry into both Dr. Glick and the successor to Planned Parenthood of Washoe County; research

8  on the unusual issues of succession in interest and the proper course when no successor is appar-

9  ent; and additional time to study the lengthy, paper record to ensure proper argumentation.[6]

10  Thus, while PPMM cites a grab-bag of cases to show that, in some circumstances, untimeli-

11  ness can result from lesser "delays," that is insignificant since PPMM declines to show how this

12  case is remotely similar to almost *any* of them. While PPMM *does* suggest analogy to *NOW v.*

13  *Operation Rescue*, D. 115, 18, that case—which did not involve unusual circumstances like those

14  above or public interest in enforcement of health laws, and in which the movant appeared to be

15  seeking only to delay the judgment, 47 F.3d 667, 669 (4th Cir. 1995)—is a far cry from this one.

16  As shown, the facts here are akin to those in cases where a Rule 60 motion *was* timely.

17  Even when some factors would ordinarily weigh against timeliness, "[l]eniency [] is appro-

18  priate when the challenged judgment is prospective," *United States v. Holtzman*, 762 F.2d 720,

19  725 (9th Cir. 1985) (citation omitted), as here. Thus, even if any delay is not fully justified, leni-

20  ency is proper, especially in light of the interests at issue. "An unduly strict reading of the reason-

21  able-time requirement . . . would tend to force premature Rule 60(b)(5) motions due to a State's

22  fear of losing forever the opportunity to correct an injunction[.]" *Associated Builders & Contrac-*

23  ⸻
       [6]These and similar complexities are reflected in District Attorneys' Motion for
   Scheduling Conference, D. 104, 2–3, to which PPMM never objected.

**Reply in Support of Mot. for Relief**          7

1   *tors v. Mich. Dep't of Labor & Econ. Growth*, 543 F.3d 275, 279 (6th Cir. 2008). *Associated*

2   *Builders* observes in its timeliness analysis that when public, rather than purely private, concerns

3   are at stake, "[a] court should not lightly deny a State's request to regulate a matter of public

4   safety, particularly when the obstacle to the regulation rests on a [dissolved] foundation[.]" *Id.* at

5   278. This resounds strongly here, where an interest in enforcing health-related state laws is at

6   stake and *Glick*'s foundation gone. Thus, this Court should find the Motion timely, following the

7   principle that "the public interest is a particularly significant reason for applying a flexible modi-

8   fication standard," particularly in reference to injunctions that "reach beyond the parties . . . and

9   impact the public's right to the sound and efficient operation of its [government]." *Rufo v. In-*

10  *mates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992). Accordingly, the Motion was timely.

### III. Rule 60(b)(5) relief should be granted.

11

12  PPMM's remaining arguments cast no doubt on the propriety of Rule 60(b)(5) relief.

13  **A. *Wicklund* abrogated *Glick* entirely.**

14  PPMM errs in its discussion of the effect of *Lambert v. Wicklund*, 520 U.S. 292 (1997). As

15  noted, its claim that the *Wicklund* issues place the Motion under Rule 60(b)(1) is incorrect. "Mis-

16  take" thereunder is a mistake apparent at the time the challenged judgment was issued, but the

17  relevant section of the Motion is bookended with explicit statements that *Wicklund abrogated*

18  *Glick*. D. 83, 15, 22. The Motion does discuss the *Glick* problems *Wicklund* identified, but that

19  does not place the claim under Rule 60(b)(1). A high bar is imposed for evincing judicial mis-

20  take, which must be obvious. *Supra* n.5. While the Motion shows that legal error existed in

21  *Glick*, it does not claim the error was obvious enough when the Judgment was issued to clear that

22  bar. Instead, *Wicklund* rendered this abundantly clear by abrogating *Glick*. D. 83, 15–22. Addi-

23  tionally, PPMM's claim that the Motion only reiterated previous arguments, D. 115, 13, is unde-

1  veloped: rather than *identifying* any arguments made previously, PPMM only presents bare

2  assertion. The Court should not consider such unsupported and conclusory statements. Thus,

3  PPMM fails to meaningfully dispute that the Motion falls under Rule 60(b)(5).

4      PPMM's arguments that *Wicklund* did not abrogate *Glick* also fail. PPMM concedes that

5  *Wicklund* "rejected" *Glick*'s analysis concerning the "minor's best interest," D. 115, 10, 21, but

6  argues that *Wicklund* "did not repudiate *Glick*'s holding that Nevada's judicial bypass procedure

7  was unconstitutional because it did not sufficiently ensure expediency . . . ," *id.* at 10–11, 21. The

8  Motion, however, establishes that *Wicklund* held the Nevada law indistinguishable from the

9  Montana law that it said satisfied *Belloti II*'s criteria (including expediency), D. 83, 16 (citing

10  520 U.S. at 296), and that therefore *Wicklund* "necessarily decided that Nevada's statutory deci-

11  sion not to impose a district-court time-limit did not distinguish the Nevada law from the Ohio

12  and Montana laws," *id.* at 19. The Motion furthermore laid out in detailed clarity the logic of this

13  result and why subsequent Ninth Circuit dictum did not change the Supreme Court's

14  "abrogat[ion] *entirely* [of] the Ninth Circuit's affirmation in *Glick* of this Court's Judgment." *Id.*

15  at 19–22. Again, PPMM simply does not address these arguments, once more rendering its mere

16  *assertions* unsupported and conclusory. Again, this Court should afford no weight to such asser-

17  tions. Accordingly, PPMM fails to adequately dispute that *Wicklund* entirely abrogated *Glick*.

18  **B. Prospective application of the Judgment would constitute inequity.**

19      The Supreme Court has roundly rejected the notion that, even when the legal basis of a judg-

20  ment is gone, courts must nonetheless "conduct a broad, fact-specific inquiry into whether mod-

21  ification prevents inequity." *California by & through Becerra v. United States Environmental*

22  *Protection Agency*, 978 F.3d 708, 713 (9th Cir. 2020) ("**EPA**"). Thus, as the Motion explains, to

23  enforce an injunction whose legal foundation no longer stands *is* itself an inequity harming the

**Reply in Support of Mot. for Relief**      9

1   public interest. D. 83, 8–9. Accordingly, by showing that the legal basis for the Judgment has

2   been destroyed, District Attorneys have satisfied the requirement to show inequity.

3       PPMM attempts to distinguish *EPA*, claiming it applies only "when the *entire* legal basis for

4   a judgment has eroded[.]" D. 115, 24. But that changes nothing: *Dobbs did* destroy the entire

5   legal basis of *Glick*. PPMM "does not dispute that *Dobbs* overruled *Roe*," but says other

6   "grounds compel against dissolving" the Judgment. However, PPMM does not even argue that

7   *any* legal basis of the *Judgment* remains (tacitly conceding, then, that none does), but instead that

8   District Attorneys do not address "claims *raised in the pleadings*." D. 115, 26 (emphasis added).

9   The suggestion that a judgment may stand against an Inequity Prong challenge so long as *some*

10  theory, no matter how frivolous, was in a *pleading* alongside an ultimately-prevailing theory, and

11  was not addressed in the motion for relief, plainly does not reflect the legal standard. PPMM

12  attempts to bolster its claim with *Guam Soc'y of Obstetricians & Gynecologists v. Guerrero*, No.

13  90-00013, 2023 U.S. Dist. LEXIS 51816, at *6 (D. Guam), but the movant there *did not contest*

14  the contention that *Dobbs* left unchanged the enjoined law's status as a "legal nullity." *Id.* at

15  *5–*7. Here, the Motion thoroughly explains that *Dobbs* destroyed the Judgment's basis, and in

16  this Reply *has* shown that PPMM fails to challenge that fact. Thus, *Guerrero* is not analogous,

17  and District Attorneys have met their burden, *not* attempted to shift it, *contra* D. 115, 25.

18      PPMM also argues that the Ninth Circuit requires a movant to "look beyond a simple change

19  in law in evaluating" Inequity Prong motions and show "that the changed conditions ma[de]

20  compliance with the [injunction] more onerous, unworkable, or detrimental to the public inter-

21  est." D. 115, 24 (quoting *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097–98), insinuating

22  *Rousseau* trumps *Agostini* because it "postdates" the Supreme Court's *Agostini*. While that

23  ignores the Supreme Court's authority, it makes no difference because PPMM overstates *Rous-*

**Reply in Support of Mot. for Relief**            10

1   *seau*, which requires a further showing of inequity only "*[i]f the moving party cites significantly

2   changed circumstances,*" as opposed to a change in the law undergirding the judgment. 985 F.3d

3   at 1097.[7] This limitation makes sense in light of the fact, discussed above, that under Supreme

4   Court precedent, prospective enforcement after such a change *is* inequity.

5       Rather than showing that the *Glick judgment* has a remaining constitutional basis, as

6   required, PPMM attempts to raise new claims against the S.B. 510 *law* at issue in the judgment.

7   D. 115, 26–28. But *new* challenges to the law (or old claims that the judgment did not rely on)

8   must be properly litigated. PPMM cannot use *this* litigation as an end-run around the judicial

9   process for *new* claims. Regardless, it is not clear how these purported "additional grounds"

10  show that "challenged sections remain unlawful." *See id.* at 26. PPMM mentions a 2019 act

11  removing restrictions, *id.* at 26–27, but fails to elucidate (1) how that would conflict with the

12  provisions *Glick* enjoined and (2) how it makes them unlawful. PPMM also suggests the possi-

13  bilities that "revival" of those provisions may not be "permissible in Nevada," that the Legisla-

14  ture may not want such revival, *id.* at 26–27, or that adjusting to same could be difficult, *id.* at

15  28–29, but these contentions amount only to disagreements with the relief required under Rule

16  60(b)(5).[8] PPMM raises the Nevada Equal Rights Amendment, but concedes that any effect it

17      [7]This meaning is plain in the full context: "A party requesting modification must show 'a

18  significant change either in factual conditions or in the law warranting modification of the
    decree.' . . . If the moving party cites significantly changed circumstances . . . ." *Id.* (citation
    omitted). Contrasting these sentences, it is plain that "changed circumstances" references

19  "change[d] . . . factual conditions." If the latter sentence's limiting "if" clause was intended to
    cover change in *law* as well, it would be nonsensically redundant. This reading is also compelled

20  when we properly assume the court did not intend to directly contradict the Supreme Court's
    "unbroken line of . . . cases mak[ing] clear that it is an abuse of discretion to deny a modification

21  of an injunction after the [underlying] law . . . changes to permit what was previously forbidden."
    *EPA*, 978 F.3d 713–14; *see also id.* at 715 (Ninth Circuit and other courts holding same).

22      [8]This is rooted in PPMM's belief that a showing of further inequities is required. This is

23  wrong (so theoretical implementation problems are not grounds for denying relief), but this Court
    may order further briefing to address any questions it may have regarding implementation.

**Reply in Support of Mot. for Relief**          11

1  could have is "unclear." *Id.* at 27. This shows the infirmity of PPMM's position: the fact that

2  certain issues could *theoretically* still be raised against the law at issue in a judgment challenged

3  under Rule 60(b)(5) surely cannot justify upholding a judgment whose *actual* legal basis is

4  gone—such an understanding of the rule is in direct contrast to Supreme Court precedent.

5      District Attorneys have shown that under Supreme Court precedent, continued enforcement

6  of an injunction whose legal basis is gone *is* inequity detrimental to the public interest, and that

7  PPMM fails to prove otherwise. While PPMM raises various public interest concerns, *id.* at

8  28–29, it fails to argue that continued enforcement of a judgment now lacking a lawful basis

9  *would* serve the public interest, thus ignoring the *chief* concern. Nor does PPMM address the

10  Motion's further showing in this regard. *See* D. 83, 23–24. So PPMM's assertion that District

11  Attorneys have *not* adequately addressed the public interest, D. 115, 28, is baseless.

12                          **IV. PPMM lacks third-party standing.**

13      Finally, the Motion notes that *Dobbs* "abrogated cases recognizing third-party standing in

14  abortion cases, [597 U.S. 215, 286–87], providing another reason to vacate the Judgment because

15  Plaintiffs cannot assert patients' rights." D. 83, 11. PPMM has not disputed this basis to vacate

16  the Judgment, nor has it alleged any basis to support third-party or organizational standing, *see*

17  *FDA v. All. for Hippocratic Med.*, Nos. 23-235, 23-236, 2024 U.S. LEXIS 2604, at *15–*40

18  (June 13, 2024), so that is another basis on which this Court should vacate the Judgment.

19                              **V. Conclusion.**

20      PPMM has failed to cast doubt on the relief to which District Attorneys are entitled. For all

21  of the reasons set forth above and in the Memorandum of Points and Authorities accompanying

22  the Motion, this Court should grant the Motion.

23

**Reply in Support of Mot. for Relief**          12

Dated: June 21, 2024

Respectfully submitted,

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org

*Designated Resident Nevada Counsel for
Defendants Woodbury and Rye*

/s/ James Bopp, Jr.
James Bopp, Jr. (IN Bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
    rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar #87799)*
    jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
The National Building
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Admitted pro hac vice.

*Counsel for Defendants Woodbury and Rye*

**Reply in Support of Mot. for Relief**        13

## Certificate of Service

I hereby certify that on this 21st day of June, 2024, a true and correct copy of this Reply in Support of Motion for Relief from Judgment Under Fed. R. Civ. P. 60(b)(5) was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By /s/ James Bopp, Jr.
James Bopp, Jr. (IN Bar #2838-84)*
jboppjr@aol.com
THE BOPP LAW FIRM, PC
The National Building
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Admitted pro hac vice.

*Counsel for Defendants Woodbury and Rye*

**Attachment 14**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Order for *Marroquin* Briefing, Dkt. No. 122**

# United States District Court
## District of Nevada (Reno)
## CIVIL DOCKET FOR CASE #: 3:85-cv-00331-ART-CSD

Glick et al v. McKay et al

Assigned to: District Judge Anne R. Traum
Referred to: Magistrate Judge Craig S. Denney
Case in other court: Ninth Circuit, 85-02335
Cause: 42:1983 Civil Rights Act

Date Filed: 06/28/1985
Date Terminated: 09/06/1985
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Eugene Glick**
*M.D.*

represented by **Stanley Howard Brown , Jr.**
Stanley H. Brown, Jr., Chartered
127 E. Liberty Street
Reno, NV 89501
775-337-8800
Fax: 775-337-8805
Email: shbjrlaw@gmail.com
*TERMINATED: 01/05/2024*
*LEAD ATTORNEY*

### Plaintiff

**Planned Parenthood of Washoe County**

represented by **Stanley Howard Brown , Jr.**
(See above for address)
*TERMINATED: 01/05/2024*
*LEAD ATTORNEY*

V.

### Movant

**Planned Parenthood Mar Monte, Inc.**

represented by **Daniel Bravo**
Bravo Schrager, LLP
6675 South Tenaya Way
Suite 200
Las Vegas, NV 89113
702-996-1724
Email: daniel@bravoschrager.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hannah Swanson**
Planned Parenthood Federation of America
1110 Vermont Ave NW
Suite 300
Washington, DC 20005
202-803-4030
Email: hannah.swanson@ppfa.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| 08/06/2024 | 119 | ORDER approving ECF No. 118 Verified Petition for Permission to Practice Pro Hac Vice Attorney as to Jessica Goldberg for Amicus If/When/How et al Amici Curaie and approving Designation of Local Counsel as to Laura FitzSimmons. Signed by District Judge Anne R. Traum on 8/6/2024. <br> Any Attorney not yet registered with the Court's e-filng system shall register on the PACER website www.pacer.gov <br> (Copies have been distributed pursuant to the NEF - GA) (Entered: 08/06/2024) |
|---|---|---|
| 09/13/2024 | 120 | MINUTE ORDER IN CHAMBERS of the Honorable District Judge Anne R. Traum on 9/13/2024. By Deputy Clerk: Katie Lynn Sutherland. <br><br> Oral argument on 83 Motion of Defendants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, for Relief from Judgment Under Fed. R. Civ. P. 60(b)(5) is scheduled for Tuesday, October 29, 2024, at 11:00 a.m. before U.S. District Judge Anne R. Traum in Reno Courtroom 6. <br><br> (no image attached) (Copies have been distributed pursuant to the NEF - KLS) (Entered: 09/13/2024) |
| 09/30/2024 | 121 | MOTION for Leave to File Document re 115 Response by Movant Planned Parenthood Mar Monte, Inc.. Responses due by 10/14/2024. (Schrager, Bradley) (presiding) (Entered: 09/30/2024) |
| 09/30/2024 | 122 | MINUTE ORDER IN CHAMBERS of the Honorable District Judge Anne R. Traum on 9/30/2024. <br><br> Plaintiff moved for leave to file notice of supplemental authority and supporting memorandum. (ECF No. 121 .) Good cause appearing, Plaintiff's motion is granted. Both parties are ordered to submit supplemental briefing regarding the Ninth Circuit's decision in Marroquin v. City of Los Angeles, 112 F.4th 1204 (9th Cir. 2024). Plaintiff shall submit supplemental briefing by October 10, 2024. Defendants shall submit responsive supplemental briefing by October 20, 2024. <br><br> (no image attached) (Copies have been distributed pursuant to the NEF - KGW) (Entered: 09/30/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/07/2024 08:16:03 | | |
| **PACER Login:** | jmaughon | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:85-cv-00331-ART-CSD |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

**Attachment 15**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**PPMM *Marroquin* Briefing, Dkt. No. 123**

BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
BRAVO SCHRAGER LLP
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

HANNAH SWANSON, ESQ. *(admitted pro hac vice)*
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave NW, Suite 300
Washington, DC 20005
Email: hannah.swanson@ppfa.org

VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
PLANNED PARENTHOOD FEDERATION OF AMERICA
123 William Street, Floor 9
New York, NY 10038
Email: valentina.defex@ppfa.org
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Planned Parenthood Mar Monte, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Aaron Ford, in his capacity as Nevada Attorney General, et al., <br><br> Defendants | Case No.: 3:85-cv-00331-ART-CSD <br><br><br> **SUPPLEMENTAL BRIEF OF PLAINTIFF PLANNED PARENTHOOD MAR MONTE, INC.** |

Plaintiff Planned Parenthood Mar Monte, Inc. ("PPMM") submits this supplemental brief in response to the Court's order of September 30, 2024, directing the parties to file briefs "regarding the Ninth Circuit's decision in *Marroquin v. City of Los Angeles*, 112 F.4th 1204 (9th Cir. 2024)." Minute Order, ECF No. 122.

**ARGUMENT**

The Ninth Circuit's decision in *Marroquin v. City of Los Angeles*, 112 F.4th 1204 (9th Cir. 2024) confirms an argument advanced in Section I of PPMM's Opposition to Movants'[1] Rule 60(b) Motion: that this Court should begin its inquiry into whether Movants have satisfied their burden to seek 60(b) relief by determining the appropriate rule subsection that applies to each argument raised by Movants based on the substance of the argument, regardless of the label that Movants assign to it. *See* Pl.'s Opp'n to Rule 60(B) Mot. of Defs. Jason D. Woodbury, Carson City District Att'y, and Stephen B. Rye, Lyon County District Att'y ("Opp'n Rule 60(B) Mot.") 6–7, ECF No. 115.

In *Marroquin*, the Ninth Circuit expressly applied the rule illustrated by the U.S. Supreme Court's decision in *Kemp* and numerous prior decisions of lower courts: "a district court should consider a Rule 60(b) motion under the subsection that most naturally applies to the motion's substance, regardless of the label used." *Marroquin*, 112 F.4th at 1216; *see e.g.*, *Kemp v. United States*, 596 U.S. 528, 532 (2022) ("Kemp invoked Rule 60(b)(6), but his motion arguably sought reopening based on a kind of 'mistake' covered by Rule 60(b)(1)."); *Matter of Diodato*, No. 2:19-BK-09775-EPB, 2023 WL 6119635, at *8 (D. Ariz. Sept. 19, 2023) ("When determining which provision of Rule 60(b) a reconsideration motion implicates, a reviewing court must undertake a fact-intensive analysis that includes evaluating the language of the motion and the parties' and judge's actions and considering, but not treating as dispositive, the subdivision of Rule 60(b) the movant invoked."). Irrespective of how a party styles an argument, the argument's substance dictates the analysis this Court must employ to determine whether a party has met its burden warranting relief under Rule 60.

As explained in PPMM's Opposition, many of the arguments advanced by

---

[1] To the date of this filing, no other Defendants have joined Movants' efforts to seek Rule 60(b) relief.

2

1   Movants should be construed under subsections of Rule 60 other than (b)(5), despite

2   that Movants invoke (b)(5)'s "prospective[] [enforcement] is no longer equitable"

3   clause specifically. *See* Fed. R. Civ. P. 60(b)(5); Opp'n Rule 60(B) Mot. 6–7, ECF No.

4   115. While Rule 60(b) permits a party to seek relief from final judgment, the rule

5   contains a deliberately limited set of circumstances allowing a party to do so. Fed. R.

6   Civ. P. 60(b), (c); *Kemp*, 596 U.S. at 533; *Washington v. Ryan*, 833 F.3d 1087, 1091

7   (9th Cir. 2016) (en banc) (cautioning that Rule 60(b) relief is appropriate in a "narrow

8   band of cases"). Each subsection of Rule 60(b) is subject to a timeliness requirement

9   set forth in Rule 60(c): for some subsections, that deadline must not exceed one year,

10  but all subsections require filing "within a reasonable time." *Kemp*, 596 U.S. at 533;

11  Fed. R. Civ. P. 60(c). In *Marroquin*, the Ninth Circuit emphasized ways in which the

12  "plain language" of Rule 60 includes "express limitation[s]" that serve the "principl[e]

13  that litigation must be brought to an end," rather than language "emphasiz[ing]

14  seeking justice without limitation and without prioritizing finality." 112 F.4th at

15  1215–16. Rule 60(c)'s timeliness requirements are such "express limitation[s]." *See*

16  *id.* at 1216. For this reason, the Court's inquiry when evaluating whether a party has

17  met its burden under Rule 60—including the applicable filing deadline under Rule

18  60(c)—begins with identifying the subsection that applies to the substance of the

19  argument raised.

20      Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence,

21  surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Although the Ninth Circuit

22  had long recognized that "mistake" included judicial errors, after the U.S. Supreme

23  Court's decision in *Kemp*, all motions seeking relief under Rule 60 that argue a court

24  erred in applying existing case law must be treated as seeking relief under (b)(1). *See*

25  *Kemp*, 596 U.S. at 533–34 ("As a matter of text, structure, and history . . . a 'mistake'

26  under Rule 60(b)(1) . . . covers all mistakes of law made by a judge . . . we see no

27  reason to limit Rule 60(b)(1) to 'obvious' legal mistakes[.]"). In *Kemp*, the Supreme

28

1  Court declined to read Rule 60(b)(1) so narrowly as to apply only to "obvious" legal
2  errors that consisted of "the 'failure to apply unambiguous law to record facts,'"
3  instead holding that Rule 60(b)(1) covers a broader interpretation of "mistakes"
4  including "all mistakes of law made by a judge." *Kemp*, 596 U.S. at 533–34; *see also*
5  *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999)
6  (holding that Rule 60(b)(1) encompasses motions seeking to correct errors of law). To
7  the extent that Movants have raised arguments that allege that the decisions in *Glick*
8  *v. McKay*, 937 F.2d 434 (9th Cir. 1991), and *Glick v. McKay*, 616 F.Supp. 322 (D. Nev.
9  1985), represent judicial "mistakes" based on an alleged failure to properly apply
10 existing case law, Movants' arguments fall squarely within Rule 60(b)(1). Because in
11 substance these arguments contend that the courts in the original *Glick* decisions
12 failed to properly apply existing precedent, they constitute precisely the type of
13 judicial error the Supreme Court discussed in *Kemp*, and are therefore subject to the
14 corresponding Rule 60(c)(1) requirements and limitations.

15      Rule 60(b)(5)'s "earlier judgment that has been reversed or vacated" clause also
16 requires a separate legal analysis than that dictated by the "prospective[]
17 [enforcement] is no longer equitable" clause found within the same subsection of the
18 rule. *See* Fed. R. Civ. P. 60(b)(5). In evaluating arguments that seek relief under the
19 former, courts examine whether the reversal of a prior judgment removes the
20 underpinnings of a challenged judgment. "This ground is limited to cases in which
21 the present judgment is based on the prior judgment in the sense of claim or issue
22 preclusion. It does not apply merely because a case relied on as precedent by the court
23 in rendering the present judgment has since been reversed." 11 Charles Alan Wright,
24 Arthur. R. Miller, & M. Kane, *Federal Practice and Procedure* § 2863 (3d ed. 2022);
25 *see also Cal. Med. Ass'n v. Shalala*, 207 F.3d 575, 578 (9th Cir. 2000); *Tomlin v.*
26 *McDaniel*, 865 F.2d 209, 211 (9th Cir. 1989) ("[T]he relation between the present
27 judgment and the prior judgment must . . . be closer than that of a later case relying

28

on the precedent of an earlier case; the fact that the prior case provides a precedent for the later one is not sufficient."), *overruled on other grounds by Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). Arguments that the underpinnings of *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991), have been eroded, should, in many circumstances, be construed under this clause of Rule 60(b)(5) rather than under the "prospective enforcement" clause invoked by Movants.

## CONCLUSION

For the foregoing reasons, and those set forth in PPMM's Opposition, Movants' Rule 60(b) motion should be denied.

Dated this 10th day of October, 2024.

**BRAVO SCHRAGER LLP**


By     */s/ Bradley S. Schrager*
          BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
          DANIEL BRAVO, ESQ. (SBN 13078)
          6675 South Tenaya Way, Suite 200
          Las Vegas, Nevada 89113
          Tele.: (702) 996-1724
          Email: bradley@bravoschrager.com
          Email: daniel@bravoschrager.com

          HANNAH SWANSON, ESQ. *(admitted pro hac vice)*
          PLANNED PARENTHOOD FEDERATION OF AMERICA
          1110 Vermont Ave NW, Suite 300
          Washington, DC 20005
          Email: hannah.swanson@ppfa.org

          VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
          PLANNED PARENTHOOD FEDERATION OF AMERICA
          123 William Street, Floor 9
          New York, NY 10038
          Email: valentina.defex@ppfa.org

          *Attorneys for Movant,*
          *Planned Parenthood Mar Monte, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 10th day of October, 2024, a true and correct copy of this **SUPPLEMENTAL BRIEF OF PLAINTIFF PLANNED PARENTHOOD MAR MONTE, INC.** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.


By   */s/ Dannielle Fresaquez*
         Dannielle Fresquez, an Employee of
         BRAVO SCHRAGER LLP

**Attachment 16**

**In re: Woodbury, et al. v. United States District
Court for the District of Nevada**

**On Petition for Writ of Mandamus in
Case No. 3:85-cv-331-ART-CSD**

**District Attorneys' *Marroquin* Briefing, Dkt. No. 124**

1   Emily C. Mimnaugh (NV Bar #15287)
    PACIFIC JUSTICE INSTITUTE, Nevada Office
2   1580 Grand Point Way #33171
    Reno, NV 89533
3   Telephone: (916) 857-6900
    Fax: (916) 857-6902
4   emimnaugh@pji.org
    *Designated Resident Nevada Counsel for Defendants Woodbury and Rye*
5   James Bopp, Jr. (IN Bar #2838-84)*
        jboppjr@aol.com
6   Richard E. Coleson (IN Bar #11527-70)*
        rcoleson@bopplaw.com
7   Joseph D. Maughon (VA Bar #87799)*
        jmaughon@bopplaw.com
8   THE BOPP LAW FIRM, PC
    1 South Sixth St.
9   Terre Haute, IN 47807-3510
    Telephone: (812) 232-2434
10  *Admitted pro hac vice.
    *Counsel for Defendants Woodbury and Rye*

11

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

12

13  Planned Parenthood Mar Monte, Inc.,

                                    Plaintiff,

14      v.

Aaron D. Ford, Nevada Attorney Gen.; Christopher J.
Hicks, Washoe County Dist. Attorney; Jason D. Wood-
bury, Carson City Dist. Attorney; Arthur E. Mallory,
Churchill County Dist. Attorney; Steven Wolfson,
Clark County Dist. Attorney; Mark B. Jackson, Doug-
las County Dist. Attorney; Tyler Ingram, Elko County
Dist. Attorney; Robert E. Glennen, III, Esmeralda
County Dist. Attorney; Theodore Beutel, Eureka
County Dist. Attorney; Kevin Pasquale, Humboldt
County Dist. Attorney; William E. Schaeffer, Lander
County Dist. Attorney; Dylan V. Frehner, Lincoln
County Dist. Attorney; Stephen B. Rye, Lyon County
Dist. Attorney; T. Jaren Stanton, Mineral County Dist.
Attorney; Brian T. Kunzi, Nye County Dist. Attorney;
Bryce R. Shields, Pershing County Dist. Attorney;
Anne Langer, Storey County Dist. Attorney; James S.
Beecher, White Pine County Dist. Attorney,

                                    Defendants.

Case No. **3:85-cv-00331-ART-CSD**

**Responsive Supplemental Brief of
Defendants Woodbury and Rye**

1    Pursuant to the Court's order directing Defendants to submit "responsive supplemental

2    briefing" concerning "the Ninth Circuit's decision in Marroquin v. City of Los Angeles, 112

3    F.4th 1204 (9th Cir. 2024)," D. 122, Defendants Jason D. Woodbury, Carson City District Attor-

4    ney, and Stephen B. Rye, Lyon County District Attorney (collectively, "**District Attorneys**"),

5    submit this supplemental brief.

6                 **I. PPMM moves past *Marroquin* to take a second bite at unrelated arguments.**

7    Plaintiff, Planned Parenthood Mar Monte ("**PPMM**"), moved for leave to file *Marroquin v.*

8    *City of Los Angeles* as supplemental authority relevant to District Attorneys' Motion for Relief

9    from Judgment ("**Motion for Relief**"), D. 121, 1–2, yet PPMM used its supplemental brief only

10   to take a second bite at arguments unrelated to *Marroquin*. Despite its claim that *Marroquin*

11   constitutes appropriate supplemental authority because it is precedential, *id.* at 2–3, PPMM does

12   not show how *Marroquin* supplies new legal principles relevant to this case or sheds new light on

13   principles already discussed by the parties.

14   PPMM cites the substance of *Marroquin* only twice in its nearly three-and-a-half page

15   argument, and neither instance sheds new light on this case nor even relates meaningfully to a

16   question at issue. Telling is PPMM's baroque slice-and-dice approach to *Marroquin*'s language

17   in one of these two instances. PPMM cites *Marroquin* as

18       emphasiz[ing] ways in which the "plain language" of Rule 60 includes "express
         limitation[s]" that serve the "principl[e] that litigation must be brought to an end,"
19       rather than language "emphasiz[ing] seeking justice without limitation and without
         prioritizing finality." 112 F.4th at 1215–16. Rule 60(c)'s timeliness requirements are
20       such "express limitation[s]." *See id.* at 1216.

21   Supplemental Brief of Plaintiff Planned Parenthood Mar Monte, Inc. ("**PPMM's supplemental**

22   **brief**" or "**PPMM Suppl. Br.**"), D. 123, 3. The verbal patchwork used to create this all-encom-

23

**Responsive Suppl. Br. of Defs.**
**Woodbury and Rye**                              1

1  passing characterization vastly overstates *Marroquin*'s precise point about Rule 60(b)(2), a

2  subsection not at issue in this case.

3       Specifically, PPMM overstates *Marroquin* in at least four ways in those two short sentences.

4  First, the "plain language" referenced by *Marroquin* is "the plain language of Rule 60(b)(2)."

5  *Marroquin*,  2024 U.S. App. LEXIS 21632 at *24. Second, the "express limitation" referenced

6  therein is a limitation of that same subsection. *Id.* at *26 ("Rule 60(b)(2) includes an express

7  limitation"). Third, the reference to the "principle[] that litigation must be brought to an end" is

8  *Marroquin*'s quotation from a hornbook in support of an assertion about the priorities of "the

9  drafters of Rule 60(b)(2)." *Id.* at *25 (citing 11 Charles Alan Wright et al., *Federal Practice and*

10  *Procedure* § 2851 (3d ed. June 2024 update)). And fourth, as one now might predict, the "rule"

11  referenced in *Marroquin*'s observation that "[t]he drafters of the rule could have emphasized

12  seeking justice without limitation and without prioritizing finality" is Rule 60(b)(2). *Id.* at

13  *25–26.

14       In short, every bit of *Marroquin* said by PPMM to highlight the importance of finality is

15  about a specific rule not at issue here, Rule 60(b)(2). Furthermore, even if this were not the case,

16  PPMM has already argued extensively concerning finality, *see* PPMM's Response in Opp'n to

17  Mot. for Relief ("**PPMM Opp'n**"), D. 115, 17–31 (employing "finality" as a general principle

18  throughout), and does not explain what previously unknown principles of finality *Marroquin*

19  *adds* to the picture.

20       The other instance in which PPMM substantively cites *Marroquin* is its quotation thereof for

21  the notion that "'a district court should consider a Rule 60(b) motion under the subsection that

22  most naturally applies to the motion's substance, regardless of the label used.'" D. 123, 2 (quot-

23  ing 112 F.4th at 1216). This principle is long-established, not a new precedent established by

**Responsive Suppl. Br. of Defs.**
**Woodbury and Rye**                     2

1   *Marroquin*.[1] Moreover, the quoted language is simply a restatement of what PPMM has already

2   argued under *Kemp v. United States*: that a court may "determine independently whether

3   Movants seek reopening on grounds other than those appearing on the face of the Rule 60(b)

4   motion,"[2] PPMM Opp'n, D. 115, 13 (citing *Kemp*, 596 U.S. 528, 532 (2022)). That a court may

5   do so is undisputed, and a significant percentage of the parties' Motion for Relief briefing was

6   dedicated to discussing which Rule 60(b) subsection applies. PPMM does not explain how

7   *Marroquin* adds anything to this briefing, but instead simply rehashes what it already argued and

8   what District Attorneys already refuted, as discussed below.

9   Accordingly, PPMM's supplemental brief is of little aid in understanding the relevance of

10   *Marroquin* to this case, and instead only repeats arguments already made by PPMM.

**II. PPMM's arguments fail.**

12   Generally, because PPMM simply uses its supplemental brief to reiterate arguments it has

13   already made and to which District Attorneys have already responded, this brief will not unneces-

14   sarily rehash those arguments. However, certain clarifications are necessary.[3]

15   PPMM argues at length concerning which Rule 60(b) subsection is applicable, arguing that

16   the controlling subsection is either Rule 60(b)(1) or the "earlier judgment" clause of Rule

---

[1] Indeed, PPMM bluntly concedes that *Marroquin*, far from supplying a new legal precedent or principle, merely "applied [a] rule" already "illustrated by the U.S. Supreme Court's decision in *Kemp* and numerous prior decisions of lower courts." D. 123, 2. *Marroquin* itself cites a case from over 50 years ago, *McKinney v. Boyle*, 404 F.2d 632, 634 (9th Cir. 1968), for the proposition quoted by PPMM. 2024 U.S. App. LEXIS 21632 at *27.

[2] Surely this does not mean that a court should consider subsections that do *not* naturally apply or should focus on those that apply *less* naturally.

[3] One such clarification concerns finality. Although PPMM emphasizes finality, its attempt to tie *Marroquin*'s discussion of finality under Rule 60(b)(2) to this case is a bridge too far, as discussed in Part I. District Attorneys discuss the limited way in which *Marroquin does* inform the "finality" analysis below, *infra* Part III, rather than in this section.

**Responsive Suppl. Br. of Defs.
Woodbury and Rye**                    3

1   60(b)(5) (under which relief from judgment is appropriate if the challenged judgment was "based

2   on an earlier judgment that has been reversed or vacated," Fed. R. Civ. P. 60(b)(5)). PPMM

3   Suppl. Br., D. 123, 3–5. PPMM presents those arguments as relevant to *Marroquin* as a result of

4   *Marroquin*'s discussion of "express limitation[s]." *Id.* at 3. However, as demonstrated above, that

5   aspect of *Marroquin* is *only* about Rule 60(b)(2), despite PPMM's slice-and-dice approach to

6   quoting it. Accordingly, this Court should decline to consider those arguments—viz.,the argu-

7   ments in the PPMM Suppl. Br., D. 123, beginning with, "For this reason," on line 16 of page 3,

8   through line 6 of page 5.

9       However, should the Court consider those arguments, District Attorneys note that they are

10  not persuasive in any event. First, PPMM argues that "[t]o the extent that [District Attorneys]

11  have raised arguments that allege that the decisions in *Glick v. McKay*, 937 F.2d 434 (9th Cir.

12  1991), and *Glick v. McKay*, 616 F.Supp. 322 (D. Nev. 1985), represent judicial 'mistakes' based

13  on an alleged *failure to properly apply existing case law*, [their] arguments fall squarely within

14  Rule 60(b)(1) . . . and are therefore subject to the corresponding Rule 60(c)(1) requirements and

15  limitations." D. 123 at 4 (emphasis added). The most noteworthy aspect of this argument is that it

16  concedes that the "mistake" contemplated in Rule 60(b)(1) is a mistake concerning "existing case

17  law," *id.*, which is precisely what District Attorneys noted in their Reply in Support of Motion

18  for Relief ("**District Attorneys' Reply**"), stating, "'Mistake' [under Rule 60(b)(1)] is a mistake

19  apparent at the time the challenged judgment was issued[.]" D. 116, 9. District Attorneys have

20  not argued such a real-time mistake existed, but have consistently demonstrated that a change in

21  law occurred *after* the judgment. *See, e.g.*, *id.* at 7 ("the fact that an earlier *question* had arisen

22  about *Glick*'s continuing validity does not mean the Motion should have been filed then"); 9–10

23  (citing D. 83, 15, 22) ("*Wicklund abrogated Glick*").

**Responsive Suppl. Br. of Defs.**
**Woodbury and Rye**                        4

1    PPMM also points out that the Supreme Court, in *Kemp*, declined to "limit Rule 60(b)(1) to

2    'obvious' legal mistakes," D. 123, 3 (citing 596 U.S. at 533–34), implying support for their

3    argument that District Attorneys should have sought relief after the issuance of *Lambert v.*

4    *Wicklund*, 520 U.S. 292 (1997), which abrogated *Glick*. *See* PPMM Opp'n, D. 115, 13–14. But

5    this does not change the fact, pointed out by District Attorneys and tacitly conceded by PPMM,

6    that *Wicklund* did not provide ripe grounds for a Rule 60 motion. D. 116, 7 ("although *Wicklund*

7    did abrogate *Glick* . . . , the Ninth Circuit said it did not . . . , so any *Wicklund*-based Rule 60(b)

8    motion would have been fruitless at that time, which PPMM tacitly concedes by claiming

9    [*Wicklund*] 'did not repudiate *Glick*'"[4] (citations omitted)). Accordingly, this aspect of *Kemp*

10   does not change the analysis that applies in this case.

11   PPMM's second argument requires less discussion, as PPMM ultimately argues against

12   itself. It claims that "[a]rguments that the underpinnings of *Glick v. McKay*, 937 F.2d 434 (9th

13   Cir. 1991), have been eroded, should, in many circumstances, be construed under th[e 'earlier

14   judgment'] clause of Rule 60(b)(5) rather than under the 'prospective enforcement' clause in-

15   voked by Movants." D. 123, 5. Although the Court should decline to consider this argument

16   because PPMM's ambiguous suggestion for the Court to apply its preferred analysis in "many

17   circumstances" lacks any meaningful development (as well as for the reasons discussed above),

18   the argument is ultimately self-defeating anyway. PPMM states specifically that the "earlier

19   judgment" clause applies only when the challenged "judgment is based on the prior judgment in

20   the sense of claim or issue preclusion" and "does *not* apply merely because a case relied on as

21   

22   
        [4]In light of this context, such a motion would have been considered a mere disagreement
        with the Court, rather than a showing of error, so District Attorneys' decision not to file such a
23      motion at that time simply demonstrates recognition of how Rule 60(b) operates, rather than a
        lack of timeliness. D. 116, 7, 7 n.5.

**Responsive Suppl. Br. of Defs.**
**Woodbury and Rye**                    5

1   precedent by the court in rendering the present judgment has since been reversed." *Id.* at 4 (em-

2   phasis added) (quoting 11 Charles Alan Wright, Arthur. R. Miller, & M. Kane, Federal Practice

3   and Procedure § 2863 (3d ed. 2022)). It is therefore surprising that PPMM raises this issue. *Glick*

4   was not based on *Roe* or *Casey* in a claim- or issue-preclusive sense, District Attorneys never

5   argued that it was, and PPMM has made no effort to argue that it was. There is no reason for this

6   Court to give any weight to this confusing and self-refuting argument.

7       In sum, should the Court even reach PPMM's arguments despite their lack of relation to

8   *Marroquin*, it should nonetheless find that they are without merit.

9                  **III. *Marroquin* counsels granting the relief sought.**

10      Because *Marroquin*'s discussion of Rule 60 is focused on a subsection not at issue here, its

11  relevance is limited. Nonetheless, the *Marroquin* opinion does serve to highlight important

12  differences between Rule 60(b)(2) and the rule at issue here, Rule 60(b)(5).

13      First, the inclusion of a "reasonable diligence" standard in Rule 60(b)(2) (under which relief

14  from a judgment may be granted if there is "newly discovered evidence that, with reasonable

15  diligence, could not have been discovered in time to move for a new trial") is the result of inten-

16  tional drafting. *Marroquin*, 2024 U.S. App. LEXIS 21632 at *25–*26. By the same token, the

17  omission of such a standard in Rule 60(b)(5) is intentional. Rule 60(b)(5) applies to require relief

18  from a judgment when "a significant change . . . in law renders continued enforcement detrimen-

19  tal to the public interest." District Attorneys' Reply, D. 116, 3 (quoting *Horne v. Flores*, 557 U.S.

20  433, 447 (2009) (quotation marks and citation omitted); citing *Agostini v. Felton*, 521 U.S. 203,

21  215, 237 (1997)). It goes without saying that a *future* change in law is not something that can be

22  discovered. Thus, rather than tying relief to whether something could be "discovered" with

23  "reasonable diligence," as in Rule 60(b)(2), Rule 60(b)(5) relief is tethered to the change in law

**Responsive Suppl. Br. of Defs.**
**Woodbury and Rye**                          6

1   itself. The drafters' decision not to directly tether such relief to something the moving party has

2   done is intentional, prudently allowing for relief even from a judgment that is not rendered ineq-

3   uitable via change of law until the distant future. District Attorneys acted diligently after the

4   change in law rendered by *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), District

5   Attorneys' Reply, D. 116, 7–8, so recognizing this intentional drafting demonstrates that the

6   requested relief should be granted.

7       Second, and relatedly, the drafters of Rule 60(b)(5) did not include a one-year cutoff like that

8   applied under Rule 60(c)(1) to Rule 60(b)(1), (2), and (3). The Supreme Court prescribed the

9   language of Rule 60(b)(2) "after a multi-step drafting process" and, with respect to that rule,

10  "chose to prioritize the judicial economy and finality that arises from restricting relief based on

11  newly discovered evidence to situations when a litigant is, in fact, reasonably diligent in discov-

12  ering that evidence." *Marroquin*,  2024 U.S. App. LEXIS 21632 at *25 (citations omitted). In

13  contrast, by the same process, the drafters decided to prioritize finality to a much lesser extent

14  under Rule 60(b)(5), opting to apply the Rule 60(c)'s "reasonable time" standard, as District

15  Attorneys have explained. District Attorneys' Reply, D. 116, 3.

16      Again, this prudent drafting recognizes that significant legal changes may occur years after

17  any given judgment, and leaves the flexibility necessary to obtain relief from such a judgment

18  that stands at odds with controlling law—in this case, caselaw rendered by the nation's highest

19  court. District Attorneys have also explained the many precedential cases anchoring this reason-

20  ableness standard to more concrete criteria and have shown that the Motion for Relief is well

21  within those criteria. *Id.* at 4–9. Accordingly, to the extent *Marroquin* "emphasized ways in

22  which" Rule 60's limitations "serve the principle that litigation must be brought to an end,"

23  PPMM Suppl. Br., D. 123, 3 (cleaned up) (citing 112 F.4th at 1215–16), it merely highlights the

**Responsive Suppl. Br. of Defs.**
**Woodbury and Rye**                          7

1    fact that, in cases in which a change in law renders prospective enforcement of a judgment ineq-

2    uitable, the criteria for analyzing the weight of the finality interest are much different from the

3    criteria for Rule 60(b)(1) cases. PPMM has presented no manner in which *Marroquin* casts doubt

4    on what District Attorneys explained concerning this, nor any manner in which it sheds new light

5    on the arguments presented by the parties. Accordingly, *Marroquin*'s emphasis on the intentional

6    drafting of Rule 60(b) again only further highlights the need for the requested relief and the

7    propriety of granting it.

8                              **IV. Conclusion.**

9        For all of the foregoing reasons, this Court should find the arguments in PPMM's supple-

10   mental brief meritless and should find that *Marroquin* provides further reason for the Court to

11   grant District Attorneys' Motion for Relief.

12

13

14

15

16

17

18

19

20

21

22

23

**Responsive Suppl. Br. of Defs.
Woodbury and Rye**                        8

Dated: October 18, 2024

Respectfully submitted,

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org

*Designated Resident Nevada Counsel for
Defendants Woodbury and Rye*

/s/ James Bopp, Jr.
_____
James Bopp, Jr. (IN Bar #2838-84)*
   jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
   rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar #87799)*
   jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
The National Building
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Admitted pro hac vice.

*Counsel for Defendants Woodbury and Rye*

**Responsive Suppl. Br. of Defs.
Woodbury and Rye**

9

## Certificate of Service

I hereby certify that on this 18th day of October, 2024, a true and correct copy of this

Responsive Supplemental Brief of Defendants Woodbury and Rye was served via the United

States District Court CM/ECF system on all parties or persons requiring notice.

By /s/ James Bopp, Jr.
James Bopp, Jr. (IN Bar #2838-84)*
jboppjr@aol.com
THE BOPP LAW FIRM, PC
The National Building
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Admitted pro hac vice.

*Counsel for Defendants Woodbury and Rye*

**Attachment 17**

**In re: Woodbury, et al. v. United States District Court for the District of Nevada**

**On Petition for Writ of Mandamus in Case No. 3:85-cv-331-ART-CSD**

**Transcript of Oral Argument, Oct. 29, 2024, Dkt. No. 128**

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 208 of 266
Case 3:85-cv-00331-ART-CSD   Document 128   Filed 11/12/24   Page 1 of 59

1

```
 1

 2                 IN THE UNITED STATES DISTRICT COURT

 3                   FOR THE DISTRICT OF NEVADA

 4

 5   Planned Parenthood Mar Monte, )
     Inc.,                         )   Civil Case No.
 6              Plaintiff,         )   3:85-cv-331-ART-CSD
                                   )
 7   vs.                           )
                                   )
 8   Aaron Ford, in his capacity   )   Tuesday, October 29, 2024
     as Nevada Attorney General,   )
 9   et al,                        )
                                   )
10              Defendants.        )
     _____

11

12

13                  TRANSCRIPT OF ORAL ARGUMENTS
                 HONORABLE ANNE R. TRAUM PRESIDING
14                 UNITED STATES DISTRICT COURT

15

16

17

18

19

20

21

22

23   Official Court Reporter:      Donna Prather
                                   400 S. Virginia Street
24                                 Reno, NV  89501

25   Proceedings taken by Certified Stenographic Reporter;
     transcribed using Computer-Assisted Translation
```

```
 1                    A P P E A R A N C E S

 2   For the Plaintiff: Bradley S. Schrager, Esquire
                        Bravo Schrager LLP
 3                      6675 South Tenaya Way, Suite 200
                        Las Vegas, NV 89113
 4
                        Hannah Swanson
 5                      Planned Parenthood Federation of America
                        1110 Vermont Ave NW, Suite 300
 6                      Washington, DC 20005

 7                      Valentina De Fex
                        Planned Parenthood Federation of America
 8                      123 William St, Ste Floor 11
                        New York, NY 10038-3847
 9

10   For the Defendant: James Jr. Bopp
                        The Bopp Law Firm, PC
11                      1 South Sixth St.
                        Terre Haute, IN 47807
12
                        Emily Claire Mimnaugh
13                      Pacific Justice Institute
                        1580 Grand Point Way, Ste 33171
14                      Reno, NV 89533

15

16

17

18

19

20

21

22

23

24

25
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 210 of 266
Case 3:85-cv-00331-ART-CSD   Document 128   Filed 11/12/24   Page 3 of 59

3

```
 1           (Proceedings commenced at 11:01 a.m.)

 2           THE CLERK:  The United States District Court for the

 3   District of Nevada is now in session, the Honorable Anne Traum

 4   presiding.

 5           This is 3:85-cv-331-ART-CSD, Planned Parenthood Mar

 6   Monte, Incorporated, v. Aaron D. Ford, et al.

 7           Counsel, please state your appearances for the

 8   record.

 9           MS. De FEX:  Good morning, Your Honor.  Valentina De

10   Fex from Planned Parenthood Federation of America on behalf of

11   Planned Parenthood Mar Monte.

12           MS. SWANSON:  Good morning.  Hannah Swanson also

13   from Planned Parenthood Federation of America, also Planned

14   Parenthood Mar Monte.

15           MR. SCHRAGER:  Your Honor, Bradley Schrager, local

16   counsel for my colleagues.

17           THE COURT:  Good morning.

18           MS. MIMNAUGH:  Good morning, Your Honor.  Emily

19   Mimnaugh here on behalf of the moving defendants.

20           MR. BOPP:  Your Honor, Jim Bopp here on behalf of

21   the two district attorneys that are makers of the motion.

22           THE COURT:  Okay.  And then of you-all, is one of

23   you local counsel?

24           MS. MIMNAUGH:  I am local counsel, Your Honor.

25           THE COURT:  Okay.  Very good.
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 211 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 4 of 59

4

1          So we're here on Defendants' motion for relief from

2   judgment.  I just want to sort of just outline what I have in

3   mind, which is I would like to have an oral argument.  It's

4   Defendants' motion, so I'll let defendants' go first and also

5   have the last word.  I'm hoping that we can stick to a

6   schedule, but I know there's a lot to get through, of roughly

7   30 to 40 minutes total per side.

8          And then just -- I'm not sure if you-all are -- if

9   there's going to be one person speaking for each side, so I

10  just wanted to give a little -- fairly obvious road map of

11  where I see things going in terms of we have the Rule 60

12  threshold questions of which portion of Rule 60(b) applies and

13  whether the motion for relief from judgment is timely.

14         Then I think we, probably just working beyond that,

15  need to address standing.  And then assuming that Rule 60

16  would allow -- assuming issues 1 and 2 -- right? -- that we

17  keep going to address the practical effects of lifting an

18  injunction given the history of this law.  And then perhaps

19  what other constitutional grounds there might be to have an

20  injunction -- okay? -- and whether -- and what the next steps

21  would be to address those kinds of things, whether that is

22  just supplemental briefing or a need to amend the complaint or

23  to file a new motion for preliminary injunction.

24         So I just wanted to get that out there in case

25  you-all are dividing your time and kind of to anticipate my

Case: 24-7113  11/21/2024, DktEntry: 1.1, Page 212 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 5 of 59

5

 1  questioning.

 2          Okay.  I'm ready to begin.  So Defense, would you

 3  like to approach the podium.

 4          MR. BOPP:  I would, thank you, Your Honor.

 5          And I'll be the only one speaking on behalf of

 6  Woodbury, who is a Carson City District Attorney, and Stephen

 7  Rye, who is the Lyon County District Attorney, who are the

 8  Movants of the motion.  Of course, they are defendants in the

 9  underlying litigation under which a permanent injunction was

10  issued, and they are seeking to have that injunction vacated.

11          Of course, you explained, the motion before the

12  Court is a Rule 60(b)(5) motion for relief from a prospective

13  judgment enjoining the enforcement of Nevada's parental notice

14  of abortion statute.  That is one of the three grounds in

15  6(b)(5), and that is the one that we are relying upon.

16          The statute, of course, was adopted to effectuate

17  important interests in involving parents in the important

18  decision of their minor child regarding an abortion.  One of

19  those interests is the constitutional right of parents to

20  supervise the upbringing and education of their children --

21          THE COURT:  Can I just stop you so we can walk

22  through your Rule 60 arguments and stay on that.

23          So you argue in your motion -- you're claiming that

24  this entire -- that your motion is timely and governed by

25  Rule 60(b)(5); correct?

```
 1              MR. BOPP:  Yes.

 2              THE COURT:  Okay.  You make an argument that --

 3    Wicklund v. Lambert abrogated Glick.  Can you explain why

 4    you're making that argument and how it's helpful to you.

 5              MR. BOPP:  Well, our principal -- of course, our

 6    principal argument is that Dobbs held that there's no

 7    constitutional right to abortion.  The district court -- this

 8    district court and the Ninth Circuit in affirming the PI,

 9    relied exclusively upon Roe and its progeny, Bellotti and

10    Akron II, and that the holdings of that case which triggered

11    strict scrutiny, recognition of right to abortion in minor

12    children, et cetera.  And the need for a bypass procedure

13    regarding parental notice all evaporated upon Dobbs, and,

14    therefore, the legal basis for -- and justification for the

15    ruling is no longer good law.  And when that happens, the

16    injunctions should be lifted.  And the reason is pretty

17    simple.  That is, in order to have an ongoing injunction there

18    has to be an ongoing violation of federal law.

19              And without the support of the right to abortion,

20    use of strict scrutiny, et cetera, et cetera, there is no

21    basis for the injunction.  And the statute going into effect

22    and going forward does not violate federal law under this --

23    the reasoning of this Court.

24              Now, there may be, you know, other claims that other

25    people want to make, or they want to sue the statute under,
```

```
1    you know, state law.  There's all sorts of things that they've

2    posited, none of which have ever come to pass.

3              THE COURT:  I just want you to answer my question.

4              MR. BOPP:  I'm sorry, I went too far.

5              THE COURT:  No, you didn't go far enough.

6              I want you to answer my question of why you make the

7    argument that Wicklund v. Lambert abrogated Glick.  Because

8    the trouble with that argument is if -- you make an argument

9    that Glick has been abrogated, but you make an argument that

10   it was abrogated in 1997 as confirmed by Lambert.  So I want

11   to explore that argument.  And then what -- in terms of what

12   Lambert actually said.

13             But also, I am just confused.  If this statute was

14   legal before Dobbs, then why does Dobbs change?

15             I think you're arguing -- I think that the import --

16   I thought the import -- one of the imports of your argument

17   that Lambert abrogated Glick, if Lambert abrogated Glick, then

18   this statute would have been constitutional a long time ago in

19   1997.

20             MR. BOPP:  Well, if that would have been true, it

21   could have been challenged at the time and under

22   Rule 60(b)(5).  And, of course, you would consider that as

23   your only argument.  The problem was, of course, there's a

24   subsequent decision of the Ninth Circuit.  It came very

25   quickly thereafter, where in the footnote -- and this is the
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 215 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 8 of 59

8

1    *Lawall* case, L-a-w-a-l-l in footnote 9, that said that the

2    supreme court decision did not abrogate *Glick* because it only

3    dealt with the issue.  And there were two problems with the

4    bypass.  One is that the best interests *Glick* held had to be

5    considered generally not the best interest in giving parental

6    notification.  That is what the supreme court spoke to

7    specifically regarding the Montana case and the reliance by

8    the Ninth Circuit in the Montana case on *Glick* that that was

9    wrong.

10          And -- but what the footnote said was that but the

11   supreme court didn't deal with the second ground, which was

12   the lack of guaranteed expedition of the trial court's

13   decision considering the petition.  And so you have very

14   quickly after the supreme court's decision which said it

15   abrogated *Glick* that the Ninth Circuit disagreed with that and

16   that that infirmity of the Nevada statute would still render

17   the *Glick* injunction lawful and not overcome by the supreme

18   court's subsequent decision.

19          So, if that is the -- so that's the problem with our

20   analysis, if you will, is that we have to deal with and

21   understand the subsequent decision of the Ninth Circuit in

22   footnote 9 which denied what the supreme court had apparently

23   held.  I think that that means it's perfectly reasonable for

24   the district attorneys at the time to say how can we rely on

25   the supreme court decision abrogating *Glick* if the Ninth

```
 1   Circuit says they didn't subsequently?
 2          So, I mean, there was enough, certainly, uncertainty
 3   or questioning of the results of those cases -- all right? --
 4   is that it's perfectly understandable that the district
 5   attorneys didn't try to overcome the injunction.
 6          THE COURT:  So let me just pause for a minute.
 7          MR. BOPP:  Yeah.
 8          THE COURT:  I just want to make sure I'm tracking
 9   what you're saying.  So I'm hearing that your (b)(5) argument
10   is really 100 percent about Dobbs.
11          MR. BOPP:  Well, there are two arguments under
12   (b)(5).  One is Dobbs, and the other is the effect of the
13   supreme court's decision in Wicklund where they said they
14   abrogated Glick.  So there's two possible bases.  And we rely
15   upon both.  I agree the one about Wicklund is muddy waters.
16   And that's why I prefer to focus on Dobbs, because I think
17   that's a slam dunk.  I don't see any rational basis to say
18   that the injunction in Glick regarding the Nevada statute
19   is -- can still be ongoing when the sole legal basis, which is
20   Roe v. Wade and its progeny has, evaporated.  It's nothing.
21          THE COURT:  Okay.  So I'm just going to come back to
22   Wicklund v. Lambert.
23          MR. BOPP:  Sure.
24          THE COURT:  So just to be clear, you -- your clients
25   didn't seek surepetition after Glick in this case?
```

1           MR. BOPP:  The predecessors of my clients in this

2   motion, they have been substituted.  They weren't district

3   attorneys at the time.  As I understand it, and this has been

4   part of the "delay," which is getting the record of this case

5   from the archives and trying to reconstruct it -- your clerk's

6   office did a great job, really worked on this to convert them

7   into electronic form -- then having to review everything.

8   What we understand to happen, which we cite at the beginning

9   of our brief, that after the case returned on -- from the

10  preliminary injunction being affirmed by the Ninth Circuit,

11  that there was a motion for summary judgment based upon the

12  fact -- and I agree with this, okay? -- that the Ninth Circuit

13  breached the merits -- okay? -- and said that under *Roe* the

14  bypass procedure failed and therefore the requirement of

15  notice and the bypass and criminal penalties all should be

16  enjoined and that that resolved -- that was the law of the

17  case -- resolved the issue.  No reason for the district court

18  to relitigate a decided issue on the merits of this matter.

19          And as my understanding, but I'm not really prepared

20  to swear to this -- but it's my understanding that no one

21  appealed that final judgment.  That is my understanding.

22          THE COURT:  And no one sought after *Wicklund v.*

23  *Lambert* to revisit the case and -- I mean, you're telling me

24  today that you understand -- it's your understanding that

25  *Wicklund v. Lambert* addressed the best interests part of the

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 218 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 11 of 59

11

```
 1   statute but did not address the expediency part?
 2             MR. BOPP:  The expedition of the trial court
 3   decision.
 4             THE COURT:  Because that's a little different than I
 5   think your briefing says.
 6             MR. BOPP:  No, I don't think so.
 7             THE COURT:  Your briefing talks about them being
 8   indistinguishable and makes a point of that, which maybe is an
 9   overstatement.  It seems like you're conceding that now.
10             MR. BOPP:  Well, no.  There's several aspects to
11   this issue that we have addressed.  What did Wicklund
12   specifically critique in the Montana or Glick decisions?  And
13   that was the best interest question.  They did not explicitly
14   address the expedition of the trial court decision.
15             THE COURT:  And the provision in the Montana law is
16   very different than the timing requirements in the Nevada law;
17   correct?
18             MR. BOPP:  Yes.
19             And what they -- but, what they said -- I'm now
20   looking at it from a different perspective -- was that the
21   Nevada/Montana statutes were -- I can't remember now -- is it
22   virtually identical or substantially identical? -- whatever.
23   And if you look at it from that perspective that they -- that
24   then they were -- because they ordered, you know, the Montana
25   statute to go back into effect.  All right?
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 219 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 12 of 59

12

1           THE COURT:  I understand.  But you're telling me the

2    Montana statute is different, has a different expediency

3    mechanism entirely than the Nevada law.  And the supreme court

4    was not addressing that part of the statute; it was addressing

5    best interests.

6           MR. BOPP:  There's two points.  One is what did they

7    explicitly address in the Montana statute or the *Glick*

8    statute?  Only the best interest.

9           They did explicitly explain that -- what the law is

10   on best interest.  Right?  They did not explicitly discuss the

11   expedition parts in either statute.  But what they said about

12   both statutes is that they are functionally identical to the

13   one approved in *Akron II*.

14          Now, if from that you could derive, okay, the view

15   that while they didn't explicitly talk about other aspects of

16   it, they had upheld the statute in *Akron II* and there -- and

17   since these are functionally -- I'm sorry I forget the word --

18   identical, then they were blessing the whole statute.  All

19   right?

20          Now, I agree that that's not crystal clear.  And,

21   you know --

22          THE COURT:  But would it have been clear enough --

23   you're telling me that your clients watched the supreme court

24   say that the best -- there's two grounds in *Glick* for

25   enjoining the statute that the Ninth Circuit approves.

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 220 of 266
Case 3:85-cv-00331-ART-CSD   Document 128   Filed 11/12/24   Page 13 of 59

13

```
 1            MR. BOPP:  Right.

 2            THE COURT:  One is best interests, and the other is

 3   expediency.  Your client doesn't make a trip to the supreme

 4   court.

 5            In 1997, the Wicklund -- the Lambert v. Wicklund

 6   does go to the supreme court.  And you're telling me now that

 7   there's a reading of what the supreme court said, which is

 8   that best interests -- that Glick was wrong, actually wrong,

 9   on best interests and that the -- in looking at the Montana

10   statute, that the Ninth Circuit was wrong to rely on Glick.

11            And then the supreme court, perhaps indicta, at

12   least with respect to expediency, says, these statutes are the

13   same and blesses the Montana statute.  But his clients don't

14   respond to that by going back to the Ninth Circuit and saying,

15   hey, we think this entire Glick thing was wrong after Lambert

16   v. Wicklund.  They didn't do anything; is that correct?

17            MR. BOPP:  No, they didn't that I know of.

18            THE COURT:  Okay.

19            MR. BOPP:  And our very discussion of this

20   illustrates the difficulty of reaching a conclusion about

21   exactly what did Wicklund do.  And there are two reasonable

22   ways of construing what they did.  And then when you put the

23   stake in the heart of any claim that Wicklund abrogated Glick

24   in the Lawall case in footnote 9, of course they didn't do

25   anything.  You know, they have to pay lawyers.  These people
```

1    are going to get -- if they win, going to want to get paid by

2    these clients.  I mean, you know, you don't go pushing that,

3    you know, at federal courts, you know, on whether or not their

4    orders are okay ex post facto unless you have a really serious

5    legal claim.

6              I mean, I would never advise a client to do that.

7    You're asking for it.  Okay?

8              You know, so -- and I think it's quite reasonable --

9    and understand, I think here that it's a reasonable period of

10   time.  Word "reasonable."  Did they file within a reasonable

11   period of time?

12             I think it's perfectly reasonable, as we have tried

13   to debate the meaning of these cases, that they have decided

14   not to risk it.

15             Now, I'm not saying there isn't a reasonable

16   argument, you know, in our favor.  I'm just saying their -- if

17   you want to judge their decision about whether their decision

18   was reasonable, I think it's perfectly reasonable for them to

19   say no.  You know, it's just too dicey.  It's too

20   questionable.

21             THE COURT:  I mean, at the same time, litigation is

22   not the only option to fix the statute; right?  I mean,

23   they're sitting on this -- you did say in your briefs that

24   *Wicklund* abrogated *Glick*.  And you say that in no uncertain

25   terms.  But today you're much more uncertain about the import

```
 1    of that.  But there's no question that Wicklund said that the

 2    best interest test in Glick was adequate.

 3              MR. BOPP:  Yeah.

 4              THE COURT:  Constitutionally adequate.

 5              MR. BOPP:  Yes.

 6              THE COURT:  So, I mean, your clients and others

 7    could have also gone to the legislature and said, look, the

 8    best interest is fine; just fix the expediency issue, and then

 9    we have a minor notification law that works.  But they didn't

10    do that for 27 years.

11              MR. BOPP:  I don't know whether they did that or

12    not.  And I haven't found any suggestion in any case that an

13    otherwise invalid prospective injunction where there is no

14    legal basis for it, no violation of federal law --

15              THE COURT:  But that's a Dobbs act claim.

16              MR. BOPP:  -- can be upheld --

17              THE COURT:  I understand.

18              MR. SCHRAGER:  -- because they didn't go talk to

19    their legislator.

20              THE COURT:  Okay.  But I'm understanding your

21    argument is a hundred percent about Dobbs and cannot be

22    Wicklund v. Lambert, because the Wicklund v. Lambert argument

23    just doesn't really hold.

24              MR. BOPP:  I appreciate your thoughts, and I

25    understand why you would come to that conclusion.  I am just a
```

1   little more bullish, a little more that there are reasonable

2   arguments on both sides.  But I understand what you're saying.

3   I share those trepidations about the argument.  It's too

4   complicated, it's too convoluted, and it is too gray for you

5   to expect them to do anything --

6                  THE COURT:  Okay.

7                  MR. BOPP:  -- about this.

8          And so --

9                  THE COURT:  They are the ones who are enjoined;

10  right?

11                 MR. BOPP:  Yes.

12                 THE COURT:  So the onus would be on them to do

13  something.

14                 MR. BOPP:  Well, yeah.  But aren't we also talking

15  about -- well, there were the potential.  Okay?  There were

16  two opportunities to do something back at *Wicklund* potentially

17  and at *Dobbs* certainly.  Okay?  They can still make *Dobbs* and

18  kiss this off.  I mean, what --

19                 THE COURT:  I understand that.

20                 MR. BOPP:  -- what effect does it have on the *Dobbs*

21  claim?

22                 THE COURT:  That's precisely what I'm asking.

23  That's exactly what I'm asking you and why I'm asking you

24  that.

25          Okay.  So let's talk about -- I think I understand

```
 1     your Dobbs argument much more -- it's much more sensible in

 2     terms of what you're trying to argue.

 3              MR. BOPP:  Much clearer.

 4              THE COURT:  Okay.  Let's talk a little bit about

 5     Becerra.  So what is your burden -- what do you think your

 6     burden is at this point to get relief from judgment?  If we

 7     say this whole thing is based on Dobbs --

 8              MR. BOPP:  Mm-hmm.

 9              THE COURT:  -- under rule (b)(5) -- under 60(b)(5)

10     that the delay in getting to court was 17 months, you say

11     that's a reasonable delay.

12              MR. BOPP:  Mm-hmm.

13              THE COURT:  What more then do you have to show to

14     meet your burden to say that you're entitled to relief from

15     judgment?

16              MR. BOPP:  Nothing.

17              THE COURT:  Based on?

18              MR. BOPP:  Numerous Ninth Circuit decisions that say

19     that all you need -- and supreme court decisions --

20              THE COURT:  Mm-hmm.

21              MR. BOPP:  -- is for something -- a perspective

22     injunction to be inequitable, that it is no longer based

23     upon -- supported by federal law.  In other words, one of the

24     quotes we use -- and there's several different ways of

25     approaching this.  You know, one court said well, the case
```

1    that you're basing the injunction on is overruled, your

2    justification evaporates.  Isn't that a pretty cool word?  You

3    know, evaporates.  And, then, also they talk about that an

4    ongoing prospective injunction has to be supported by an

5    ongoing violation of federal law.

6            Well, that disappeared with *Dobbs* as well.  So any

7    way -- any angle you look at it -- and they are quite clear

8    it's an abuse of discretion to fail to modify or otherwise

9    vacate an injunction that is no longer supported by good law.

10   And, they say, no other equitable factors are to be taken into

11   account.

12           The change in law that deprives the injunction of

13   any legal support is an equitable factor because it's

14   inequitable to enjoin people from doing something that doesn't

15   violate federal law.  Okay?

16           So now, there are other factors if you look at the

17   cases that talk about other things.  All right?  One of them

18   is leniency.  And this just springs up all over the place.

19   And that is because we are not disturbing what is happening in

20   the past -- okay? -- we're talking about whether or not

21   somebody shouldn't be free to do what the injunction

22   prohibits.  If there's no legal basis for that, they should be

23   free to do that.  All right?  Is that leniency on the timing

24   is given.  All right?

25           Now, second is is there a reasonable explanation?

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 226 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 19 of 59

19

1          Now, I do see that factor discussed in several

2    cases.  I don't see whether you have to provide the reasonable

3    explanation in your motion or wait until, you know, it's

4    challenged or whatever.  But in our reply, we set out the --

5    on page 7, we set out the reasons why there was a "delay," and

6    that's kind of a loaded word.  I don't think there was a

7    delay.  The problem was legion.  And in my 51 years of

8    practice I've never seen anything like this, where the first

9    thing we have to do is get the paper record out of the

10   archives, which turned out to be a daunting task, making sure

11   that we got all of the applicable pleadings, then figuring

12   out, you know, where the plaintiffs -- one died and the other

13   dissolved, on and on.  So there was a lot of prep work before

14   we could even file the motion.  And so I think that's

15   perfectly reasonable.

16          THE COURT:  Okay.  Let me ask you some questions

17   about lifting this injunction.

18          MR. BOPP:  Mm-hmm.

19          THE COURT:  What happens if this injunction is

20   lifted?

21          MR. BOPP:  Upon the lifting of the injunction, the

22   statute goes into effect and is --

23          THE COURT:  What does that mean that it goes into

24   effect in terms of -- just there's -- this is a statute that

25   never went into effect; correct?

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 227 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 20 of 59

20

1          MR. BOPP:  Right.

2          THE COURT:  And so there's never been any

3    implementing anything to make this statute work; right?

4          MR. BOPP:  Well, there's an order of the Nevada

5    Supreme Court regarding expedition and confidentiality.  So

6    there was action there.  Well, so be it.  I mean, this

7    statute, if not enjoined, had an effective date.  It was going

8    to go into effect.

9          Now, I think you ought to give due process notice to

10   people.

11         THE COURT:  What do you mean?

12         MR. BOPP:  In other words, I would say, you know, in

13   30 days or something the injunction is lifted; right?  So that

14   you allow for -- and I, you know, I represent a lot of clients

15   that are subject to campaign finance laws, in particular, and

16   other types of laws.  And having a notice that a particular

17   law is going into effect is important.  So if you want to give

18   two weeks or a month or something, I think that's reasonable

19   to do.  And that would also give some time for the state

20   supreme court or whoever that might want to look at this to

21   consider if there's something else that needs to be done to

22   implement it.

23         But otherwise, if nothing else happens, it goes into

24   effect.  Then the question is is it lawful?  Not under

25   *Dobbs* -- I mean, sorry, not under *Roe*, but on some other

1    thing -- okay? -- whatever that might be.  You know, Planned

2    Parenthood -- this Planned Parenthood now has agreed to take

3    up the mantle here.  Of course, if they think there are

4    federal claims, they can make their federal claims.  If they

5    think there are state claims, they can state the claims.  None

6    of that has anything to do with you lifting the injunction,

7    however, which is the context in which it was argued.

8            There's nothing about prospective.  Look, this

9    injunction is unlawful as it could possibly be.  You don't

10    bootstrap and say, well, you know, they filed other claims in

11    the original complaint.  Well, so what?  Nobody's dealt with

12    those.  Nobody's held that those justify enjoining the

13    statute.

14            Oh, well, there's the ERA.  There's this and that.

15    Well, fine, sue them.

16            THE COURT:  You just argued under *Becerra*, under

17    Ninth Circuit case law, and particularly *Becerra* has very

18    strong language about a change in law being essentially a

19    changed circumstance that is perhaps dispositive -- right? --

20    if the basis for the injunction is no longer valid.  But

21    there's other changes that are also changes in circumstances

22    that could make a real impact in terms of whether this law is

23    lawful and perhaps I would need to consider those in terms of

24    figuring out -- or consider a new motion to enjoin the law;

25    right?

1        Because they initially -- the plaintiff's complaint,

2   and I believe their motion, bridges a due process claim and an

3   equal protection claim, and I believe a First Amendment claim.

4   They could possibly seek an injunction based on their

5   complaint or amended complaint asserting one of those grounds,

6   you would agree with that.

7        MR. BOPP:  Oh, sure.  It brings lawsuits and

8   possibly -- again, I haven't researched this question in this

9   context, so.  But possibly, yeah, plausible that the law would

10  permit them to, you know, make a motion under some other claim

11  that they have made in their complaint or seek leave to amend

12  the complaint to add things.  I know they can do all -- I

13  think they can do those things.  However, that has nothing to

14  do with lifting the injunction.  I mean, the injunction right

15  now should be lifted.

16        THE COURT:  Okay.

17        MR. BOPP:  It is totally unlawful for you to enjoin

18  this statute.  There's no legal basis.  There's none.  So that

19  judgment needs to be lifted.  And if there are other remedies

20  that they think they can pursue or other claims they can make,

21  fine.

22        THE COURT:  Okay.  You mentioned in your briefing

23  standing.  I just want to visit -- spend a moment on that.

24  You mention that *Dobbs* -- you seem to imply that *Dobbs* made

25  some kind of change in the law on third-party standing.

```
 1              MR. BOPP:  Oh.

 2              THE COURT:  But in Dobbs there was no standing

 3     issue; right?

 4              MR. BOPP:  I agree.

 5              THE COURT:  That is, Dobbs is not a decision based

 6     on standing.  If standing were an issue, they would not have

 7     reached -- they would not have done what they did.

 8              MR. BOPP:  I appreciate you raising that.  I have no

 9     intention of pursuing that.

10              THE COURT:  Okay.  Very good.

11              So, let me just see.

12              MR. BOPP:  Well, let me be clear, because I hadn't

13     really thought that through and now I'm doing it.  I'm sorry I

14     answered so quickly.  We are not saying that they don't have

15     standing right now to defend their -- the judgment.  I think

16     they do.  Okay?  I think what that would -- could be raised,

17     that issue of third-party standing could be raised to another

18     claim that was made in a future lawsuit or they decide to try

19     to resurrect their alternate -- their other claims in this

20     case, whatever, that issue might be raised.  I don't think

21     it's pertinent now.

22              THE COURT:  I'm unclear on what change you think

23     that Dobbs effectuated on standing, if any.

24              MR. BOPP:  I'm not arguing that there was.

25              THE COURT:  Okay.
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 231 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 24 of 59

24

1          MR. BOPP:  I'm saying that that issue could be

2     raised, but it is -- if there's a basis in *Dobbs*.  And I don't

3     have an opinion on that.

4          THE COURT:  Okay.  Well, in *Dobbs* it does seem like

5     they were adjudicating a due process issue with the health

6     provider and -- I mean, with the health organization, Whole

7     Women's Health, and provider, those were the plaintiffs.  And

8     they also sort of dispensed with equal protection in *Dobbs*.

9     So it would seem, like, to be an issue with respect to due

10    process or equal protection.  I mean, I understand you can

11    raise standing at any time.

12         MR. BOPP:  Yeah.  And, unfortunately, you know, the

13    supreme court doesn't always answer all the questions that you

14    ask them to.  And I know that they were asked the standing

15    question.  For whatever reason, they chose not to answer it.

16    So be it.  I mean, what are we going to do?

17         THE COURT:  All right.  Let me just ask you a few

18    things about -- there's aspects of the statute that don't --

19    you know, we just talked a little bit about implementation.

20    And maybe you're right, if this injunction was lifted, that

21    someone would just have to deal with the implementation

22    issues.  But some of them might be statutory.  You know, for

23    example, there's no expediency requirement if a person

24    seeking -- there's no expediency built into this.  There's no

25    forms.

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 232 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 25 of 59

25

1              In other statutes, like on informed consent, there's

2     a specific part of the -- a specific stand-alone statute that

3     tasks, you know, the division of -- to create rules.  But you

4     admit that doesn't exist here, none of that implementation.

5              MR. BOPP:  That there's not a form?

6              THE COURT:  There's not a form.

7              MR. BOPP:  Correct.  There's not a form.

8              THE COURT:  Okay.  So it's a little unclear how a

9     girl seeking an abortion, a minor seeking an abortion, or a

10    provider possibly performing one, that -- it's not clear how

11    they comply with the statute.

12             MR. BOPP:  Well, okay.  If somebody thinks that that

13    is a constitutional violation, then they bring a claim against

14    it.  And now they won't be able to assert *Roe* or *Bellotti* --

15    okay? -- or *Akron II*.

16             THE COURT:  Okay.

17             MR. BOPP:  But, you know, I agree -- and/or probably

18    a rational basis.  I surely don't think we're unconstitutional

19    vagueness.  But, in any event, they just have to make the

20    claim.  We'll see what happens.

21             THE COURT:  Okay.  Anything else you'd like to talk

22    about before I hear from the other side?  You'll have an

23    opportunity for rebuttal.

24             MR. BOPP:  Just one other point on timeliness.

25    Another -- a third factor I want to mention is no prejudice to

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 233 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 26 of 59

26

1   Planned Parenthood.  That is a prominent figure in a number of

2   the cases and a factor that would argue toward being more

3   restrictive in what timeliness is.  All right?

4        Well, not only were they not prejudiced, they got a

5   benefit.  And that is to do abortions on children for

6   17 months without involving parents under the statute.  So

7   there's no prejudice.  But there would be prejudice to the

8   citizens of Nevada and the State of Nevada.  And that is what

9   I mentioned earlier.  That is, these are important federal --

10  constitutional and important children's best interest factors

11  that will continue to be deprived of children and parents as

12  long as the statute is enjoined.  So there's prejudice to the

13  public at large, to the people sought to be protected and

14  benefit from the statute.  And there's no prejudice -- in

15  fact, only benefit to Planned Parenthood.

16       Thank you.

17       THE COURT:  Thank you.

18       MS. De FEX:  Good morning, Your Honor.

19       THE COURT:  Good morning.

20       MS. De FEX:  Give me a second to get this microphone

21  at my height.

22       Good morning.  May it please the Court.  My name is

23  Valentina De Fex, and I'm here for Planned Parenthood

24  Federation of America, on behalf of Planned Parenthood Mar

25  Monte.

1          There's two reasons why this Court should deny this

2     60(b) motion.  First, all Defense's arguments are time-barred

3     by Rule 60(c) because they did not seek relief within

4     reasonable time.  Second, beyond their untimeliness,

5     Defendants just simply have not met their burden under

6     Rule 60(b) for this Court to take such remarkable steps and

7     enforce a law that has never gone into effect.

8          While I'm happy to answer any questions that this

9     Court may have, if I could have a second, I just want to talk

10    about what it is that Movants are asking for today.

11         Movants are asking that this Court force young

12    people that are pregnant and do not wish to carry the

13    pregnancy to term wake up tomorrow and be subjected to a

14    unworkable, untested, and complex judicial bypass scheme that

15    does not yet exist; one which all relevant stakeholders never

16    envisioned would go into effect.

17         Now, for almost 40 years this injunction has

18    guaranteed certainty.  But today, Movants are seeking a

19    political outcome guaranteeing chaos for young people,

20    families, providers, the judiciary within the state that is

21    tasked with administering the statute, and all impacted

22    stakeholders disrupting the stability that has long existed

23    since 1985, and we ask that this Court decline to do so.

24         Now, as to every step of the way under every

25    subsection that may apply under Rule 60(b), Movants have not

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 235 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 28 of 59

28

```
1    met any of their burden warranting 60(b) relief.  As to their

2    (b)(1) arguments, all of their arguments are time-barred.

3    Movants try to shoehorn their argument under Lambert and

4    Salerno, under (b)(5)'s equity clause to avoid the timeliness

5    bar simply because they disagree with their predecessor's

6    strategies.  This Court should not allow them to do so.

7           As to their (b)(5) arguments, this Court should

8    reject Movants' suggested one-step equity clause test, which

9    disregards the plain language of the rule, supreme court, and

10   Ninth Circuit precedence.

11          THE COURT:  How do I -- so I just want to delve into

12   a little bit exactly what you're saying.  When you say that

13   they disagree with their clients' own litigation strategies,

14   what specifically are you talking about?  The decision not to

15   appeal Glick or to come back to court after Wicklund?

16          MS. De FEX:  That is correct, Your Honor.

17          And actually, if you look -- we'd classify it as

18   non-opposition to motion for summary judgment.  And that is

19   what is telling there.  And so in the response to motion for

20   summary judgment in 1991, the Attorney General's Office

21   actually indicated that it had no intention to appeal the

22   Glick decision and that it would not oppose the grant of

23   summary judgment.  And as we indicated in our footnote, they

24   actually requested that the final judgment indicate the

25   grounds for relief -- or why final judgment would be entered,
```

1    which this court actually declined to do so.  And it cited

2    that it would ask the legislature to correct the infirmities

3    that existed in SB 510.  Now, the legislature actually

4    declined to do so, all of which should be taken into account

5    when considering whether the original public interest that

6    existed in enforcing the law remains today.

7         That being said, at the end of the day what Movants

8    are asking for today is that this Court give them a chance at

9    a second bite at the apple, give them the chance to present

10   what is an untimely argument under the (b)(5) clause simply

11   because they disagree with the decisions that their

12   predecessors made in 1991 and 1997.  And so both pre-Kent and

13   post-Kent, it is clear that these arguments are (b)(1)

14   arguments.

15        Now the substance of the argument governs what

16   subdivision applies.  Now, because these arguments are subject

17   to (c)(1)'s one-year deadline, they are categorically barred

18   and well out of time.

19        Now, turning to the (b)(5) argument.  It is telling

20   that post-*Becerra* no court within this circuit, whether it's

21   unpublished decisions or district court decisions -- or I'm

22   sorry, no Ninth Circuit or district court decisions have

23   applied *Becerra* in the way that Movants asked this Court to do

24   so.  What is clear is that *Bellvue* and review informs

25   multistep analysis continue to be applied across the board by

```
 1    district court and Ninth Circuit decisions.  And so you'll see
 2    in our briefing we have cited numerous decisions.  Of course,
 3    I'm happy to provide other cites that this Court can turn to,
 4    under all petitions are brought forth under the (b)(5) equity
 5    clause.
 6              THE COURT:  And are you specifically talking
 7    about -- or can you tell me, so I'm clear, about which of
 8    those cases involved injunction?
 9              MS. De FEX:  Yes.
10              THE COURT:  Injunctive relief.
11              MS. De FEX:  So in those cases, for example, you
12    have Oregon Advocacy Center v. Allen.  So I believe that is
13    2021 Westlaw 3615536.  Though it is not cited in our brief,
14    and I apologize for that, Your Honor, but there is a published
15    district court case from the Northern District of California,
16    that is Planned Parenthood Federation of America v. The Center
17    For Medical Progress where it was actually (b)(5) relief on
18    the basis of a change in law that was denied, and that is 7704
19    F. Supp. 3d 1027, and that case cited Rousseau.
20              THE COURT:  And is this -- I don't know anything
21    about this decision, and I think your opponents may not know
22    it either.  So is this a Dobbs-related decision?
23              MS. De FEX:  No, I apologize.  I'm referring to
24    cases that continue to apply post-Becerra that apply Rousseau,
25    Rufo, and Bellvue multistep analysis.
```

Case: 24-7113  11/21/2024  DktEntry: 1.1  Page 238 of 266
Case 3:85-cv-00331-ART-CSD   Document 128   Filed 11/12/24   Page 31 of 59

31

1          If we're talking about post-*Dobbs* cases, that would

2     be *Guam*, which is cited in our brief, that applied *Rufo's*

3     multistep test.  That is the quintessential test, and there

4     Movants did not meet their burden.  And so, again, the

5     multistep test that looks into whether there is a significant

6     change in law in fact, whether it is detrimental to the public

7     interest, and whether the relief that is sought there is

8     suitably tailored to the circumstances that have been

9     identified.  Here, at every step of the way Movants have

10    failed to meet their burden as is required for this Court to

11    grant such significant relief.

12         THE COURT:  So there's really strong language in

13    *Becerra* that says that when a change in law basically

14    unprohibits what was prohibited, that that is dispositive.  So

15    I'm understanding -- and I haven't looked at all of these --

16    I've looked at some of the cases.  The *Guam* case seems a

17    little bit -- a little bit its own beast.  But it does seem --

18    I guess you're arguing that even post-*Becerra* you still have

19    to look at all of the factors under *Rousseau*.  Your opponent

20    is arguing post-*Becerra* you look at the change in law and

21    you're done.

22         MS. De FEX:  So this Court's opinion doesn't start

23    and end with *Becerra*, and that is where Movants get the

24    analysis incorrect.  *Becerra* doesn't bear the weight that

25    Movants place on it.  And because *Becerra* is based on a

1    supersede of regulation, you have to read the entirety of

2    *Becerra's* opinion.  In *Becerra*, the Court's analysis doesn't

3    reflect that the Court cannot impose an affirmative obligation

4    that existed solely on the basis of a superseded regulation

5    that forced the party to take affirmative steps.  It does

6    nothing to disturb *Bellvue Manor's* holding that *Rufo's*

7    multistep test is applicable standard for all petitions

8    brought forth under the equity provision of Rule 60(b)(5).

9    Therefore, *Bellvue* continues to be good law in this circuit,

10   which is evident in the fact that post-*Becerra*, the Ninth

11   Circuit issued *Rousseau*, the Ninth Circuit continues to apply

12   *Becerra*, *Rousseau*, and *Rufo's* multistep test, which is what,

13   as I mentioned, we see all these decisions after *Becerra*, and

14   we ask that this Court continue to apply *Bellvue* as well as

15   *Rufo's* multistep analysis.

16          THE COURT:  So your way of analyzing *Becerra* and

17   *Rousseau* would be that *Rousseau* requires the Court to look at

18   a change in circumstances or law, that *Becerra* would fit into

19   that analysis of what is the import of the change in law but

20   with the specific attributes that you're spotting out --

21   you're saying about *Becerra* in terms of the kind of change in

22   law it was, but that you would basically put *Becerra* into the

23   *Rousseau* analysis as a factor, perhaps a very weighty factor,

24   depending on what it was, but it would still be within the

25   *Rousseau* multi-factor analysis.

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 240 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 33 of 59

33

```
1         MS. De FEX:  At the end of the day, we can take one

2    step back before Becerra and before Rousseau.  And that is

3    that Rufo and Bellvue are the seminal cases here.  And that is

4    the multistep test that is applied to these cases when a

5    (b)(5) equity clause -- or when an argument is brought forth

6    under the (b)(5) equity clause.  And that is the test that

7    applies.

8         Has there been a significant change in case law and

9    circumstance?  Is continued enforcement detrimental to public

10   interest?  And when the moving party, which is important

11   because it is their burden to satisfy those first elements, it

12   is still their burden to establish that the relief that they

13   are seeking is suitably tailored to the change in

14   circumstances.

15        Now, as to that third element, the supreme court in

16   Rufo was very clear that the modification that the moving

17   party seeks cannot create or perpetuate a constitutional

18   violation.  But that is part of the moving party's burden.

19   And so at every step of the way the moving party must

20   demonstrate each element.

21        Now, here, Movants are asking this Court to read

22   Becerra so broadly as to ignore those second and third steps.

23   But this Court cannot disregard the supreme court's precedent.

24        Now, they rely heavily on Agostini.  But after

25   Agostini in Horne v. Flores, the supreme court reaffirmed that
```

```
 1    under (b)(5) equity clause this is still a multistep inquiry.

 2              THE COURT:  Okay.  I don't want you to do the work

 3    you say the Movants are required to do, but can you explain --

 4              MS. De FEX:  I'm fine to address it.

 5              THE COURT:  But can you explain what -- okay.  So

 6    there's sort of two possible -- or maybe more.  Based purely

 7    on the injunction and the statute that we have the way that

 8    this case has been litigated so far, what are the impediments

 9    to lifting the injunction?

10              And then, two, my second aspect is to what extent

11    does that require you to provide -- to either bring new claims

12    or brief -- make additional briefing to address those

13    particular issues regarding basically -- what is the

14    implementation or practical upshot of lifting the injunction

15    and whether there might be different constitutional grounds to

16    enjoin?

17              MS. De FEX:  Could you clarify the question.  I want

18    to make sure I'm understanding correctly.

19              THE COURT:  So my first question is just purely on

20    the aspect of based on the injunction we have without

21    addressing -- without having a new motion for preliminary

22    injunction or new constitutional claims brought or briefed --

23    right? -- what are the circumstances that would, in your view,

24    weigh against lifting the injunction?  Right?

25              And then separately, maybe you can address those
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 242 of 266
Case 3:85-cv-00331-ART-CSD   Document 128   Filed 11/12/24   Page 35 of 59

35

1    other possible grounds, like constitutional grounds for

2    maintaining an injunction.

3            MS. De FEX:  As to your first question, Your Honor,

4    in the original *Glick* injunction beyond the existence of --

5    well, *Bellotti* was cited in the decision.  I would like to

6    point to the 1985 original preliminary injunction decision

7    which discussed the pocket approval, which is one of the many

8    examples of the claims that were raised in the original *Glick*

9    complaint, which was not heavily discussed in the Ninth

10   Circuit briefing.  And that is an issue that still exists with

11   SB 510 as well as the vagueness claim and the equal protection

12   claims that were raised in the original complaint.  All of

13   these original constitutional infirmities exist today.

14           Now, all this has to be harmonized with all the

15   subsequent statutory and intervening constitutional

16   developments that have occurred with -- since the 1985

17   injunction.  In addition to that, there is the lack of legal

18   and administrative preparedness by the judiciary, by the

19   relevant administrative agencies that would need to promulgate

20   all necessary steps in order to ensure that this judicial

21   bypass scheme can be procedurally administered.

22           THE COURT:  What specific steps are you talking

23   about?  Like, there is no directives or forms.  Like, how does

24   a minor obtain, based on an interview -- what does she take to

25   her doctor, for example?

```
 1            MS. De FEX:  For over 40 years, no one has
 2    envisioned this law ever going into effect.  I apologize.  I
 3    need to correct myself.
 4            For almost 40 years, no one has ever envisioned this
 5    law going into effect.  If I could actually have a second, I
 6    do want to discuss the actual prejudice of this law going into
 7    effect --
 8            THE COURT:  Okay.
 9            MS. De FEX:  -- because there is a
10    mischaracterization in the briefing by Movants that does need
11    to be addressed.
12            The characterization of enforcing a law that has
13    never gone into effect as having minimal prejudice with no
14    detrimental reliance ignores the very little impact of
15    judicial bypass policies, and it treats the enactment of this
16    law as a hypothetical that exists in a vacuum.  But that is
17    not what is happening here today.
18            This is an unknown, untested, and unexpected forced
19    parental involvement requirement with an accompanying complex
20    court process to access care that they are otherwise entitled
21    to by which there is no guidance as to what document someone
22    submits to request the interview.  Courthouse staff is not
23    trained in how to handle this in a sensitive manner that would
24    not retraumatize a young person, that understands why a young
25    person may choose to not involve a parent or legal guardian,
```

Case: 24-7113 11/21/2024 DktEntry: 1.1 Page 244 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 37 of 59

37

1   such as a survivor of sexual assault or domestic violence or

2   for whom disclosing an abortion or the decision to not carry a

3   pregnancy to term could result in placing their safety and

4   well-being at risk.

5           There is -- it is unclear how that directive for

6   confidentiality would be implemented.  In fact, by searching

7   the court records, we cannot identify if that directive is

8   still in place.  There is prejudice to the providers that have

9   long relied on this injunction to not have to worry about

10  criminal penalties and other potential ancillary consequences

11  that may flow if required to comply with the law for which

12  there is no regulatory guidance.

13          This pocket approval problem that existed in 1985,

14  which I imagine was discussed in the 1985 decision, still

15  exists by which providers have no way of defending against

16  criminal charges.  It is unclear how the appellate process

17  would be implemented.  It is unclear how counsel would be

18  appointed.  It is unclear how judges would be trained to

19  administer these hearings.

20          We quite simply do not know how the statutory scheme

21  would be implemented because for almost 40 years no one ever

22  envisioned that SB 510 would go into effect.

23          THE COURT:  Is there any analog under Nevada law

24  that has a similar -- that has any kind of judicial bypass

25  that would be similar to what would happen here in terms of if

1    a girl wants an abortion, is she supposed to file something?

2    Or wants an interview.  If she wants an abortion and wants an

3    interview, is she supposed to file something?  Is she supposed

4    to show up at the courthouse and knock on the door?  Is there

5    any other bypass procedure elsewhere in Nevada law that would

6    provide a model for this situation?

7           MS. De FEX:  None that I can identify, Your Honor,

8    at this point in time.  Nor have Movants cited to any at this

9    point in time.

10          I further point out that the interest that Movants

11   claim, there has been almost 40 years for the state

12   legislature to accomplish this political goal.  Or, if this

13   were such a strong interest in animating this law, such

14   changed circumstances could have compelled the filing of a

15   60(b) motion under a change in factual circumstances.  But,

16   for almost 40 years, Movants have not presented any arguments

17   as to why this law -- it would be detrimental to the public

18   interest to enforce this law.

19          So in terms of meeting their burden, again, this

20   Court should reject Movants' efforts to be relieved from their

21   burden as to meeting Step 2 and Step 3 of the *Rufo* test as is

22   required for this Court to take such remarkable steps and

23   enforce a law that has been enjoined for almost 40 years.

24          THE COURT:  Can I ask you just about next steps.  So

25   one avenue is just to deny the motion outright, which I

```
 1   realize you're urging me to do.  Another is to take sort of
 2   the statement in Becerra -- or at least understand Becerra to
 3   mean when there's a significant change in the law, there might
 4   be occasion to revisit a motion for -- I mean, to entertain a
 5   motion for relief from an injunction like this one.  So let's
 6   say I were to, you know, be inclined to get that far along in
 7   the analysis.  I think what you're arguing today is that there
 8   would be -- still be -- there are serious practical concerns.
 9   Can you address what constitutional concerns there might be
10   and the way in which you would advocate pursuing them?
11         So I'm talking about -- earlier I had said one
12   option is to provide supplemental briefing on this motion
13   before I sort of take -- well, so I consider it in the same
14   breath that I'm considering the motion for relief from
15   judgment.
16         Another is to just have a corrected -- perhaps an
17   amended complaint or a motion for preliminary injunction that
18   is able to kind of wrap around all of the changes in the law
19   and sort of the troubling aspects of it.
20         I mean, one thing that I see is that -- I'm actually
21   curious about your position on this.  I'm not sure if a
22   doctor -- I'm not sure how they would know how to comply with
23   this, because I'm not sure they can ask about marital status
24   or age.  And if they can't ask about marital status or age,
25   then it just seems to be sort of serendipitous and arbitrary
```

whether someone disclosed their age or it was so obvious to

them that someone was very young, which has all kinds of sort

of unevenness and problems built into it.

MS. De FEX:  That is correct, Your Honor.  And that

is part of the many concerns we identified in terms of the

failure to meet their burden.  The relief that they are

seeking is just simply not suitably tailored to the changed

circumstances that they have identified.  And at the end of

the day, the complete vacatur of the injunction will create

the precise situation that *Rufo* warned against.

We have to consider that the reanimation of this law

has to be harmonized with the 1990 ballot referendum which has

only strengthened protections for abortion within this state.

It has to be harmonized with the 2019 statutory repeal, which,

as you mentioned, has created a situation where providers

cannot request the information that is needed to comply with

the law.

There are still specific aspects of the law itself

that providers have no guidance as to how to provide

notification.  And so what Movants are asking for simply is a

situation that is going to create confusion, chaos, and

hardship and will only give rise to further constitutional

violations.

So respectfully, we just -- under *Oregon Advocacy*

*Center*, which we cited to in our brief, the relief that

1    Movants are asking for, even if -- which we do not believe the

2    Movants have met their burden as to the first two elements.

3    The relief that Movants are asking for, Movants cannot --

4    because they cannot satisfy this third element, Movants are

5    not able to obtain relief under (b)(5) equity clause because

6    they have not met this third element.

7         And so that alone is reason to deny (b)(5) relief,

8    because, again, it is impossible due to this lack of

9    preparedness for the Court to grant that relief, which is just

10   simply having SB 510 go into effect as Movants have suggested

11   they --

12        THE COURT:  But you heard Mr. Bopp arguing --

13   right? -- look, from *Dobbs* we no longer have this -- like, no

14   one has this constitutional right anymore.  Their standard is

15   rational basis for review under *Dobbs* for rules like *Dobbs*.

16   Right?

17        So you heard him say, look, if there's another

18   reason to enjoin this law, let them have at it.  I'm trying to

19   figure that out in a sequence of timing that makes sense so

20   that the equity, efficacy, and implementation, practical

21   aspects of lifting this injunction are fully considered with

22   all of the changed circumstances, not just *Dobbs* but perhaps

23   all of the other circumstances that even if you say, okay,

24   *Dobbs* would clear the deck in terms of substantive due

25   process -- right? -- we still -- there still may be due

1    process, vagueness, equal protection, the sort of

2    discrimination against married versus unmarried people in

3    particular, issues that would cause the Court not to lift the

4    injunction or simply replace it with a new injunction.  So we

5    would switch out the grounds by having an injunction,

6    nevertheless.

7            What do you advocate the process?  If you could

8    wish -- if I'm going to entertain the motion, and let's just

9    say that hypothetically, and you wanted me to address all of

10   those issues, how do you foresee that process?  Do you want to

11   file a new motion for injunction so that there's an alternate

12   grounds for injunction -- or at least I would entertain that

13   within this broad *Rousseau* analysis that you're talking about.

14           MS. De FEX:  If this Court has determined that

15   Movants have met their burden at all three steps of the *Rufo*

16   test, and only if this Court has reached that point in time,

17   we would ask that this Court give at least 60 days before the

18   ruling takes effect to allow all impacted stakeholders to have

19   time to prepare and allow Plaintiff time to seek appropriate

20   relief.  However, we would again stress that we do not believe

21   that Movants have met their burden or demonstrated that there

22   is any manner that does not violate *Rufo's* explicit warning

23   with a modification cannot create or perpetuate a

24   constitutional violation.

25           Now, if this Court will allow me to --

1           THE COURT:  Mm-hmm.

2           MS. De FEX:  -- I do want to address the timeliness

3    factor.  Because there are some things that were lost a little

4    bit in the weeds of the discussion earlier, --

5           THE COURT:  Okay.

6           MS. De FEX:  -- and I do want to address the cases

7    that were discussed in terms of timeliness.

8           Now, as I mentioned, Movants failed to seek relief

9    within a reasonable time.  And some of Movants' arguments are

10   part of what is barred by the rule's one-year deadline.  Now,

11   this Court's focus cannot be on whether it is reasonable for

12   any person to take 17 months, but whether the two district

13   attorneys could have sought relief sooner.

14          Now, the bulk of the case law in the Ninth Circuit

15   precedent shows that the 17-month delay is unreasonable.  It

16   cannot be ignored that every post-*Dobbs* 60(b) motion was filed

17   within eight months after the supreme court's decision.

18          I apologize, I'm going to need a little bit more

19   water.  I'm doing a little bit more talking than I

20   anticipated.

21          And yet Movants took twice as long to seek relief

22   here.

23          Now, the Movants' motion was filed 32 years after

24   final judgment, 38 years after the issuance of a preliminary

25   injunction, 26 years after *Lambert*, and 17 months after *Dobbs*,

1    the most recent event that they invoke.

2         None of the facts that Movants have raised in their

3    reply brief to explain this delay between *Dobbs* and the

4    timeliness of the motion is enough to salvage this delay.  The

5    plain text of the rule is clear.  All arguments must be raised

6    within a reasonable time.

7         Now, this mandate is dispositive and is unable to

8    meet this element.  That is the end of this Court's inquiry.

9         Now, the Movants are sophisticated parties.  They

10   have raised arguments about all the challenges that they went

11   through.  But they're district attorneys.  They are counsel.

12   They have access to resources, staff.  They're familiar with

13   the practice of law that have -- that facilitates navigating

14   these very obstacles that they assert cause these delays.

15   They know how to navigate court documents.  They know how to

16   identify a successor in interest.  They know how to find

17   decisions on Westlaw.  None of these facts explained why it

18   took 17 months to seek relief.  And none of the arguments that

19   they raised are based on anything but publicly available

20   documents beyond the final judgment that they cite to in their

21   decision.

22         The bulk of their claims are based on the two *Glick*

23   decisions that are available on Lexis and Westlaw; *Lambert*,

24   which is a available on Westlaw; and *Dobbs*, a widely

25   anticipated decision.

 1            Furthermore, it's not like the *Glick* injunction was
 2    something that was unknown, because there is a 2022
 3    unsuccessful ballot initiative to reanimate this law.
 4            So, furthermore, I would actually dispute that there
 5    is a voluminous record here that would cause such a lengthy
 6    delay.  In fact, this was not a fact-heavy case.  Once you go
 7    through the records in this case, the bulk of the documents
 8    there are procedural documents in which district attorneys
 9    consent to the attorney general representing them in the
10    original *Glick* proceeding.  This was a very straightforward
11    legal argument in which there is a preliminary injunction, a
12    temporary retraining order, and a few other documents.  But
13    none of -- there is no discovery in this case.
14            The Movants had access to the underlying facts and
15    information that were needed to bring forth many of these
16    claims at a much earlier time.
17            Furthermore, similar motions were brought forth in
18    closer proximity to *Dobbs* in cases that were just as old, such
19    as that in *Guam*, which was actually litigated in the early
20    '90s and had multiple appeals and was significantly more
21    complex.  And yet the motion in *Guam*, which was, again, based
22    purely on legal arguments just like this motion here, was
23    filed I believe in February of 2023.  And yet it took Movants
24    until December 2023 to seek belief.
25            Now, Movants still do not provide an adequate

```
 1    explanation for their delay.  I'd like to point this Court to
 2    Franklin v. Tate, which we cite to in our brief.  There, the
 3    Court noted that conclusory facts are not enough from the
 4    party to provide factual details as to why they did not seek
 5    relief sooner.  That is what Movants are doing here today.
 6    They provide conclusory allegations.  They say that it took
 7    them a while to get through the record.  They had to obtain
 8    the records through the National Archives.  But these are just
 9    conclusory allegations.  They still don't say when they
10    obtained the records.  They still don't provide details.
11            I'd also like to point the Court to the decision in
12    Levy.  So the district court noted the legal significance that
13    there was nothing that appeared in Movants' awareness of the
14    Court's ruling of relevant facts in law that would allow this
15    Court to seek relief at an earlier time.
16            Now, there's also a few cases that Movants cite in
17    an effort to explain their delay.  But Movants miss the mark
18    with those cases.  And the thing is with those cases -- the
19    Court in those cases repeatedly -- for example, in Holtzman,
20    emphasizes that we have to view the delay from the lens of who
21    the moving party is.  In Holtzman, the moving party didn't
22    understand what the court order that they were bound by meant.
23            Here, the moving party, again, are district
24    attorneys.  They're sophisticated plaintiffs that understand
25    what they are bound by.  In Clark, the Eighth Circuit, in
```

Case: 24-7113, 11/21/2024, DktEntry: 1.1, Page 254 of 266
Case 3:85-cv-00331-ART-CSD    Document 128    Filed 11/12/24    Page 47 of 59

47

1    justifying what I believe was a six-year delay, the Court in

2    *Clark* actually distinguished the delay from circumstances

3    where they would not allow such a delay because the party in

4    *Clark* was someone who had suffered an accident that impaired

5    them from understanding that they were not represented by

6    competent counsel.  And so I believe the Eighth Circuit in

7    *Clark* said that because this was a mature and competent

8    plaintiff, that such a delay was reasonable.

9         *Cisneros* was actually a circumstance where the Ninth

10   Circuit, after determining whether the district court properly

11   applied the *Ashford* factors found that it was not an abuse of

12   discretion.

13        Here, not only did Movants fail to go through the

14   *Ashford* factors and until confronted with their lack of

15   addressing the reason -- or the timeliness of the motion,

16   still have failed to determine and provide an adequate

17   explanation as for whether they sought relief within timely --

18   or within a reasonable time.

19        And so even when you apply the *Ashford* factor, all

20   case law points towards untimeliness within this motion.  And

21   so, beyond their failure to seek relief within a reasonable

22   time, Movants at every point of Rule 60 have failed to meet

23   their burden in demonstrating that this Court should grant

24   relief.

25        And so we simply ask that this Court, because

1    Movants have failed to seek relief within a reasonable time --

2    and even if this motion was timely, Movants have failed to

3    meet their burden proving that this Court should take one more

4    step and enforce a law that has never gone into effect.

5         THE COURT:  Okay.  I'm going to ask you a question

6    that I asked before, but I want to ask you again.  There is

7    sort of just a whole logic of working through this problem

8    which part of Rule 60 applies.  There's a timeliness aspect.

9    Have they met their burden for whatever section is applying?

10        There is also an analysis of prejudice and the

11   effect, which you're arguing is that *Becerra* is not

12   dispositive in that analysis, that I need to take a more

13   wholesome view of what lifting an injunction would do; right?

14   And so part of that is just purely practical related to

15   uncertainty.  This law has never been implemented.  But if I

16   were to get to that point analytically, would you want me to

17   have a more fulsome development of the problems of

18   implementation?

19        Specifically, would you like the opportunity to

20   address due process and equal protection defects with this law

21   in possibly -- I'm not -- I don't want to say what my analysis

22   is going to be -- right? -- but possibly at that stage of

23   deciding this motion and not as a next separate step?  Would

24   you like to have that opportunity to either file a motion for

25   preliminary injunction that more fulsomely develops the 2024

1    problems as opposed to relying on a complaint that was drafted

2    in 1985 and motions that were briefed in 1985 -- or there

3    around, back before the, you know, the original basis for the

4    motion -- for the injunction?

5          Because you seem to be arguing that changed

6    circumstances is about more than *Dobbs*, that there's more

7    going on there.  But I'm not sure that I have that in front of

8    me as a response to this motion, which I understand.  Because

9    I totally understand your primary argument out of the gate is

10   shut this motion down based on timing, burden, and the case

11   law that goes with it.  But if I were to get to that more

12   broad analysis of, like, what is wrong with lifting this

13   injunction -- if *Dobbs* says -- *Dobbs* is on the side of the

14   scale which obviously says lift the injunction because *Roe* is

15   the primary basis for all of that case law and was the

16   animating force when the decision was made.  But if there's an

17   alternative reason why -- constitutional reason why the

18   injunction should not be lifted, don't you want me to consider

19   it?

20         MS. De FEX:  Yes.  If this Court is inclined to lift

21   the injunction, then we would ask for supplemental briefing to

22   provide further context as to the alternative grounds that may

23   exist that must be taken into account as this Court continues

24   its analysis as to Step 2 and Step 3 of the *Rufo* test.

25         THE COURT:  Okay.  And I'm not going to signal what

Case: 24-7113  11/21/2024, DktEntry: 1.1, Page 257 of 266
Case 3:85-cv-00331-ART-CSD   Document 128   Filed 11/12/24   Page 50 of 59

50

```
 1    I'm inclined to do, but I'm inclined to give you that
 2    opportunity to inform me so that whatever I decide to do I
 3    have, you know, sort of a record in front of me that --
 4              MS. De FEX:  It would be beneficial to my client,
 5    yes.
 6              THE COURT:  Okay.  And I guess related to that is
 7    not just -- is whether if you -- so I may order that
 8    supplemental briefing.  But I'm going to leave it to you in
 9    terms of if you want to amend your complaint or file a new
10    motion for a preliminary injunction because you think that's a
11    better vehicle to operate on rather than working -- you know,
12    just responding to this motion.  I'm going to leave that to
13    you.
14              Okay.  Thank you very much.
15              Mr. Bopp.
16              MR. BOPP:  Thank you, Your Honor.
17              First, Planned Parenthood wants to fault this motion
18    and these Movants and ask you to deny it based upon they
19    didn't take an appeal of the original judgment.  Where is that
20    in the law that there is some sort of law that you have to
21    exhaust administrative remedies by appealing a final judgment
22    before you can move a 60?  Of course, there's not in 60 law.
23              That there were other opportunities, perhaps, as
24    we've discussed, perhaps, to raise a 60(b)(5) motion and they
25    chose not to do it.  If you would fault them on that, you're
```

1    going to be a busy judge, because then the default has to be

2    if there's any reasonable argument that the law has changed,

3    then I am required to bring a 60(b)(5) motion just so when

4    that law actually changes for sure, I could bring that as

5    well.  You're going to be busy.

6         THE COURT:  Well, I don't think so, because we still

7    have Rule 60 -- which is really an equitable rule overall;

8    right? -- which is to afford relief from judgment when it's

9    justified and timely.  And that's the threshold gateway that

10   we're dealing with now.  So it's really not any case.  And I

11   think, you know, given sort of the overall equities, sitting

12   on your hands is possibly an equitable reason to deny relief;

13   right?

14        MR. BOPP:  Well, I'm just saying it is -- what has

15   been posited here is 20 years ago there was possibly a change

16   in law with *Wicklund* and why didn't we -- they do something?

17        Well, as we've discussed, it's debatable.  I think

18   there's a reasonable argument on both sides.  But surely

19   you're not going to hold that if they failed to do it then,

20   they cannot be heard on *Dobbs* now.  Because that's what

21   they've asked, and that's what I'm arguing against.

22        Third is, Your Honor, did they go to the

23   legislature?  Okay.  Whatever.  Where's the requirement on

24   that?

25        And then finally, that there are all of these other

```
 1   possible problems.  That's the best characterization I can
 2   give to it.  You know, a litany of I don't understand this and
 3   I don't understand that and what does this mean and et cetera.
 4   All right?
 5          Now, let's start with the fact, the fact, that the
 6   United States Supreme Court has approved and therefore has
 7   gone into effect probably two dozen parental notice on
 8   abortion statutes throughout the United States that have been
 9   implemented in every one of those states and, as the Akron II
10   described, identical in substance to the Nevada and the
11   Montana statutes.  So is Nevada particularly, you know,
12   unusual in their difficulty to resolve legal issues like this?
13   I don't think so.  I mean, if Montana can do it and if
14   Missouri can do it and if Indiana can do it and if
15   Pennsylvania can do it, I'm sure Nevada can do it.
16          Now --
17          THE COURT:  But you're also making perfectly the
18   argument that Nevada moved on.  That they didn't seek similar
19   relief, that they didn't do it back then, they didn't do it
20   along the way, they didn't do it politically, they didn't do
21   it in terms of litigation.  I understand your Dobbs argument,
22   but you are -- if this was legal before Dobbs, then Dobbs
23   didn't make it -- didn't make a difference.
24          MR. BOPP:  I agree, and we don't have to go back
25   over that same territory.  I'm not talking about that.  I'm
```

1  talking about whether the argument that -- and, you know,

2  these are fine lawyers.  You know, I'm sure they could pick

3  apart any statute you've already approved on its face as

4  constitutional, last week I bet they could pick it apart.  But

5  the reality is this statute, as the U.S. Supreme Court has

6  said, is identical to the one they approved in *Akron*.  This

7  kind of statute has gone into effect all over the country.  So

8  this is just gross speculation.  And you know it is because

9  you kept pressing them for some legal claim about all of this.

10  And not only could they not give you one, they don't even want

11  to make one by moving a preliminary injunction.

12        It's -- you know, *Dobbs* removes the idea, A, that a

13  parental notice statute in and of itself -- no bypass,

14  parental notice statute is unconstitutional.  In *Akron II*, the

15  U.S. Supreme Court said parental notice is a rational reason

16  to do.  Okay?

17        You don't need a bypass for any purpose.  It's

18  purely gratuitous.  Nobody has to go through it.

19        So if you think there's an infirmity there,

20  Number 1, it has to be a constitutional infirmity; i.e., the

21  only one you had here years ago was *Bellotti* and *Akron II*,

22  which in implementing *Roe v. Wade* said, arguably, that there

23  had to be a bypass for notice.  And then the question is does

24  the notice -- does the bypass meet the *Bellotti* test?

25        Those are all gone.  Those are all gone.  We -- the

1    State of Nevada does not have to provide a bypass and can

2    require every single minor to get -- to be notified about

3    their abortion.

4         Now, that is unless -- right? -- that is unless

5    there's some other claim that legally or constitutionally

6    could be made in that circumstance.  I understand that.  Okay?

7         Now, what about that?  Speaking of delay, we filed

8    this motion almost a year ago after months of us getting this

9    record together.  And by the way, regarding the difficulties

10   of getting the record, which they now pooh-pooh in our motion

11   -- in our scheduling conference motion, we explained all those

12   difficulties.  They not only didn't object to those -- the

13   fact that those difficulties existed, they acknowledged them

14   in the conference itself.  Okay?

15        But that aside, where is, after almost a year, their

16   statement of a single legal claim or constitutional claim

17   against any word in the statute?  They don't -- not a single

18   word.  They say well, we had alternate claims in our

19   complaint, equal protection, et cetera, et cetera.  And they

20   didn't explain what in the world those would be.  They just

21   said equal protection.  Well, that doesn't explain what the

22   claim is, the justification for the claim, basis of the claim.

23   They don't even give you a sentence on why any part of the

24   statute would violate equal protection.

25        And then they say in the next page, well, there's

 1    also the state ERA and this and that and the other thing.  But

 2    they don't say at one point a single word on how those equal

 3    rights amendment or other legal changes would have any impact

 4    on this.  Why should we now wait for them when they could have

 5    done this anytime in the last year?  They could have moved to

 6    amend the complaint.  They could have moved to seek an

 7    injunction on alternate grounds.  They could have done all

 8    sorts of things.  So they're going to wait a year, wait until

 9    you make a preliminary ruling, and then they want to backfill.

10    Okay?

11           There is nothing in Rule 60 that allows all this.

12    Nothing.

13           This injunction this moment is unlawful as all get

14    out at this moment in time.  It will be unlawful tomorrow.  I

15    think I've made a reasonable point and accommodation that a

16    reasonably short length of time for notice that the statute

17    goes into effect would be appropriate.  I would not object to

18    that.  Maybe a week -- two weeks, I mean.  Two weeks.  And,

19    then look, we're just at the same place we were at the

20    beginning.  Remember?

21           This statute never went into effect.  Why?  Because

22    it was enjoined.  But it was going to go into effect.  Maybe

23    two weeks, maybe a month, maybe the next day.  I don't know

24    the time frame.  It was going to go into effect.

25           We will be just right back there:  the statute going

1   into effect.  And then having -- or anybody else that wants to

2   file a lawsuit or intervene, I don't know if you can -- you

3   know, one thing I was wondering about that, when you have a

4   judgment vacated, which is what we are asking for under

5   Rule 60, where is the case at this point?

6          THE COURT:  Are you asking me for legal advice?

7          MR. BOPP:  No, no, no.

8          THE COURT:  Because I'm not giving it.  I'm going to

9   decide this case on my timeline, and I'm going to decide it

10  with all of the information that I need to make the right

11  decision.

12         MR. BOPP:  Well, you don't need to know from them at

13  this point in time what other claims they could make.  That's

14  one of my points.  Because the law has changed.  There's no

15  question about the law has changed.  The sole support for the

16  judgment has evaporated in a very nice, fun phrase to use.

17  And as a result, this injunction should be lifted.

18         And you are subjecting children in this state who

19  are immature and whose involvement of their parents would be

20  in their best interest to make one of the most important

21  decisions they would ever make, you are denying them that

22  involvement --

23         THE COURT:  But this law doesn't just affect

24  children.

25         MR. BOPP:  -- by maintaining the injunction another

```
 1    day or two days or three days or a month or a year to litigate

 2    all these other things that they can litigate.

 3           I mean, what would be the basis of you continuing an

 4    injunction?  What is your legal basis?

 5           THE COURT:  Mr. Bopp, I ask the questions.  Your

 6    motion is submitted.

 7           I appreciate your time.  I appreciate everyone being

 8    here.  Thank you.

 9           MR. BOPP:  These are my rhetorical questions.

10           THE COURT:  I understand.

11           MR. BOPP:  Thank you.

12           THE COURT:  The motion is submitted.  I will -- you

13    can sit down.

14           MR. BOPP:  Thank you.

15           THE COURT:  The motion is submitted.

16           I will very likely get an order asking for some

17    supplemental briefing, because I feel things that were -- I

18    want to make sure that they are adequately addressed.  I will

19    leave it to the plaintiffs to make any other that they see fit

20    moves in terms of what the Court needs to consider that -- you

21    know, I don't want to consider what was filed purely on the

22    basis of what was filed, in fact, when this case was initially

23    decided, because I think that I'm entitled to better

24    information than that.

25           So thank you very much.  We're adjourned.
```

1        (Proceedings concluded at 12:32 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            **REPORTER'S CERTIFICATE**

2

3          I, DONNA J. PRATHER, do hereby certify that the

4    above and foregoing, consisting of the preceding 59 pages,

5    constitutes a true and accurate transcript of my stenographic

6    notes and is a full, true, and complete transcript of the

7    proceedings to the best of my ability.

8          Dated this 7th day of November, 2024.

9

10           DONNA J. PRATHER, RMR, CRR, CCP, CBC

11           Federal Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25